| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Thomas H. Casey, SBN 138264<br>LAW OFFICE OF THOMAS H. CASEY, INC.<br>A PROFESSIONAL CORPORATION<br>26400 La Alameda, Suite 210<br>Mission Viejo, CA 92691<br>Telephone: (949) 766-8787<br>Facsimile: (949) 766-9896<br>Email: TomCasey@tomcaseylaw.com<br><br>☐ *Movant(s) appearing without an attorney*<br>☒ *Attorney for Movant(s)* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re: | CASE NO.: 6:24-bk-13474-SY |
|---|---|
| HK LANE PALM DESERT, INC. | CHAPTER: 7 |
| | **DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION**<br>**LBR 9013-1(o)(3)** |
| Debtor(s). | [No Hearing Required] |

1. I am the ☐ Movant(s) or ☒ attorney for Movant(s) or ☐ employed by attorney for Movant(s).

2. On (*date*): 10/16/2026 Movant(s) filed a motion or application (Motion) entitled: Chapter 7 Trustee's Motion for Order Approving Settlement Agreement Between Chapter 7 Trustee, WRE SoCal, Inc., and HK Lane La Quint

3. A copy of the Motion and notice of motion is attached to this declaration.

4. On (*date*): 10/16/2026 Movant(s), served a copy of ☒ the notice of motion or ☐ the Motion and notice of motion on required parties using the method(s) identified on the Proof of Service of the notice of motion.

5. Pursuant to LBR 9013-1(o), the notice of motion provides that the deadline to file and serve a written response and request for a hearing is 14 days after the date of service of the notice of motion, plus 3 additional days if served by mail, or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

6. More than 17 days have passed after Movant(s) served the notice of motion.

7. I checked the docket for this bankruptcy case and/or adversary proceeding, and no response and request for hearing was timely filed.

8. No response and request for hearing was timely served on Movant(s) via Notice of Electronic Filing, or at the street address, email address, or facsimile number specified in the notice of motion.

9. Based on the foregoing, and pursuant to LBR 9013-1(o), a hearing is not required.

Movant(s) requests that the court grant the motion and enter an order without a hearing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: 11/03/2026

Signature

Thomas H. Casey, Esq.
Printed name

# Exhibit 1

Thomas H. Casey – Bar No. 138264
LAW OFFICE OF THOMAS H. CASEY, INC.
A PROFESSIONAL CORPORATION
26400 La Alameda, Suite 210
Mission Viejo, CA 92691
Telephone: (949) 766-8787
Facsimile: (949) 766-9896
Email: TomCasey@tomcaseylaw.com

Attorneys for A. Cisneros,
Chapter 7 Bankruptcy Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA / RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>HK LANE PALM DESERT, INC.,<br><br>Debtor. | Case No.: 6:24-bk-13474-SY<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE CHAPTER 7 TRUSTEE, WRE SOCAL, INC., D/B/A WINDERMERE DESERT PROPERTIES AND HK LANE LA QUINTA, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF TRUSTEE A. CISNEROS IN SUPPORT THEREOF**<br><br>[No hearing required pursuant to Local Bankruptcy Rule 9013-1] |

**TABLE OF CONTENTS**


Summary ....... 1

Background ....... 1

The Summary of Terms of the Settlement Agreement ....... 4

Memorandum of Points and Authorities ....... 8

I. Upon Approval by the Court, a Trustee May Compromise A Claim of the Estate ....... 8

II. The Bankruptcy Court May Approve a Compromise Which is Fair and Equitable ....... 8

(a) The Probability of Success in the Litigation ....... 9

(b) The Difficulties, if any, to be Encountered in the Matter of Collection ....... 9

(c) The Expense, Inconvenience and Delay Associated with Litigation ....... 10

(d) The Paramount Interests of Creditors and a Proper Deference to Their Reasonable Views in the Premises ....... 10

III. Conclusion ....... 11

Declaration of A. Cisneros ....... 12

## TABLE OF AUTHORITIES

**CASES** Page

*Martin v. Kane (In re A&C Properties),*
784 F.2d 1377, 1380-82 (9th Cir. 1986), *cert. denied sub nom, Martin v. Robinson,* 479 U.S. 854 (1986) ........ 8

*Woodson v. Fireman's Fund Insurance Company (In re Woodson),*
839 F.2d 610, 620 (9th Cir. 1988) ........ 8

*In re Blair*
538 F.2d 849, 851 (9th Cir. 1976) ........ 8

*In re Calra Leather, Inc.*
44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984) ........ 8

*In re Walsh Const., Inc.*
669 F.2d 1325, 1328 (9th Cir. 1982) ........ 9

*In re W.T. Grant*
699 F.2d 599, 608 (2d Cir. 1982) ........ 9

*In re Bell & Beckwith*
87 B.R. 472, 474 (N.D. Ohio 1987) ........ 9

**STATUTORY AUTHORITY**

None.

**OTHER AUTHORITIES**

Federal Rule of Bankruptcy Procedure 9019 ........ 1, 4, 7, 11, 12

Federal Rule of Bankruptcy Procedure 9019(a) ........ 8

Rule 2002 ........ 8

**TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY JUDGE AND ALL PARTIES IN INTEREST:**

A. Cisneros, Chapter 7 Trustee ("Trustee") of the bankruptcy estate of HK Lane Palm Desert, Inc. ("Debtor"), requests an order approving his global settlement agreement between the Trustee, WRE SoCal, Inc., dba Windermere Desert Properties ("WRE"), and HK Lane La Quinta, Inc. ("HKLLQ") pursuant to Federal Rule Of Bankruptcy Procedure 9019 ("Motion") and submits the following:

**SUMMARY**

Granting this Motion and approving the proposed Settlement Agreement is in the best interest of the estate. Per the proposed Settlement Agreement Counter-Claimant Defendant WRE will resume its quarterly payments per the underlying Promissory Note and the Trustee and HKLLQ will evenly split the quarterly payments. Per the proposed Settlement Agreement, the Trustee will receive the total amount of $540,000. In the event WRE defaults, the proposed Settlement Agreement provides for a procedure for the Trustee to quickly and cost effectively obtain a judgment for the unpaid amount. High Trustee legal fees will be avoided and the risk of WRE becoming insolvent will be reduced. As discussed below, the proposed, Settlement Agreement, attached as **Exhibit "1"** is in the best interests of creditors of the estate and should be approved.

**BACKGROUND INFORMATION**

1. On or about June 2023, the Debtor and HKLLQ, as sellers, entered into an Asset Purchase Agreement ("APA"), with WRE SoCal as buyer. The APA provided for the sale of substantially all assets belonging to and used in the Debtor's and HKLLQ's real estate brokerage business in four (4) offices located in Southern California ("Brokerage Assets"). The APA is attached hereto as **Exhibit "2"** and is incorporated herein by this reference.

2. Per the APA, the purchase price for the Brokerage Assets was $1,650,000 ("Purchase Price") with a down payment due of $225,000 ("Down Payment").

3. The APA refers to a promissory note ("Note") and states that "The Note shall be in the form attached as Exhibit D."

4. WRE SoCal timely made the $225,000 Down Payment and the first quarterly payment in the amount of $38,339 to the Debtor.

5. The Note is attached to the APA as Exhibit "D" and is executed by WRE SoCal. Under the Note, WRE SoCal promises to pay HKLLQ the sum of $1,425,000, with quarterly payments to be made on January 31, April 30, July 31, and October 31 of each year, with a maturity date of May 31, 2028 (the "Maturity Date"). The amount of each quarterly payment is defined by a formula as set forth in the Note. Upon the Maturity Date, a balloon payment of the remaining balance is due (the "Balloon Payment").

6. On or about June 20, 2024 ("Petition Date"), the Debtor filed its Chapter 7 petition with the Bankruptcy Court. Arturo M. Cisneros was appointed as Chapter 7 Trustee.

7. On September 12, 2024, the Trustee filed a Notification of Asset Case (Doc 14). The Bankruptcy Court set the claims bar date for December 16, 2024, and for governmental agencies, December 17, 2024 (Doc 14-1).

8. WRE SoCal timely made all payments on the Note until the April 30, 2026 payment. At that time, it ceased making monetary payments due to its assertion that it could offset its indemnity rights under the APA and the Note. Pursuant to the formula under the Note, the amount due for the April 30, 2026 payment is $28,513.22 and the amount due for the July 31, 2026 payment is $27,102.57 (collectively, the "Unpaid Installment Payments").

9. As of the time of the execution of this Agreement, the amount due from WRE SoCal, pursuant to the APA and Note, is $1,107,083.98.

Interpleader Complaint – Adv. Case No. 6:25-ap-01133-SY

10. On December 21, 2025, WRE SoCal filed a Complaint in Interpleader ("Interpleader") against the Trustee and HKLLQ (Adv 1 Doc 1).

11. On February 23, 2026, HKLLQ filed a Motion to Dismiss WRE SoCal's First Amended Complaint ("FAC") (Adv 1 Doc 24) ("Motion To Dismiss Interpleader FAC").

12. On April 20, 2026, the Trustee filed his Answer to the Interpleader FAC (Adv 1 Doc 34).

13. Also on April 20, 2026, the Trustee filed a Counter-Claim against WRE SoCal requesting a monetary judgment in the amount of $1,363,311 and a Cross-Claim against HKLLQ for a judgment the APA is void (Adv 1 Doc 35) ("Cross Claim"). A copy of the Trustee's Counterclaim against WRE and Crossclaim against HKLLQ is attached hereto as **Exhibit "3"** and is incorporated herein by this reference.

14. WRE SoCal filed an Answer to the Trustee's Counter-Cross Claim (Adv 1 Doc 59) ("WRE SoCal Answer").

15. Pursuant to Order entered August 26, 2026, the Bankruptcy Court granted HKLLQ's Motion To Dismiss WRE's Interpleader FAC (Adv 1 Doc 68) ("Dismissal Order"). The Dismissal Order does not affect the Trustee's pending Counterclaim against WRE or his Crossclaim against HKLLQ.

Notice Of Removal – Adv. Case No. 6:26-ap-01078-SY

16. On May 6, 2026, in the Superior Court of California, County of Riverside, HKLLQ commenced an action against WRE SoCal, captioned HK Lane La Quinta Inc. v. WRE SoCal, Inc. dba Windermere Desert Properties, Case No. CVPS2603973 (the "State Court Action").

17. After being served with the summons in the State Court Action, WRE SoCal filed, in the Bankruptcy Court, a Notice of Removal of Civil Action to the United States Bankruptcy Court captioned HK Lane La Quinta, Inc. v. WRE SoCal, Inc. dba Windermere Desert Properties, Adversary Case No. 6:26-ap-01078-SY (Adv 2 Doc 1) ("Notice Of Removal").

18. On July 24, 2026, WRE SoCal filed an Answer as well as a Cross-Complaint against HKLLQ (Adv 2 Doc 6) ("Cross-Complaint").

19. HKLLQ subsequently filed a Motion to Dismiss WRE SoCal's Cross-Complaint (Adv 2 Doc 10).

20. The Trustee, WRE, and HKLLQ attended mediation and thereafter continued their settlement discussions. The Parties have reached a global settlement agreement and each party desires to resolve all issues among them.

**THE SUMMARY OF TERMS OF THE SETTLEMENT AGREEMENT**

21. Subject to Court approval, and as discussed in more detail in the attached Memorandum of Points and Authorities, the Settlement Agreement is in the best interests of the Estate. The Settlement Agreement provides, *inter alia*, as follows:

i. This Agreement is subject to approval by the Bankruptcy Court. The Trustee shall file a motion seeking United States Bankruptcy Court approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion"). No term or condition of this Agreement shall be binding on any party until such time as the Agreement is approved. The Parties shall make good faith efforts pending review of the Agreement by the Bankruptcy Court to maintain the status quo.

ii. Within 7 days of the Effective Date (as defined below), WRE SoCal shall pay the Unpaid Installment Payments of $55,615.79. In the event the Effective Date occurs after any installment payments on the Note not yet owed (the "Future Installment Payments") come due, the Future Installment Payments which have come due shall be treated as Unpaid Installment Payments and be paid at the same time as the April and July 2026 installment payments. Upon tender of this payment, the Note will be deemed current as of the Effective Date and all claims for defaulted interest released pursuant to Paragraphs 10 and 11 of this Agreement.

iii. Upon the Effective Date, WRE SoCal shall receive a credit on the Note of $20,000, reflecting a partial reimbursement of its indemnity rights, to be applied to the principal balance of the Note.

iv. Upon the Effective Date, HKLLQ irrevocably assigns to the Bankruptcy Estate proceeds of the Note in the amount of $540,000 (the "Note Assigned Sum"). The Trustee accepts this assignment and WRE SoCal consents to the assignment.

v. The Note Assign Sum shall be paid from the proceeds of the Note as follows: 50% of the Unpaid Installment Payments and 50% of the Future Installment Payments shall be paid to the Bankruptcy Estate, with the remaining 50% of the Unpaid Installment Payments and the Future Installment Payments paid to HKLLQ, with payments made pursuant to the schedule set forth in Paragraph 2 for Unpaid Installment Payments and under the Note for Future Installment Payments. Upon the Maturity Date, the Bankruptcy Estate shall receive the balance of the Note Assigned Sum not yet paid, with the remainder of the Balloon Payment under the Note to be paid to HKLLQ.

vi. All payments made by WRE SoCal to the Trustee shall be by check made payable to "Chapter 7 Trustee A. Cisneros" and forwarded to Chapter 7 Trustee A. Cisneros, Malcolm Cisneros, 3403 Tenth Street, Suite 714, Riverside, CA 92501.

vii. All payments made by WRE SoCal to HKLLQ shall be by wire to the account of "Katofsky Law, A Professional Corporation, Client Trust Account", Attn: Jeff Katofsky, 4558 Sherman Oaks Ave., Sherman Oaks, CA 91403 pursuant to instructions provided by Jeff Katofsky.

viii. The Trustee's Counter-Claim and Cross-Claim in adversary proceeding 6:25-ap-01133-SY and HKLLQ's Complaint in adversary proceeding 6:26-ap-01078-SY, along with the related counter-claims, shall be dismissed with prejudice as to WRE and with prejudice as to HKLLQ no later than seven (7) days after the Effective Date. No party shall take any act to substantially prosecute these matters while waiting for Court approval of this Agreement.

ix. In the event WRE SoCal defaults on the Note, the Trustee or HKLLQ may, after providing five business days' written notice via email or U.S. Mail to WRE SoCal of the Default file a motion with the Bankruptcy Court for entry of a judgment on the Balance of the Note, plus attorney fees per the Note, which shall be granted if the Court determines that WRE SoCal is in default. Notice of Default by WRE shall be forwarded to Bernie Kornberg, Miller & Nash, 340 Golden Shore, Suite

450 Long Beach, California 90802, bernie.kornberg@millernash.com In the event the Trustee and HKLLQ obtain a judgment against WRE SoCal, the amount of the judgment shall be allocated as follows:

a. Forty percent (40%) to the Trustee.

b. Sixty percent (60%) to HKLLQ.

x. Except for the obligations, rights, and duties expressly created above by this Agreement, by execution of this Agreement, the Trustee, HKLLQ, and WRE SoCal hereby fully and irrevocably release, discharge and acquit each other, and their respective officers, directors, partners, members, parents, subsidiaries, affiliated companies, employees, agents, servants, heirs, administrators, personal representatives, insurers, attorneys, representatives, successors and assigns (collectively, "Representatives") of and from and against any and all rights, claims, debts, demands, acts, suits, including, but not limited to, Adversary Case Nos. 6:25-ap-01133-SY and 6:26-ap-01078-SY, proceedings, agreements, liabilities, obligations, actions and/or causes of action of every nature, character, type and description, which the Parties hereto, or any of them, now own or hold against each other.

xi. Waiver of California Civil Code § 1542. The Parties expressly waive the provisions of California Civil Code § 1542, which provides:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

xii. The release in Paragraphs 10 and 11 of this Agreement shall not extinguish the Note or APA, but shall release any claims which arose under the Note or APA prior to the Effective Date. The terms of the Note and the APA, except as specifically modified in Paragraphs 2 through 9 of this Agreement, shall control

in the event of any dispute between the Parties regarding the post-Effective Date obligations of the Parties on the APA and the Note.

22. As discussed in detail in the attached Memorandum of Points and Authorities, the Settlement Agreement meets all the legal standards per Rule 9019 and Court approval of the Settlement Agreement is warranted.

**WHEREFORE,** based on the reasons set forth above, the attached Memorandum of Points and Authorities and supporting evidence, the Trustee requests the Court issue an order:

1. Granting the Motion;
2. Approving the terms of the Settlement Agreement, a copy of which is attached as **Exhibit "1"** to the Motion;
3. That the Trustee is authorized to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement; and,
4. For any and all other relief the Court deems just and proper.

Respectfully submitted,

Dated: October 14, 2026

LAW OFFICE OF THOMAS H. CASEY, INC., A PROFESSIONAL CORPORATION

By: Thomas H. Casey
Thomas H. Casey Attorneys for A. Cisneros, Chapter 7 Trustee for the Bankruptcy Estate of HK Lane Palm Desert, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## UPON APPROVAL BY THE COURT, A TRUSTEE MAY COMPROMISE A CLAIM OF THE ESTATE.

Federal Rule of Bankruptcy Procedure 9019(a) provides that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Upon notice to the creditors the Trustee may compromise a claim of the Estate.

## II.
## THE BANKRUPTCY COURT MAY APPROVE A COMPROMISE WHICH IS FAIR AND EQUITABLE.

The purpose of a compromise agreement is to allow the parties to avoid the expenses and burdens associated with litigation. *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied sub mon*, *Martin v. Robinson*, 479 U.S. 854 (1986). The bankruptcy court has great latitude in approving a compromise agreement if it finds that the compromise is fair and equitable. *Id*. at 1382; *see also, Woodson v. Fireman's Fund Insurance Company (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the Court must consider the factors set forth below. *In re A & C Properties*, 784 F.2d at 1381; *In re Woodson*, 839 F.2d at 620. In other words, the Court must weigh certain factors in order to determine whether the compromise is in the best interests of the bankrupt estate. *In re A & C Properties*, 784 F.2d at 1382.

In ruling on a proposed compromise, a bankruptcy court should give substantial weight to the trustee's views as to the merits of the compromise and settlement, and should not substitute its own judgment for that of the trustee. *See In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976); *see also In re Calra Leather, Inc.*, 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984). Nor does the Court

need to conduct an extensive investigation into the merits of the claims that the parties seek to settle. *See In re Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, the court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant*, 699 F.2d 599, 608 (2d Cir. 1982); *see also In re Bell & Beckwith*, 87 B.R. 472, 474 (N.D. Ohio 1987).

**(a) <u>The probability of success in the litigation:</u>**

The Trustee has a fairly high likelihood of prevailing on the Trustee's Counterclaim against WRE. The Trustee's Counterclaim against WRE is based largely on fraudulent conveyance causes of action. Before filing the Trustee's Counterclaim against WRE the Trustee's counsel took the 2004 examination of the person most knowledgeable for WRE and obtained the expert opinion of Donald T. Fife, CPA of Hahn Fife. Trustee counsel also conducted legal research on the issue of when the value of assets fraudulently transferred should be determined. Yet, the Trustee recognizes that all litigation is inherently uncertain and acknowledges that the Trustee's Counterclaim carries a certain amount of risk. WRE has retained its own expert witness and factual disputes could arise.

The Trustee's Crossclaim against HKLLQ requests a declaratory relief judgment the APA is void and unenforceable as a matter of law and public policy because its purpose and effect is to effectuate a fraudulent transfer. The Trustee's legal research indicates the Trustee's Crossclaim is well supported by the applicable legal authorities, but to prevail on his Crossclaim against HKLLQ, the Trustee must first prevail on his fraudulent conveyance Counterclaim against WRE. Therefore, the Trustee's Crossclaim against HKLLQ also carries a certain amount of risk.

**(b) <u>The difficulties, if any, to be encountered in the matter of collection:</u>**

This factor heavily favors granting the Trustee's Motion and approving the Settlement Agreement. Even if the Trustee prevailed on his Counterclaim against WRE and obtained a judgment against WRE in the amount of $1,363,311, WRE very likely could not pay such a judgment. By agreeing WRE will resume payments per the original Promissory Note the Estate

will receive 50% of the quarterly payments up to the amount of $540,000 and the risk of WRE becoming insolvent is reduced.

**(c) <u>The expense, inconvenience and delay associated with litigation:</u>**

These factors support the granting of the Trustee's Motion. Continuing to litigate the Trustee's Counterclaim against WRE and the Trustee's Crossclaim against HKLLQ would result in high legal fees. Several depositions will be required including the depositions of expert witnesses on the issues of the value of the assets at the time of the transfer and insolvency. A Trustee motion for summary judgment would be expensive and may not resolve all issues requiring a trial on the remaining issues. In the interim, while the litigation is pending, WRE will not be making the quarterly payments. The proposed Settlement Agreement avoids these potential, high legal fees and the delay associated with this litigation.

**(d) <u>The paramount interests of the creditors and a proper deference to their reasonable views in the premises:</u>**

The proposed Settlement Agreement attached hereto as **Exhibit "1"** is in the best interests of the estate and its creditors. Per the terms of the Settlement Agreement the estate will receive the total amount of $540,000 which will substantially benefit creditors. Fees and costs of Trustee counsel are approximately $165,000, the fees and costs of the Trustee's expert Donald T. Fife, CPA are approximately $20,000 and the Trustee's statutory fee per Section 326 is approximately $30,250, resulting in a very positive net benefit to the estate.

In light of the amount of the agreed upon settlement in the amount of $540,000 and the costs and delays inherent in all litigation, approving the Settlement Agreement without the necessity of continuing litigation is in the best interests of the Bankruptcy Estate.

Based on the foregoing, the Settlement Agreement is fair and reasonable, is in the best interest of creditors and the estate, and is a valid exercise of the Trustee's business judgment. The proposed Settlement Agreement, after mediation and subsequent extensive settlement discussions, was entered into in good faith, and was negotiated at arms' length. The settlement represents the best resolution for the Parties as well as for creditors of the Bankruptcy Estate. The Settlement Agreement, as set forth in **Exhibit "1"**, should be approved by this Court.

Accordingly, the Trustee requests that the Bankruptcy Court enter an order pursuant to Bankruptcy Rule 9019 authorizing the Trustee to enter into the Settlement Agreement and approving the terms of the compromise as agreed upon by the Parties.

## III.
## CONCLUSION.

**WHEREFORE,** based on the reasons set forth above, the attached Memorandum of Points and Authorities and supporting evidence, the Trustee requests the Court enter an order:

1. Granting the Motion;
2. Approving the terms of the Settlement Agreement, a copy of which is attached as **Exhibit "1"** to the Motion;
3. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement; and,
4. For any and all other relief the Court deems just and proper.

Dated: October 14 2026

LAW OFFICE OF THOMAS H. CASEY, INC., A PROFESSIONAL CORPORATION

By: [signature]
Thomas H. Casey Attorneys for A. Cisneros, Chapter 7 Trustee for the Bankruptcy Estate of HK Lane Palm Desert, Inc.

**DECLARATION OF A. CISNEROS**

I, A. Cisneros, declare as follows:

1. I am the duly appointed, qualified and acting chapter 7 trustee ("Trustee") of estate of *In re HK Lane Palm Desert, Inc*, Case No. 6:24-bk-13474-SY before the United States Bankruptcy Court for the Central District of California, Riverside Division.

2. The facts contained in this declaration are based upon information which I have acquired in my capacity as Trustee and upon my review of the pleadings, records, and files in this matter, and are true and correct to the best of my knowledge, information, and belief. Any term not specifically defined in this declaration shall have the meaning provided in the Motion.

3. I make this declaration in support of my *Motion For Order Approving Settlement Agreement Between the Trustee, WRE SoCal, Inc., dba Windermere Desert Properties ("WRE"), and HK Lane La Quinta, Inc. ("HKLLQ") Pursuant To Federal Rule Of Bankruptcy Procedure 9019* ("Motion").

4. On or about June 2023, the Debtor and HKLLQ, as sellers, entered into an Asset Purchase Agreement ("APA"), with WRE SoCal as buyer. The APA provided for the sale of substantially all assets belonging to and used in the Debtor's and HKLLQ's real estate brokerage business in four (4) offices located in Southern California ("Brokerage Assets"). The APA is attached hereto as **Exhibit "2"** and is incorporated herein by this reference.

5. Per the APA, the purchase price for the Brokerage Assets was $1,650,000 ("Purchase Price") with a down payment due of $225,000 ("Down Payment").

6. The APA refers to a promissory note ("Note") and states that "The Note shall be in the form attached as Exhibit D."

7. WRE SoCal timely made the $225,000 Down Payment and the first quarterly payment in the amount of $38,339 to the Debtor.

8. The Note is attached to the APA as Exhibit "D" and is executed by WRE SoCal. Under the Note, WRE SoCal promises to pay HKLLQ the sum of $1,425,000, with quarterly payments to be made on January 31, April 30, July 31, and October 31 of each year, with a

maturity date of May 31, 2028 (the "Maturity Date"). The amount of each quarterly payment is defined by a formula as set forth in the Note. Upon the Maturity Date, a balloon payment of the remaining balance is due (the "Balloon Payment").

9. On or about June 20, 2024 ("Petition Date"), the Debtor filed its Chapter 7 petition with the Bankruptcy Court. I was appointed as Chapter 7 Trustee.

10. On September 12, 2024, I filed a Notification of Asset Case (Doc 14). The Bankruptcy Court set the claims bar date for December 16, 2024, and for governmental agencies, December 17, 2024 (Doc 14-1).

11. WRE SoCal timely made all payments on the Note until the April 30, 2026 payment. At that time, it ceased making monetary payments due to its assertion that it could offset its indemnity rights under the APA and the Note. Pursuant to the formula under the Note, the amount due for the April 30, 2026 payment is $28,513.22 and the amount due for the July 31, 2026 payment is $27,102.57 (collectively, the "Unpaid Installment Payments").

12. As of the time of the execution of the Settlement Agreement, the amount due from WRE SoCal, pursuant to the APA and Note, is $1,107,083.98.

13. On December 21, 2025, WRE SoCal filed a Complaint in Interpleader ("Interpleader") against me as Trustee and HKLLQ (Adv 1 Doc 1).

14. On February 23, 2026, HKLLQ filed a Motion to Dismiss WRE SoCal's First Amended Complaint ("FAC") (Adv 1 Doc 24) ("Motion To Dismiss Interpleader FAC").

15. On April 20, 2026, my counsel on my behalf filed my Answer to the Interpleader FAC (Adv 1 Doc 34).

16. Also on April 20, 2026, my counsel on my behalf filed a Counter-Claim against WRE SoCal requesting a monetary judgment in the amount of $1,363,311 ("Counterclaim") and a Cross-Claim against HKLLQ for a judgment the APA is void (Adv 1 Doc 35) ("Crossclaim"). A copy of my Counterclaim against WRE and Crossclaim against HKLLQ is attached hereto as **Exhibit "3"** and is incorporated herein by this reference.

17. WRE SoCal filed an Answer to my Counter-Cross Claim (Adv 1 Doc 59) ("WRE SoCal Answer").

18. Pursuant to Order entered August 26, 2026, the Bankruptcy Court granted HKLLQ's Motion To Dismiss WRE's Interpleader FAC (Adv 1 Doc 68) ("Dismissal Order"). The Dismissal Order does not affect my pending Counterclaim against WRE or my Crossclaim against HKLLQ.

19. On May 6, 2026, in the Superior Court of California, County of Riverside, HKLLQ commenced an action against WRE SoCal, captioned HK Lane La Quinta Inc. v. WRE SoCal, Inc. dba Windermere Desert Properties, Case No. CVPS2603973 (the "State Court Action").

20. After being served with the summons in the State Court Action, WRE SoCal filed, in the Bankruptcy Court, a Notice of Removal of Civil Action to the United States Bankruptcy Court captioned HK Lane La Quinta, Inc. v. WRE SoCal, Inc. dba Windermere Desert Properties, Adversary Case No. 6:26-ap-01078-SY (Adv 2 Doc 1) ("Notice Of Removal").

21. On July 24, 2026, WRE SoCal filed an Answer as well as a Cross-Complaint against HKLLQ (Adv 2 Doc 6) ("Cross-Complaint").

22. HKLLQ subsequently filed a Motion to Dismiss WRE SoCal's Cross-Complaint (Adv 2 Doc 10).

23. WRE, HKLLQ, and I as Trustee, attended mediation and thereafter continued our settlement discussions. The Parties have reached a global settlement agreement and each party desires to resolve all issues among them.

24. I, as Trustee, have a fairly high likelihood of prevailing on my Counterclaim against WRE. My Counterclaim against WRE is based largely on fraudulent conveyance causes of action. Before filing my Counterclaim against WRE, my counsel took the 2004 examination of the person most knowledgeable for WRE and obtained the expert opinion of Donald T. Fife, CPA of Hahn Fife. My counsel also conducted legal research on the issue of when the value of

assets fraudulently transferred should be determined. Yet, as Trustee I recognize that all litigation is inherently uncertain and acknowledge that my Counterclaim carries a certain amount of risk. WRE has retained its own expert witness and factual disputes could arise.

25. My Crossclaim against HKLLQ requests a declaratory relief judgment the APA is void and unenforceable as a matter of law and public policy because its purpose and effect is to effectuate a fraudulent transfer. My counsel's legal research indicates my Crossclaim is well supported by the applicable legal authorities, but to prevail on my Crossclaim against HKLLQ, I as Trustee must first prevail on my fraudulent conveyance Counterclaim against WRE. Therefore, my Crossclaim against HKLLQ also carries a certain amount of risk.

26. Even if I as Trustee prevailed on my Counterclaim against WRE and obtained a judgment against WRE in the amount of $1,363,311, WRE very likely could not pay such a judgment. By agreeing WRE will resume payments per the original Promissory Note the Estate will receive 50% of the quarterly payments up to the amount of $540,000 and the risk of WRE becoming insolvent is reduced.

27. Continuing to litigate my Counterclaim against WRE and my Crossclaim against HKLLQ would result in high legal fees. Several depositions will be required including the depositions of expert witnesses on the issues of the value of the assets at the time of the transfer and insolvency. A motion for summary judgment by me as Trustee would be expensive and may not resolve all issues requiring a trial on the remaining issues. In the interim, while the litigation is pending, WRE will not be making the quarterly payments. The proposed Settlement Agreement avoids these potential, high legal fees and the delay associated with this litigation.

28. The proposed Settlement Agreement is attached hereto as **Exhibit "1"** and is incorporated herein by this reference. Per the terms of the Settlement Agreement the estate will receive the total amount of $540,000 which will substantially benefit creditors. Fees and costs of my counsel are approximately $165,000, the fees and costs of my expert Donald T. Fife, CPA are approximately $20,000 and my statutory fee per Section 326 is approximately $30,250, resulting in a very positive net benefit to the estate.

29. The proposed Settlement Agreement, after mediation and subsequent extensive settlement discussions, was entered into in good faith, and was negotiated at arms' length. The settlement represents the best resolution for the Parties as well as for creditors of the Bankruptcy Estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on October 13, 2026, at Riverside, California.

A. Cisneros, Declarant

# Exhibit 1

**SETTLEMENT AGREEMENT**

This Agreement (the "Agreement") is made, executed, and entered into effective as of October 6, 2026 (the "Execution Date"), by and between:

Arturo M. Cisneros, in his capacity as the duly appointed Chapter 7 Trustee (the "Trustee") of the bankruptcy estate ("Bankruptcy Estate") of HK Lane Palm Desert, Inc. (the "Debtor") in the bankruptcy case ("Bankruptcy Case") filed in the United States Bankruptcy Court for the Central District of California, Riverside Division ("Bankruptcy Court"), as Case No. 6:24-bk-13474-SY, WRE SoCal, Inc., dba Windermere Desert Properties ("WRE SoCal"), and HK Lane La Quinta, Inc. ("HKLLQ"), (each, a "Party", and collectively, the "Parties") with regard to the following facts, circumstances, understandings and beliefs (collectively, the "Recitals"):

**RECITALS**

A. On or about June 2023, the Debtor and HKLLQ, as sellers, entered into an Asset Purchase Agreement ("APA"), with WRE SoCal as buyer. The APA provided for the sale of substantially all assets belonging to and used in the Debtor's and HKLLQ's real estate brokerage business in four (4) offices located in Southern California ("Brokerage Assets").

B. Per the APA, the purchase price for the Brokerage Assets was $1,650,000 ("Purchase Price") with a down payment due of $225,000 ("Down Payment").

C. WRE SoCal timely made the Down Payment to Debtor.

D. The APA refers to a promissory note ("Note") and states that "The Note shall be in the form attached as Exhibit D."

E. The Note is attached to the APA as Exhibit "D" and is executed by WRE SoCal. Under the Note, WRE SoCal promises to pay HKLLQ the sum of $1,425,000, with quarterly payments to be made on January 31, April 30, July 31, and October 31 of each year, with a maturity date of May 31, 2028 (the "Maturity Date"). The amount of each quarterly payment is defined by a formula as set forth in the Note. Upon the Maturity Date, a balloon payment of the remaining balance is due (the "Balloon Payment").

F. On or about June 20, 2024 ("Petition Date"), the Debtor filed its Chapter 7 petition with the Bankruptcy Court. Arturo M. Cisneros was appointed as Chapter 7 Trustee.

G. On September 12, 2024, the Trustee filed a Notification of Asset Case (Doc 14). The Bankruptcy Court set the claims bar date for December 16, 2024, and for governmental

agencies, December 17, 2024 (Doc 14-1).

H. WRE SoCal timely made all payments on the Note until the April 30, 2026 payment. At that time, it ceased making monetary payments due to its assertion that it could offset its indemnity rights under the APA and the Note. Pursuant to the formula under the Note, the amount due for the April 30, 2026 payment is $28,513.22 and the amount due for the July 31, 2026 payment is $27,102.57 (collectively, the "Unpaid Installment Payments").

I. As of the time of the execution of this Agreement, the amount due from WRE SoCal, pursuant to the APA and Note, is $1,107,083.98.

**<u>Interpleader Complaint – Adv. Case No. 6:25-ap-01133-SY</u>**

J. On December 21, 2025, WRE SoCal filed a Complaint in Interpleader ("Interpleader") against the Trustee and HKLLQ (Adv 1 Doc 1).

K. On February 23, 2026, HKLLQ filed a Motion to Dismiss WRE SoCal's First Amended Complaint ("FAC") (Adv 1 Doc 24) ("Motion To Dismiss FAC").

L. On April 20, 2026, the Trustee filed his Answer to the FAC (Adv 1 Doc 34).

M. Also on April 20, 2026, the Trustee filed a Counter-Claim against WRE SoCal and a Cross-Claim against HKLLQ (Adv 1 Doc 35) ("Counter-Cross Claim").

N. WRE SoCal filed an Answer to the Trustee's Counter-Cross Claim (Adv 1 Doc 59) ("WRE SoCal Answer").

O. Pursuant to Order entered August 26, 2026, the Bankruptcy Court granted HKLLQ's Motion To Dismiss FAC (Adv 1 Doc 68) ("Dismissal Order"). The Dismissal Order does not affect the Trustee's pending Counter-Cross Claim.

**<u>Notice Of Removal – Adv. Case No. 6:26-ap-01078-SY</u>**

P. On May 6, 2026, in the Superior Court of California, County of Riverside, HKLLQ commenced an action against WRE SoCal, captioned *HK Lane La Quinta Inc. v. WRE SoCal, Inc. dba Windermere Desert Properties*, Case No. CVPS2603973 (the "State Court Action").

Q. After being served with the summons in the State Court Action, WRE SoCal filed, in the Bankruptcy Court, a Notice of Removal of Civil Action to the United States Bankruptcy Court captioned *HK Lane La Quinta, Inc. v. WRE SoCal, Inc. dba Windermere Desert Properties*, Adversary Case No. 6:26-ap-01078-SY (Adv 2 Doc 1)

("Notice Of Removal").

R. On July 24, 2026, WRE SoCal filed an Answer as well as a Cross-Complaint against HKLLQ (Adv 2 Doc 6) ("Cross-Complaint").

S. HKLLQ subsequently filed a Motion to Dismiss WRE SoCal's Cross-Complaint (Adv 2 Doc 10).

**AGREEMENT**

**NOW THEREFORE**, pursuant to the foregoing Recitals, in consideration of the obligations, conditions, agreements, covenants, warranties and representations contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms, provisions and conditions of this Agreement, the Parties, intending to be legally bound by this Agreement, hereby covenant, agree, warrant, represent and declare as follows:

1. This Agreement is subject to approval by the Bankruptcy Court. The Trustee shall file a motion seeking United States Bankruptcy Court approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion"). No term or condition of this Agreement shall be binding on any party until such time as the Agreement is approved. The Parties shall make good faith efforts pending review of the Agreement by the Bankruptcy Court to maintain the status quo.

2. Within 7 days of the Effective Date (as defined below), WRE SoCal shall pay the Unpaid Installment Payments of $55,615.79. In the event the Effective Date occurs after any installment payments on the Note not yet owed (the "Future Installment Payments") come due, the Future Installment Payments which have come due shall be treated as Unpaid Installment Payments and be paid at the same time as the April and July 2026 installment payments. Upon tender of this payment, the Note will be deemed current as of the Effective Date and all claims for defaulted interest released pursuant to Paragraphs 10 and 11 of this Agreement.

3. Upon the Effective Date, WRE SoCal shall receive a credit on the Note of $20,000, reflecting a partial reimbursement of its indemnity rights, to be applied to the principal balance of the Note.

4. Upon the Effective Date, HKLLQ irrevocably assigns to the Bankruptcy Estate proceeds of the Note in the amount of $540,000 (the "Note Assigned Sum"). The

Trustee accepts this assignment and WRE SoCal consents to the assignment.

5. The Note Assign Sum shall be paid from the proceeds of the Note as follows: 50% of the Unpaid Installment Payments and 50% of the Future Installment Payments shall be paid to the Bankruptcy Estate, with the remaining 50% of the Unpaid Installment Payments and the Future Installment Payments paid to HKLLQ, with payments made pursuant to the schedule set forth in Paragraph 2 for Unpaid Installment Payments and under the Note for Future Installment Payments. Upon the Maturity Date, the Bankruptcy Estate shall receive the balance of the Note Assigned Sum not yet paid, with the remainder of the Balloon Payment under the Note to be paid to HKLLQ.

6. All payments made by WRE SoCal to the Trustee shall be by check made payable to "Chapter 7 Trustee A. Cisneros" and forwarded to Chapter 7 Trustee A. Cisneros, Malcolm Cisneros, 3403 Tenth Street, Suite 714, Riverside, CA 92501.

7. All payments made by WRE SoCal to HKLLQ shall be by wire to the account of "Katofsky Law, A Professional Corporation, Client Trust Account", Attn: Jeff Katofsky, 4558 Sherman Oaks Ave., Sherman Oaks, CA 91403 pursuant to instructions provided by Jeff Katofsky.

8. The Trustee's Counter-Claim and Cross-Claim in adversary proceeding 6:25-ap-01133-SY and HKLLQ's Complaint in adversary proceeding 6:26-ap-01078-SY, along with the related counter-claims, shall be dismissed with prejudice as to WRE and with prejudice as to HKLLQ no later than seven (7) days after the Effective Date. No party shall take any act to substantially prosecute these matters while waiting for Court approval of this Agreement.

9. In the event WRE SoCal defaults on the Note, the Trustee or HKLLQ may, after providing five business days' written notice via email or U.S. Mail to WRE SoCal of the Default file a motion with the Bankruptcy Court for entry of a judgment on the Balance of the Note, plus attorney fees per the Note, which shall be granted if the Court determines that WRE SoCal is in default. Notice of Default by WRE shall be forwarded to Bernie Kornberg, Miller & Nash, 340 Golden Shore, Suite 450 Long Beach, California 90802, bernie.kornberg@millernash.com In the event the Trustee and HKLLQ obtain a judgment against WRE SoCal, the amount of the judgment shall be allocated as follows:

a. Forty percent (40%) to the Trustee.

b. Sixty percent (60%) to HKLLQ.

10. Except for the obligations, rights, and duties expressly created above by this Agreement, by execution of this Agreement, the Trustee, HKLLQ, and WRE SoCal hereby fully and irrevocably release, discharge and acquit each other, and their respective officers, directors, partners, members, parents, subsidiaries, affiliated companies, employees, agents, servants, heirs, administrators, personal representatives, insurers, attorneys, representatives, successors and assigns (collectively, "Representatives") of and from and against any and all rights, claims, debts, demands, acts, suits, including, but not limited to, Adversary Case Nos. 6:25-ap-01133-SY and 6:26-ap-01078-SY, proceedings, agreements, liabilities, obligations, actions and/or causes of action of every nature, character, type and description, which the Parties hereto, or any of them, now own or hold against each other.

11. Waiver of California Civil Code § 1542. The Parties expressly waive the provisions of California Civil Code § 1542, which provides:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

12. The release in Paragraphs 10 and 11 of this Agreement shall not extinguish the Note or APA, but shall release any claims which arose under the Note or APA prior to the Effective Date. The terms of the Note and the APA, except as specifically modified in Paragraphs 2 through 9 of this Agreement, shall control in the event of any dispute between the Parties regarding the post-Effective Date obligations of the Parties on the APA and the Note.

13. The Parties, each individually and combined, further agree to be bound by the following terms and conditions.

A. <u>Recital of Facts</u>. Each and every recital of fact set forth above is incorporated herein by this reference as though fully set forth. These recitals are an integral part of this Agreement and are hereby stipulated to by the Parties and by each

of them.

B. Authority to Execute Agreement. All Parties covenant and warrant they have full rights and authority to execute this Agreement and to bind the Party on whose behalf they sign to the terms and conditions set forth herein.

C. Trustee Capacity. Arturo M. Cisneros is signing this Agreement in his capacity as the Chapter 7 Trustee of the Bankruptcy Estate of HK Lane Palm Desert, Inc. Nothing contained herein shall in any way impute personal liability to Arturo M. Cisneros or to anyone acting on his behalf.

D. Reliance. The Parties, and each of them, understand the meaning of this Agreement and expressly consent that this Agreement shall be given full force and effect according to each and all of its express terms and provisions, including those relating to the release of unknown and unsuspected claims, demands, and causes of action. The Parties acknowledge that they have relied solely upon their own judgment, belief and knowledge of the existence, nature and extent of each claim, demand, or cause of action that each Party may have against the other, and that each such Party has not been influenced to any extent in entering into this Agreement by any representation or statement regarding any such claim, demand or cause of action made by any other Party hereto. The Parties hereto have made such investigation of the facts pertaining to the releases contained herein as they deem necessary. The terms of this Agreement are the result of negotiation among the Parties. In interpreting this Agreement, no rule of construction shall be applied whereby an ambiguity is construed against the Party who drafted the Agreement. This Agreement has been carefully read by each of the Parties and the contents thereof are known and understood by each of the Parties. This Agreement is signed freely by each Party executing it.

E. Covenant Re: Assignment. The Parties hereto represent and warrant to each other that each is the sole and lawful owner of all right, title and interest in and to every claim and other matter which each purports to release herein, and that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person, firm, association, corporation or other entity, any right,

title or interest in any such claim or other matter, and that they have not instituted any proceedings against any party released herein. In the event that such representation is false, and any such claim or matter is asserted against any Party hereto (and/or the successor to such Party) by any party or entity who is the assignee or transferee of such claim or matter, then the Party hereto who assigned or transferred such claim or matter shall fully indemnify, protect, defend and hold harmless the other Party against such claim or matter and from all actual costs, attorneys' fees, expenses, liabilities and damages which that Party and/or its Representatives incurs as a result of the assertion of such claim or matter.

F. Modification. This Agreement may not be amended, canceled, revoked or otherwise modified except by written agreement subscribed by all the Parties to be charged with such modification.

G. Binding. This Agreement shall be binding on the Parties hereto when each such Party has executed at least one counterpart, subject only to the approval of the Bankruptcy Court.

H. Approval Order. The effectiveness of this Agreement and the obligations set forth herein are expressly conditioned upon the Bankruptcy Court entering an order approving this Agreement (the "Approval Order") and the Approval Order becoming a final order. Each Party will in good faith exercise all efforts reasonably required of such Party to obtain the Approval Order and cause the Approval Order to become a final order, including: (a) promptly executing and delivering to the Trustee any motion, declarations, documents and information reasonably requested by the Trustee in connection with such efforts; (b) appearing at any related hearings if requested by the Trustee; and (c) if there is any appeal or motion for reconsideration, modification, revocation, reversal, remand, set aside or vacating of the Approval Order (the "Appeal"), then agreeing to take the position in a signed statement or declaration that the Approval Order should be affirmed and any stay pending Appeal denied. The Approval Order will be considered to have become final and the Agreement will become effective (the "Effective Date") on the first day upon which: (A)

the Approval Order has been entered without an objection to the Motion; or (B) the Approval Order has been entered notwithstanding an objection to the Motion, but no Appeal is filed within fourteen (14) days of the date the Approval Order is entered; or (C) the Approval Order has been entered notwithstanding an objection to the Motion, and an Appeal is filed within fourteen (14) days of the date the Approval Order is entered, but the Approval Order is not stayed pending Appeal; or (D) the Approval Order has been entered notwithstanding an objection to the Motion, an Appeal is filed within fourteen (14) days of the date the Approval Order is entered, and the Approval Order is stayed pending Appeal, but the Approval Order is affirmed or the stay is lifted without the Approval Order being modified, revoked, reversed, remanded, set aside or vacated.

I. Agreement Binding on Successors. This Agreement shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective Representatives or successors.

J. No Admission of Liability. The Parties hereto acknowledge that this Agreement represents a settlement of disputed claims, and that by entering into this Agreement no Party admits or acknowledges the existence of any liability or wrongdoing. In fact, each of the Parties to this Agreement specifically denies any wrongdoing and liability. Nothing in this Agreement shall be construed or asserted as an admission of any fact or liability against any Party for any purpose.

K. Attorneys' Fees and Costs. In the event it is necessary to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

L. Jurisdiction of the Bankruptcy Court. The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Agreement, and the Parties agree to grant the Bankruptcy Court jurisdiction to hear any dispute over the Note or APA. Should any dispute arise which involves this Agreement, the Note, or APA, the Bankruptcy Court shall have exclusive jurisdiction to determine the dispute.

M. Severability. In the event any provision of this Agreement shall be held to be void, voidable, or unenforceable, the remaining provisions shall remain in full force and effect.

N. Governing Law. Notwithstanding anything to the contrary in any prior agreement or contract, this Agreement and all prior contracts or agreements between the Parties or any separate entity or entities of a Party on the one side and any separate entity or entities of a Party on the other side shall be governed by, interpreted and construed according to the laws of the State of California without regard to conflict of law principles.

O. Counterparts. This Agreement may be executed in one or more counterparts and by facsimile transmission, each of which when executed and delivered shall be deemed to be an original, and all of which when executed shall constitute one and the same instrument.

P. Integration. This Agreement constitutes the entire agreement between the Parties who have executed it and supersedes any and all other agreements, understandings, negotiations or discussions, either oral or in writing, express or implied, between the Parties to this Agreement. The Parties to this Agreement each acknowledge that no representations, inducements, promises, agreements or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement or warranty and that no representation, inducement, promise, agreement or warranty not contained in this Agreement, including, but not limited to, any purported supplements, modifications, waivers or terminations of this Agreement shall be valid or binding, unless executed in writing by all of the Parties to this Agreement. This Agreement is intended to be final and binding upon the Parties and is further intended to be effective as a full and final accord and satisfaction among them regardless of any claims of mistake of fact or law, duress, or any other circumstances whatsoever. Each Party relies upon the finality of this Agreement as a material factor inducing that Party's execution of this Agreement. Each Party agrees that from the date

referred to in this Agreement, other than those set forth herein.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates set forth below:

By: ______________________ Date: 9/10/26

Arturo M. Cisnero, in his capacity as Chapter 7 Trustee of the Bankruptcy estate of HK Lane Palm Desert, Inc.

By: ______________________ Date: ______________

WRE SoCal, Inc., dba Windermere Desert Properties

By: ______________________ Date: ______________

Harvey Katofsky
President
HK Lane La Quinta, Inc.

Approved as to form and content:

LAW OFFICE OF THOMAS H. CASEY, INC.,
A PROFESSIONAL CORPORATION

By: ______________________ Date: Oct. 14, 2026

Thomas H. Casey, Attorney for Arturo Cisneros, as Chapter 7 Trustee of the Bankruptcy estate of HK Lane Palm Desert, Inc.

MILLER NASH LLP

of this Agreement, any and all rights and/or liabilities arising between or among the respective Parties and each of them with respect to the matters herein released shall arise solely out of the terms, provisions, representations and warranties contained in this Agreement. There are no agreements or understandings between the Parties hereto relating to the matters and releases referred to in this Agreement, other than those set forth herein.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates set forth below:

By: ______________________________ Date: ______________

Arturo M. Cisneros, in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of HK Lane Palm Desert, Inc.

By: DocuSigned by: Geoff Wood Manager E9DEB28D3934401... Date: 10/9/2026

WRE SoCal, Inc., dba Windermere Desert Properties

By: ______________________________ Date: ______________

Jeff Katofsky
President
HK Lane La Quinta, Inc.

Approved as to form and content:

LAW OFFICE OF THOMAS H. CASEY, INC.,
A PROFESSIONAL CORPORATION

By: ______________________________ Date: ______________

Thomas H. Casey, Attorney for Arturo Cisneros, as Chapter 7 Trustee of the Bankruptcy Estate of HK Lane Palm Desert, Inc.

MILLER NASH LLP

By: DocuSigned by: Bernie Kornberg 3478F7EA2DC74B0... Date: 10/11/2026

Bernie Kornberg, Attorney for WRE SoCal, Inc.,
dba Windermere Desert Properties

KATOFSKY LAW

By: Date:

Jeff Katofsky, Attorney for HK Lane La Quinta,
Inc.

of this Agreement, any and all rights and/or liabilities arising between or among the respective Parties and each of them with respect to the matters herein released shall arise solely out of the terms, provisions, representations and warranties contained in this Agreement. There are no agreements or understandings between the Parties hereto relating to the matters and releases referred to in this Agreement, other than those set forth herein.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates set forth below:

By: ____________________ Date: __________
Arturo M. Cisneros, in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of HK Lane Palm Desert, Inc.

By: ____________________ Date: __________
WRE SoCal, Inc., dba Windermere Desert Properties

By: ____________________ Date: 7 oct 26
Jeff Katofsky
President
HK Lane La Quinta, Inc.

Approved as to form and content:

LAW OFFICE OF THOMAS H. CASEY, INC.,
A PROFESSIONAL CORPORATION

By: ____________________ Date: __________
Thomas H. Casey, Attorney for Arturo Cisneros, as Chapter 7 Trustee of the Bankruptcy Estate of HK Lane Palm Desert, Inc.

MILLER NASH LLP

By: ______________________________ Date: ______________

Bernie Kornberg, Attorney for WRE SoCal, Inc., dba Windermere Desert Properties

KATOFSKY LAW

By: ______________________________ Date: 7 Oct 26

Jeff Katofsky, Attorney for HK Lane La Quinta, Inc.

# Exhibit 2

# ASSET PURCHASE AGREEMENT

This agreement is made as of June 8, 2023 by and between HK Lane Palm Desert , Inc., a California corporation and HK Lane La Quinta, Inc., a California corporation (collectively "Seller"), and WRE SoCal, Inc., d/b/a Windermere Desert Properties, a California corporation ("Purchaser").

## RECITALS

A. Seller owns certain assets used in its real estate brokerage business, conducted at four office locations in Southern California (the "Business").

B. Seller desires to sell to Purchaser and Purchaser desires to purchase from Seller substantially all assets belonging to Seller used in connection with the Business, on the condition and terms stated in this agreement.

NOW THEREFORE, in consideration of the mutual benefits to the parties and the promises of future performance set forth below, it is agreed as follows:

1. **PURCHASE AND SALE OF ASSETS**.

1.1 **Sale of Assets**. Based upon the representations and warranties of Seller set forth in this Agreement and subject to the terms and conditions of this Agreement, at the closing, Seller shall sell, transfer, assign and deliver to Purchaser, and Purchaser shall purchase, all assets used by Seller in connection with the Business, except those excluded as described below in Section 1.3 (the "Purchased Assets"). The Purchased Assets include, without limitation, the following:

1.1.1 **Furniture, Fixtures and Equipment**. All of Seller's right, title and interest in all tangible personal property, furniture, fixtures, office equipment and supplies on Seller's Business premises (collectively the "Tangible Assets"). The Tangible Assets shall be transferred free and clear of any encumbrances, except for any leases which Purchaser has agreed to assume as set forth below. An inventory of the fixed assets is attached hereto as Exhibit A.

1.1.2 **Listing Agreements And Pending Transactions.** All of Seller's right, title and interest in, and obligations under, the Seller's active listing agreements but not pending transactions existing on the Closing Date, as those shall remain property of Seller (the "Listing Agreements" and "Pending Transactions"). Purchaser agrees to assume and perform in due course all obligations of the Seller under the Listing Agreements and Pending Transactions. Seller will cooperate with Purchaser to effect the assignment of all Listing Agreements at Closing, including execution of all necessary documents to transfer office numbers, member numbers, listings, pendings, etc. with any other multiple listing services of which Seller is a member. Purchaser will cooperate with Seller to effect the processing of commissions on all Pending Transactions, which shall be the property of and remitted to Seller. For the mutual convenience of the parties, Purchaser shall, if requested, transfer such transactions to Purchaser and continue to process commissions on the Pending Transactions, remitting to Seller all amounts which Seller otherwise would have retained (commonly referred to as "Company Dollars" and further defined below). Payments from

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

any Pending Transactions that close after the Closing Date will be remitted to Seller within five (5) Business Days of the transaction closing. A list of active listings and Pending Transactions as of the date of this Agreement is attached hereto as Exhibit B and B - 1and shall be updated on the Closing Date.

1.1.3 **Miscellaneous Assets**. All posts, signs, forms and office supplies, and computer software owned by Seller, and all files concerning pending transactions and active listings, and access to and use of all Seller's customer, client and prospect lists, all phone and fax numbers, internet domain names, web sites, goodwill, intellectual property, and other marketing materials (collectively the "Miscellaneous Assets").

1.1.4 **Property Management.** All of Seller's right, title and interest in any property management agreements, files or transactions in existence at Closing, as well as all rent and other deposits held in Seller's property management trust account(s). Property management trust deposits shall be transferred to Purchaser at Closing, or as soon as practical thereafter, once Purchaser has established its own property management trust account(s).

1.2 **Other Assets**. Purchaser shall obtain title to all other assets not specifically enumerated in paragraph 1.1 above, except for the assets specifically excluded below.

1.3 **Excluded Assets.** Notwithstanding the foregoing, Purchaser understands and agrees that the following assets are excluded from the purchase, and shall be retained by Seller:

1.3.1 cash and cash equivalents on hand or on deposit in banks, marketable securities, or inter-company or inter-affiliate accounts as of the Closing Date.
1.3.2 Accounts Receivable for amounts owing to Seller by brokers or other third parties as of the Closing Date;
1.3.3 Personal items (furniture, art, etc.) belonging to Seller's principals, and identified on the attached Exhibit C.
1.3.4 Commissions on Pending Transactions as of the Closing of this Agreement, but which were not received by Seller until on or after the Closing date.
1.3.5 any insurance policies, promissory notes, amounts due from employees, bonds, letters of credit, certificates of deposit, other similar items, and any cash surrender value in regard thereto;
1.3.6. all tax returns and supporting materials, all original financial statements and supporting materials, all books of accounts, financial statements, state sales tax books, records, and returns, employment records, purchase and sales records, correspondence, files, literature, and all records of Seller relating to the sale of the Assets.
1.3..7 any interest in and to any refunds of federal, state, or local franchise, income, ERC Credits or other taxes for periods prior to the Closing Date.
1.3.8. Refunds from insurance policies.
1.3.9. Security Deposits on Leases, including real estate Leases.

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

2. **PURCHASE PRICE AND PAYMENT**. Subject to the terms and conditions of this Agreement, at the closing Purchaser shall purchase the Purchased Assets, and in consideration therefor shall pay Seller the following amount: The sum of one million, six hundred fifty thousand dollars and zero cents ($1,650,000.00) ("Purchase Price"), to be paid as follows:

2.1 Down payment of two hundred twenty-five thousand dollars ($225,000.00) cash at Closing.

2.2 A promissory note for the balance of the purchase price, one million, four hundred twenty-five thousand dollars and zero cents ($1,425,000.00) shall be signed by Purchaser at Closing (the "Note"). The Note shall have a term of five (5) years, with quarterly payments due January 31, April 30, July 31 and October 31 of each calendar year, in an amount equal to thirteen percent (13%) of Purchaser's Company Dollars for the preceding quarter. The first payment shall be due by October 31, 2023, and shall be based on Company Dollars for Q3 2023. "Company Dollars" means the gross commission income from real estate transactions of the Purchaser after deduction of all agent commissions, cooperating broker, referral fees, franchise fees, if any, and out-of-pocket costs (not reimbursed by an insurer) incurred by the Purchaser in connection with the defense and settlement of any claims arising out of a real estate transaction. The Company Dollars derived from any future acquisitions by the Purchaser, whether resulting from the purchase of an office or the purchase of the equity interests or assets of another real estate brokerage firm, shall not be included in the calculation of Company Dollars. The Note may be prepaid in part or in full without penalty at any time. The Note shall be in the form attached hereto as Exhibit D.

2.3 Notwithstanding the foregoing, in the event that the dollar volume of closed sales attributable to the individual licensees who transferred from Seller to Purchaser at Closing is less than $50,000,000 in any quarter, then the payment for that quarter shall be eight percent (8%) of Company Dollars instead of 13%.

2.4 The full remaining balance of the Note, if any (equal to the original principal minus all payments quarterly payments made) shall be due in full no later than May 31, 2028.

3. **ALLOCATION OF THE PURCHASE PRICE**. Seller and Purchaser agree that the purchase price shall be allocated in the following manner for all federal income tax and other purposes:

| **Category** | **Allocation** |
|---|---|
| Furniture, Fixtures and Equipment ("FFE") | Allocate to FFE based on net book value, which approximates fair value, as of the closing date. |
| Goodwill | The residual Purchase Price is allocated to "goodwill and going concern value" |

4. **ASSIGNMENT OF SELLER'S REAL ESTATE LICENSEES**. Subject to Section 1.1.2, at Closing Seller shall assign to Purchaser all firm-broker agreements then in effect. Purchaser may subsequently replace those agreements with its standard form contracts at Purchaser's discretion.

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5. **ADDITIONAL PROVISIONS**.

5.1 **Facility Lease**s. At Closing, Seller shall assign to Purchaser, and Purchaser shall accept assignment from Seller, all rights and obligations of Seller under the office leases for Seller's La Quinta and Lake Arrowhead locations only (the "Assumed Leases"). Purchaser is not assuming the leases for Seller's locations in Palm Springs or Palm Desert. Upon full execution of this Agreement, Seller shall contact the landlords for the Assumed Leases and request consent for assignment of the Leases to Purchaser at Closing. Any costs associated with the assignment provided for in the leases (such as landlord review or attorney fees) shall be equally split by Seller and Purchaser. If requested by Landlord, Purchaser shall replace Seller's principal as guarantor of the Assumed Leases. Purchaser shall pay, at the time of the assignment, the Security Deposits under the Leases to Seller, thereby transferring the Security Deposits held by such Landlords to Purchaser. Notwithstanding the foregoing, Seller understands that the landlords may be unwilling to release Seller or its guarantors from liability under the leases, and consent of the landlords to release Seller or its guarantors shall not be a condition for the assignment. Should such occur, Purchaser shall indemnify and hold harmless, including costs of defense and actual legal fees of any legal action, Seller and/or any principal of Seller for any claims, damages, liabilities or other actions taken by Landlord for a breach of such Lease. Purchaser acknowledges it has been provided copies of the Assumed Leases, and has approved them.

5.2 **Other Liabilities**. In addition, Purchaser agrees to assume the equipment lease for the Sharp MX-3071 copier/scanner/printer at the Lake Arrowhead office and another copier/scanner/printer at the La Quinta Office (the "Equipment Lease"). Purchaser is not assuming equipment leases for equipment in any of Seller's other locations. Purchaser acknowledges it has received a copy of the Equipment Leases. Other than the Equipment Leases, Purchaser is not assuming and is not liable to pay any other liabilities or obligations of Seller. Seller expressly acknowledges its obligation to perform all of its obligations except those expressly assumed by Purchaser. Seller agrees to hold Purchaser harmless from and indemnify it against any claims, liabilities or demands arising out of or in any way connected with liabilities or obligations of Seller not assumed by Purchaser.

5.3 **Errors and Omissions Claims**. Seller will be solely responsible for any and all claims arising from errors or omissions that occurred on or before the Closing Date. Purchaser will be responsible for any claims arising from errors or omissions that occur after the Closing Date.

5.4 **Covenant not to Compete.** Harvey Katofsky (hereafter "Katofsky"), the principal of Seller, holds a real estate broker's license in California, and has very close personal relationships with all of Seller's brokers and staff. Purchaser is concerned that if Seller or Katofsky opens a new real estate brokerage business it could be detrimental to Purchaser's efforts to recruit and retain brokers at the Business. Accordingly, as material consideration for the purchase contemplated by this Agreement, Purchaser has requested and Seller and Katofsky have agreed to certain restrictions on their ability to engage in competing businesses within a certain geographic area and for a certain period of time, as follows.

5.4.1 Seller and Katofsky agree that they shall not own or manage any competing real estate brokerage business in Riverside or Indio counties, California (the "Restricted

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

Territory") for a period concurrent with the payment of the Note (the "Restricted Period"). In addition, Katofsky and Seller agree that they will not engage in rendering real estate brokerage services to any buyer, seller, landlord or tenant in the Restricted Territory for the duration of the Restricted Period, except as a broker licensed with Purchaser. Finally, during the Restricted Period, Seller and Katofsky shall not solicit, directly or indirectly, any real estate licensees licensed with Purchaser, or any unlicensed persons employed by or affiliated with Purchaser, to terminate their relationship with Purchaser to accept employment or affiliation of any kind with any competing real estate brokerage firm. For the Restricted Period), neither Seller nor Katofsky (collectively, the "Restricted Parties") shall, and shall not permit any of their Affiliates to, directly or indirectly, (i) engage in or assist others in engaging in the rendering real estate brokerage services to any buyer, seller, landlord or tenant (the "Restricted Business") in California (the "Restricted Territory") for the duration of the Restricted Period, except as a broker licensed with Purchaser; (ii) have an interest in any Person that engages directly or indirectly in the Restricted Business in the Territory in any capacity, including as a partner, shareholder, member, employee, principal, agent, trustee or consultant; or (iii) cause, solicit, induce or encourage any material actual or prospective client, customer, supplier or licensor of Seller or Purchaser (including any existing or former client or customer of Seller and any Person that becomes a client or customer of the Purchaser after the Closing), or any other person who has a material business relationship with Seller or Purchaser, to terminate or modify any such actual or prospective relationship. Notwithstanding the foregoing, Seller may own, directly or indirectly, solely as an investment, securities of any person traded on any national securities exchange if Seller is not a controlling person of, or a member of a group which controls, such person and does not, directly or indirectly, own 5% more of any class of securities of such Person. "Restricted Business" also shall exclude any escrow, title or other real estate business in which Katofsky has a financial interest, such as Altair Escrow, Inc. a company presently owned and operated by Katofsky.

5.4.2 During the Restricted Period, the Restricted Parties shall not, and shall not permit any of their Affiliates to, directly or indirectly, hire or solicit any person who is offered employment by Purchaser or is or was employed by Purchaser during the Restricted Period, or encourage any such employee to leave such employment or hire any such employee who has left such employment, except pursuant to a general solicitation which is not directed specifically to any such employees.

5.4.3 Seller acknowledges that a breach or threatened breach of this Section 5.4 would give rise to irreparable harm to Purchaser, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by Seller of any such obligations, Purchaser shall, in addition to any and all other rights and remedies that may be available to it in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

5.4.4 The Restricted Parties acknowledge that the restrictions contained in this Section 5.4 were specifically negotiated as an integral term and material consideration for the purchase of the Business. The Restricted Parties further acknowledge and agree that the restrictions contained herein are reasonable and necessary to protect the legitimate interests of Purchaser and constitute a material inducement to Purchaser to enter into this Agreement and consummate the

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

transactions contemplated by this Agreement. In the event that any covenant contained in this Section 5.4 should ever be adjudicated to exceed the time, geographic, product or service or other limitations permitted by applicable Law in any jurisdiction, then any court is expressly empowered to reform such covenant, and such covenant shall be deemed reformed, in such jurisdiction to the maximum time, geographic, product or service or other limitations permitted by applicable Law. The covenants contained in this Section 5.4 and each provision hereof are severable and distinct covenants and provisions. The invalidity or unenforceability of any such covenant or provision as written shall not invalidate or render unenforceable the remaining covenants or provisions hereof, and any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such covenant or provision in any other jurisdiction.

5.4.5 Katofsky may remain licensed as a sales agent with Purchaser under the terms of Purchaser's standard Agent-Firm Agreement. Termination of the Agent-Firm Agreement for cause shall not affect the enforceability of the restrictive covenants contained in Section 5.4 of this Agreement.

5.5 **Employees.** On the Closing Date, Seller shall terminate the employment of all W-2 employees of the Seller. Purchaser may, but is not obligated, to offer employment to any or all of Seller's employees, on terms determined by Purchaser in its sole discretion. Any payments owed to the employees upon termination by Seller, including without limitation payments for final wages, accrued but unused vacation, and other liabilities, shall be Seller's sole liability.

6. **CLOSING**. The purchase and sale described in the Agreement will be closed at the office of the Seller on or before the 9th day of June, 2023, ("Closing" or sometimes referred to as "Closing Date'').

7. **REPRESENTATIONS AND WARRANTIES OF SELLER**. Seller represents and warrants to Purchaser that:

7.1 **Organization and Standing of Seller**. Seller is corporation doing business in the State of California, with full and complete power and authority to own the properties and assets, to carry on the business as the same is now being conducted and to execute, deliver and perform this Agreement.

7.2 **Agreement Binding**. This Agreement is, and each of the bills of sale, assignments and other instruments of conveyance, transfer and assignment to be delivered by Seller at the closing will be, valid and legally binding obligations of Seller enforceable in accordance with their respective terms, and neither the execution of this Agreement or such other documents and instruments by Seller, nor the performance by Seller of the various terms and provisions hereof and thereof, will violate or result in a breach or violation of any term or provision of, constitute a default under, result in, or permit an acceleration of, any lease or any other agreement or instrument by which it or any of the Purchased Assets is bound. Seller is not a party to, subject to or bound by any judgment, injunction or decree of any court or governmental body which prevents the performance of this Agreement.

7.3 **Litigation**. While there is litigation between Seller and its Landlord in Palm Springs, to the best of Seller's knowledge there are no claims, actions, suits or proceedings pending, or, to the best of the knowledge of Seller, threatened, against or affecting Seller, arising out of Seller's operation of the Business, at law or in equity, or before or by any federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, wherever, located, which may affect the Purchased Assets or impair Seller's ability to perform this Agreement or which questions the validity or propriety of this Agreement or of any action taken or to be taken in accordance with or in connection with this Agreement.

7.4 **No Conflicts; Consents**. The execution, delivery and performance by Seller of this Agreement and any other documents associated with this transaction to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) conflict with or result in a violation or breach of, or default under, any provision of the certificate of incorporation, by-laws or other organizational documents of Seller; (b) conflict with or result in a violation or breach of any provision of any Law or Governmental Order applicable to Seller, the Business or the Purchased Assets; or (c) require the consent, notice or other action by any Person under, conflict with, result in a violation or breach of, constitute a default or an event that, with or without notice or lapse of time or both, would constitute a default under, result in the acceleration of or create in any party the right to accelerate, terminate, modify or cancel any Contract or Permit to which Seller is a party or by which Seller or the Business is bound or to which any of the Purchased Assets are subject. To the best of Seller's knowledge all required authorizations, consents and approvals of public authorities and any other person to the sale and transfer of the Purchased Assets on the terms and conditions set forth in this Agreement have been obtained or will be obtained prior to closing. Seller agrees to assist Purchaser as Purchaser shall request in obtaining any consents to assignment Purchaser feels are advisable in order to close the transactions contemplated hereby.

7.5 **Title to and Condition of Purchased Assets**. Except as expressly stated herein to the contrary, at the closing, Seller will convey to Purchaser good and marketable title to the Purchased Assets, free and clear of all security interests, charges, conditional sales and other title retention agreements, assessments, covenants, restrictions, reservations, commitments, obligations, liabilities and other encumbrances of every nature.

7.6 **Commissions**. No commissions or brokers' or finders' fees are payable by, through or on account of any acts of Seller or its representatives in connection with this Agreement or the transactions contemplated hereby.

7.7 **Financial Statements**. Complete copies of the financial statements consisting of the balance sheet of the Business for the year ending December 31, 2022 and the related statements of income and retained earnings, shareholders' equity, and cash flow for the years then ended (the "Financial Statements") have been delivered to Purchaser. The Financial Statements have been prepared in accordance with generally accepted accounting principles in effect in the United States from time to time, applied on a consistent basis throughout the period involved. The Financial Statements fairly present the financial condition of the Business as of the respective dates they were prepared and the results of the operations of the Business for the periods indicated. The

balance sheet of the Business as of May 31, 2023 is referred to herein as the "Balance Sheet" and the date thereof as the "Balance Sheet Date."

7.8 **No Liabilities**. Purchaser will incur no liabilities or obligations as a result of the sale and transfer of the Purchased Assets to it in accordance with this Agreement and the consummation of the transactions contemplated by this Agreement, other than liabilities and obligations specifically assumed or incurred by Purchaser in accordance with the terms and conditions of this Agreement. Seller further represents and warrants that it has paid or will pay when due all taxes due and owing by Seller to all state and local governments and the federal government and their agencies, including all employment related taxes and obligations. Seller further represents that it has no Liabilities with respect to the Business, except (a) those which are adequately reflected or reserved against in the Balance Sheet as of the Balance Sheet Date, (b) unsecured institutional loans, and (c) those which have been incurred in the ordinary course of business consistent with past practice since the Balance Sheet Date and which are not, individually or in the aggregate, material in amount.

7.9 **Absence of Certain Changes, Events, and Conditions**. Since the Balance Sheet Date, and other than in the ordinary course of business consistent with past practice, there has not been any change, event, condition, or development that is, or could reasonably be expected to be, individually or in the aggregate, materially adverse to: (a) the business, results of operations, condition (financial or otherwise), or assets of the Business; or (b) the value of the Purchased Assets.

7.10 **Accuracy of Representations and Warranties**. To the best of Seller's knowledge, no representation or warranty made by Seller in this Agreement, and no document, statement or certificate furnished or to be furnished to Purchaser in connection with the transactions contemplated herein, is false or inaccurate in any respect, contains any untrue statement of a material fact, or omits any material fact necessary to make the statements contained therein not misleading.

8. **REPRESENTATIONS AND WARRANTIES OF PURCHASER**. Purchaser represents and warrants to Seller that:

8.1 **Organization and Standing of Purchaser**. Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of California and has or will have full and complete power and authority to execute, deliver and perform this Agreement.

8.2 **Authority**. The execution and delivery of this Agreement and each of the other documents to be delivered by Purchaser at the closing and the performance by Purchaser of the transactions contemplated hereby has been or will be duly authorized by all necessary authorizing action on the part of the Purchaser and its members.

8.3 **Agreement Binding**. This Agreement is, and each of the other documents to be delivered by Purchaser as the closing will be, the valid and legally binding obligations of Purchaser enforceable in accordance with their respective terms, and neither the execution of this Agreement and such other documents by Purchaser nor the performance by Purchaser of the various terms and

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

provisions hereof and thereof, will violate the Limited Liability Company Agreement of Purchaser or result in a breach or violation of any term or provision of, constitute a default under, result in, or permit an acceleration of, any indenture, mortgage, lease or any other agreement or instrument to which Purchaser is a party or by which it or any of its property is bound. Purchaser is not a party to, subject to or bound by any judgment, injunction or decree of any court or governmental body which prevents the performance of this Agreement.

8.4 **Commissions**. No commissions or brokers' or finders' fees are payable by, through or on account of any acts of Purchaser or its representatives in connection with this Agreement or the transactions contemplated hereby.

8.5 **Accuracy of Representations and Warranties**. To the best of Purchaser's knowledge, no representation or warranty made by Purchaser in this Agreement, and no document, statement or certificate furnished or to be furnished to Seller in connection with the transactions contemplated hereby, is false or inaccurate in any respect, contains any untrue statement of a material fact, or omits any material fact necessary to make the statements contained therein not misleading.

8.6 **Altair Escrow**. Purchaser shall encourage it's real estate agents and professionals to use the services of Altair Escrow whenever an escrow is required in a transaction for the Company and shall provide Altair Escrow access to all such agents and real estate professionals for promotion and education.

9. **CONDITIONS TO THE OBLIGATION OF SELLER**. The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to satisfaction of each of the following conditions at or prior to the closing, unless Seller otherwise consents.

9.1 **Accuracy of Representations and Warranties**. The representations and warranties of Purchaser set forth in this Agreement are true and correct as of the Closing Date.

9.2 **Performance by Purchaser**. Purchaser shall have fully performed and complied with all agreements, covenants and conditions required by this Agreement to be performed or complied with by Purchaser, at or prior to the closing.

9.3 **Deliveries**. Purchaser shall have delivered everything to be delivered by Purchaser under the provisions of this Agreement.

10. **CONDITIONS TO THE OBLIGATION OF PURCHASER**. The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to satisfaction of each of the following conditions at or prior to the closing, unless Purchaser otherwise consents:

10.1 **Accuracy of Representations and Warranties**. The representations and warranties of Seller set forth in this Agreement are true and correct as of the Closing Date.

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

10.2 **Performance by Seller**. Seller shall have fully performed and complied with all agreements, covenants and conditions required by this Agreement to be performed or complied with by Seller, at or prior to the closing.

10.3 **Deliveries**. Seller shall have delivered everything to be delivered by Seller under the provisions of this Agreement.

10.4 **Consents**. All necessary consents of any party to the assignment to Purchaser of the Lease, Pending Transactions and/or the Listing Agreements or other contracts shall have been obtained or have been waived by Purchaser.

10.5 **No Material Changes.** There shall be no material adverse change in the business, results of operations, prospects, condition (financial or otherwise) or assets of the Seller or the Business between the date of the full execution of this Agreement, and the Closing.

11. **INDEMNITY OF PURCHASER**.

11.1 **Indemnity**. Seller shall indemnify and defend each of Buyer and its Affiliates and their respective Representatives (collectively, the "Buyer Indemnitees") against, and shall hold each of them harmless from and against, any and all losses, damages, liabilities, deficiencies, Actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees (collectively, "Losses"), incurred or sustained by, or imposed upon, the Buyer Indemnitees based upon, arising out of, or with respect to:

(A) any material inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement, any other Transaction Document, or any schedule, certificate, or exhibit related thereto, as of the date such representation or warranty was made or as if such representation or warranty was made on and as of the Closing Date (except for representations and warranties that expressly relate to a specified date, the inaccuracy in or breach of which will be determined with reference to such specified date);

(B) any material breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Seller pursuant to this Agreement, any other Transaction Document, or any schedule, certificate, or exhibit related thereto; and

(C) any Third Party Claim resulting from actions taken prior to the Closing Date and based upon, resulting from, or arising out of the business, operations, properties, assets, or obligations of Seller or any of its Affiliates (other than the Purchased Assets) conducted, existing, or arising on or prior to the Closing Date. For purposes of this Agreement, "Third Party Claim" means notice of the assertion or commencement of any Action made or brought by any Person who is not a party to this Agreement or an Affiliate of a party to this Agreement or a Representative of the foregoing.

11.2 **Notice**. Purchaser agrees to give prompt written notice to Seller of any claim against Purchaser which might give rise to a claim by Purchaser against Seller based on the indemnity provisions of this agreement, stating the nature, basis of any such claim and amount of

such claim. In the event any action, suit or proceeding is brought against Purchaser with respect to which Seller may have liability under the foregoing indemnity agreement, Seller shall have the right, at its sole expense, to be represented by counsel of its own choosing. In the event a Third-Party Claim is brought against Purchaser with respect to which Seller may have liability under the foregoing indemnity agreement, Seller shall have the right, at its sole expense, to be represented by counsel of its own choosing and such counsel shall represent Purchaser or any other indemnified parties under this Agreement. Purchaser shall confer in connection with the defense of any such action, suit or proceedings. Purchaser shall make available to Seller and its attorneys and accountants all books and records of Purchaser relating to such action, suit or proceedings, and the parties agree to render to each other such assistance as may be reasonably requested in order to insure the proper and adequate defense of any such action, suit or proceeding.

11.3 **Third Party Indemnification**. Purchaser shall make a good-faith attempt (which shall not be deemed to include an obligation to commence any litigation) to seek indemnification from any third parties, including insurers, who may be liable upon any claims made against Purchaser and for which Seller would be liable under this Section. To the extent Seller indemnifies Purchaser for claims upon which third parties, including insurers, may be liable, Purchaser shall, to the extent permissible, subrogate to Seller its rights with respect to such claims.

12. **INDEMNITY OF SELLER**.

12.1 **Indemnity**. Purchaser agrees to indemnify and hold Seller harmless against and in respect of:

A. **Loss**. Any loss, liability, damage suffered or incurred or because of any breach of any obligation of Purchaser under this agreement, or because any representation or warranty by Purchaser under this agreement or in any documents furnished or required to be furnished pursuant to this agreement by Purchaser or any of its representatives to Seller, shall be false or misleading in any material respect as of the Closing Date or from any claim arising from the operations of Purchaser after the Date of Closing, including claims arising from errors or omissions committed by Purchaser or any of its licensed brokers after the Closing Date.

B. **Costs**. All reasonable costs and expenses (including reasonable attorneys' fees) incurred in connection with any action, suit, proceeding, demand, assessment or judgment, including any appeal, incident to any of the matters indemnified against in this Section.

12.2 **Notice**. Seller agrees to give prompt written notice to Purchaser of any claim against Seller which might give rise to a claim by Seller against Purchaser based on the indemnity provisions of this agreement, stating the nature and basis of any such claim and amount thereof. In the event any action, suit or proceeding is brought against Seller with respect to which Purchaser may have liability under the foregoing indemnity, Purchaser shall have the right, without prejudice to Seller's rights under this agreement, at it sole expense, to be represented by counsel of its own choosing, and with which counsel for Seller shall confer in connection with the defense of any such action, suit or proceeding. Seller shall make available to Purchaser and its attorneys and accountants all books and records of Seller relating to such action, suit or proceeding, and the

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

parties agree to render to each other such assistance as may be reasonably requested in order to insure the proper and adequate defense of any such action, suit or proceeding.

12.3 **Third-Party Indemnification**. Seller shall make a good-faith attempt (which shall not be deemed to include an obligation to commence any litigation) to seek indemnification from any third parties, including insurers, who may be liable upon any claims made against Seller and for which Purchaser would be liable under this Section. To the extent Purchaser indemnifies Seller from claims upon which third parties, including insurers, may be liable, Seller shall, to the extend permissible, subrogate to Purchaser its rights with respect to such claims.

13. **EFFECT OF REPRESENTATIONS AND WARRANTIES**. The representations and warranties of Seller and Purchaser made in or pursuant to this agreement are made only to and for the benefit of the parties to this agreement and shall not create rights in other persons. All statements contained in any certificate or other instrument delivered by or on behalf of Seller and Purchaser, pursuant to this agreement, or in connection with the transactions contemplated by this agreement, shall be deemed representations and warranties by Seller and Purchaser respectively, hereunder.

14. **FURTHER ASSURANCE**. Seller shall, at any time and from time to time after the closing and the effective date, and at no cost to Seller, execute and deliver, or cause to be executed and delivered, such further conveyances, assignments and other written assurances and instruments as Purchaser shall reasonably request in order to vest in Purchaser title to the Purchased Assets and to carry out the terms and provisions of this Agreement.

15. **BINDING AGREEMENT; NO ASSIGNMENT**. This agreement shall be binding upon and shall inure to the benefit of the parties, their respective successors, heirs and assigns, except that no party may assign or transfer its rights or obligations under this agreement without the prior written consent of the other party. .

16. **SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS**. All representations, warranties and covenants (including without limitation indemnity obligations) contained in this Agreement shall survive the closing and the effective date and any investigation made by any party.

17. **BROKERS AND FINDERS**. Each party shall indemnify and hold the other party harmless from and against any liability, expense, cost, loss or claim arising from the employment by such indemnifying party or services rendered to such indemnifying party (or any allegation of any such employment or services) of any such finder, broker, agent or intermediary.

18. **COUNTERPARTS; ELECTRONIC SIGNATURES; HEADINGS**. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Electronic signatures shall be accepted as binding if obtained by sending a request for electronic signature to the email addresses indicated in the signature blocks below. The headings in this Agreement are inserted for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

19. **ENTIRE AGREEMENT; AMENDMENT**. This Agreement contains the entire agreement between the parties with respect to the transactions contemplated by this Agreement and supersedes all prior negotiations, representations, warranties, commitments, offers, contracts and writings, including without limitation the "Proposal to Purchase" dated April 10, 2023. No modification or amendment of any provision of this Agreement shall be effective unless made in writing and duly signed by both parties.

20. **WAIVER**. The failure of a party to insist in any one or more instances upon performance of any provision of this Agreement or to take advantage of any right hereunder shall not be construed as a waiver of any such provision or the relinquishment of any such right, and the same shall continue and remain in full force and effect. No single or partial exercise by a party of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy. Waiver by any party of any breach of any provision of this Agreement shall not constitute or be construed as a continuing waiver or as a waiver of any other breach of any other provision of this Agreement.

21. **SEVERABILITY**. In the event that any work, phrase, clause, sentence or other provision of this Agreement shall violate any applicable statute, ordinance, or rule of law on any jurisdiction which governs this Agreement, such provision shall be ineffective to the extent of such violation without invalidating any other provision hereof.

22. **BREACH OF AGREEMENT; ATTORNEYS' FEES**. In the event a party breaches a term or provision of this Agreement, the other party shall have resort to all remedies available to it at law and in equity, and the non-prevailing party in a dispute over a breach shall be responsible for all attorneys' fees and costs incurred by the other party as a result thereof.

23. **EXHIBITS**. All exhibits referred to herein and attached hereto are incorporated herein as a part hereof.

24. **GOVERNING LAW**. This Agreement shall be construed in accordance with, and the legal relations between the parties shall be governed by the laws of the State of California.

25. **CONFIDENTIALITY.** Neither party shall without the other's prior written consent any of the terms, conditions or other facts with respect to the transaction contemplated by this Agreement. This restriction shall not apply to discussions by either party with their respective legal or financial advisors, nor shall this provision restrict either party from submitting filings to relevant government agencies to acquire licenses or permits as needed prior to Closing.

26. **TIME**. Time is of the essence of this Agreement.

SIGNATURES ON NEXT PAGE

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

**SELLER:**

**HK Lane Palm Desert Inc.,** a California corporation

DocuSigned by:
By Harvey Katofsky
3DC92893F280478...
Harvey Katofsky, its President

**PURCHASER:**

**WRE SoCal, Inc.,** a California corporation

DocuSigned by:
By Geoffrey P. Wood
E9DEB28D3934401...
Geoffrey P. Wood, its CEO

**HK Lane La Quinta, Inc**., a California Corporation

DocuSigned by:
By Harvey Katofsky
3DC92893F280478...
Harvey Katofsky, its President

---

**PRINCIPAL OF SELLER:**

The undersigned agrees to be bound by the applicable terms of this Agreement, including without limitation the covenants not to compete.

DocuSigned by:
Harvey Katofsky
3DC92893F280478...
Harvey Katofsky, Personally

---

**EXHIBIT A**
**INVENTORY OF FIXED ASSETS**

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3
05/09/23
Accrual Basis

# HK Lane La Quinta, Inc.
## Balance Sheet Detail
### As of May 9, 2023

| | Date | Num | Name | Memo | Amount | Balance |
|---|---|---|---|---|---|---|
| ASSETS | | | | | | 0.00 |
| Fixed Assets | | | | | | 0.00 |
| 13010 · Computer Equipment | | | | | | 0.00 |
| | 11/16/2009 | Deposit LQ Phone | RonEK Communications | deposit for phone installation | 5,000.00 | 5,000.00 |
| | 12/02/2009 | Kepypad install | Comtron Systems | security keypad installed at Main Street | 475.00 | 5,475.00 |
| | 12/18/2009 | On account | Valley Office Equipment | copiers La Quinta | 3,079.44 | 8,554.44 |
| | 01/12/2010 | Payment #2 | RonEK Communications | 2nd & last installment | 4,963.27 | 13,517.71 |
| | 01/12/2010 | Ron Anderson | El Paseo Bank | 20 telephones | 2,000.00 | 15,517.71 |
| | 01/20/2010 | Payment #2 of 3 | Valley Office Equipment | 2nd of three | 3,079.44 | 18,597.15 |
| | 01/31/2010 | 103 | HK Lane Palm Desert, Inc. | purchased by PD credit card for LQ | 6,970.80 | 25,567.95 |
| | 02/16/2010 | 3rd of 3 installment | Valley Office Equipment | Third of 3 installments | 3,079.43 | 28,647.38 |
| | 12/31/2012 | 2890 | HK Lane Palm Desert, Inc. | Gene Darr computer | 769.78 | 29,417.16 |
| | 03/26/2013 | 1893 | CV Computer Service LLC | 2 new computers | 1,325.98 | 30,743.14 |
| | 02/29/2016 | 5409 | HK Lane Palm Desert, Inc. | new router | 258.12 | 31,001.26 |
| | 12/31/2016 | 25 | | Reclass router purchase to expense | -258.12 | 30,743.14 |
| | 05/22/2020 | 14067 | Old Town La Quinta, LLC | new server paid by landlord - water leak | -400.62 | 30,342.52 |
| | 11/30/2020 | Nov I/C trx | HK Lane Palm Desert, Inc. | New router for LQ | 356.68 | 30,699.20 |
| | 12/31/2020 | 28 | | to expense de minimus assets | -356.68 | 30,342.52 |
| | 12/31/2020 | 28 | | to expense de minimus assets | 400.62 | 30,743.14 |
| Total 13010 · Computer Equipment | | | | | 30,743.14 | 30,743.14 |
| 13020 · Furniture & Furnishings | | | | | | 0.00 |
| | 10/31/2009 | 92 | HK Lane Palm Desert, Inc. | furniture for LQ - HK PD paid on credit cards | 32,769.20 | 32,769.20 |
| | 01/31/2010 | 149 | HK Lane Palm Desert, Inc. | fridge bought - charged PD credit card | 873.86 | 33,643.06 |
| | 01/31/2010 | 261 | HK Lane Palm Desert, Inc. | office furniture | 979.84 | 34,622.90 |
| | 02/28/2010 | 274 | HK Lane Palm Desert, Inc. | kitchenette set | 485.00 | 35,107.90 |
| | 04/30/2010 | 340 April rebill | HK Lane Palm Desert, Inc. | bathroon cabinet | 141.36 | 35,249.26 |
| | 07/30/2010 | 21786 | Office Furniture Store | 4 drawer lateral file | 635.10 | 35,884.36 |
| | 04/22/2011 | 22102 | Office Furniture Store | additional drawer for office | 35.00 | 35,919.36 |
| | 04/24/2012 | 10792 | Mitre & Bevel | 4 framed pix & install | 1,549.69 | 37,469.05 |
| | 12/31/2014 | 14 | | 2014 JE's per DSuss/Liberty Urban | -35.00 | 37,434.05 |
| Total 13020 · Furniture & Furnishings | | | | | 37,434.05 | 37,434.05 |
| 13220 · Flooring | | | | | | 0.00 |
| | 12/30/2009 | | The Canavan Group | carpet | 3,026.67 | 3,026.67 |
| | 03/31/2010 | 311 | HK Lane Palm Desert, Inc. | | 2,564.04 | 5,590.71 |
| Total 13220 · Flooring | | | | | 5,590.71 | 5,590.71 |



WRE_0000039

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

05/09/23
Accrual Basis

# HK Lane La Quinta, Inc.
## Balance Sheet Detail
### As of May 9, 2023

| | Date | Num | Name | Memo | Amount | Balance |
|---|---|---|---|---|---|---|
| 13230 · Walls & Cabinetry | | | | | | 0.00 |
| | 11/04/2009 | Deposit | The Canavan Group | painting, drywall, flooring | 23,734.98 | 23,734.98 |
| | 12/30/2009 | | The Canavan Group | cabinets | 1,994.50 | 25,729.48 |
| | 12/30/2009 | | The Canavan Group | woodwork | 1,200.00 | 26,929.48 |
| | 12/30/2009 | | The Canavan Group | wood work | 780.00 | 27,709.48 |
| | 12/30/2009 | | The Canavan Group | hardware | 115.18 | 27,824.66 |
| | 03/31/2010 | 311 | HK Lane Palm Desert, Inc. | | 3,001.00 | 30,825.66 |
| Total 13230 · Walls & Cabinetry | | | | | 30,825.66 | 30,825.66 |
| 13299 · L/H Improvements | | | | | | 0.00 |
| | 12/30/2009 | | The Canavan Group | fireproofing | 400.00 | 400.00 |
| | 12/30/2009 | | The Canavan Group | glazing | 135.50 | 535.50 |
| | 12/30/2009 | | The Canavan Group | drywall | 3,090.38 | 3,625.88 |
| | 12/30/2009 | | The Canavan Group | general contractor supplies | 1,456.88 | 5,082.76 |
| | 12/31/2010 | 12 | | reallocate Canavan dep to LE Imps | 43,270.37 | 48,353.13 |
| | 12/31/2014 | 14 | | 2014 JE's per DSuss/Liberty Urban | 98,987.86 | 147,340.99 |
| Total 13299 · L/H Improvements | | | | | 147,340.99 | 147,340.99 |

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

Accrual Basis

# HK LANE REAL ESTATE
## Balance Sheet Detail
As of May 9, 2023

| | Date | Num | Name | Memo | Class | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Fixed Assets | | | | | | | 0.00 |
| 13230PS · Walls/Cabinetry/Flooring | | | | | | | 0.00 |
| | 06/06/2014 | 1720 | Lathrop Development | Drywall, cabinetry, wood & vinyl flooring | | 9,393.86 | 9,393.86 |
| | 07/14/2014 | 1749 | Lathrop Development | Drywall, cabinetry, wood & vinyl flooring | | 25,612.26 | 35,006.12 |
| | 08/14/2014 | 1795 | Lathrop Development | Drywall, cabinetry, wood & vinyl flooring | | 44,222.91 | 79,229.03 |
| | 11/19/2014 | 4002 | El Paseo Holdings, LLC | Landing reimbursement | | -625.00 | 78,604.03 |
| | 01/28/2016 | 4324 | The Construction Zone | New walls & demo | El Paseo | 9,399.00 | 88,003.03 |
| Total 13230PS · Walls/Cabinetry/Flooring | | | | | | 88,003.03 | 88,003.03 |
| 13010PS · Computer/Phone/Electronic PS | | | | | | | 0.00 |
| | 07/21/2014 | 1617 | Michael Gustin | Phone equipment / wiring/ router | | 774.36 | 774.36 |
| | 08/22/2014 | 08/22/14 | Lindy Lindquist | New phone for PS office | | 723.09 | 1,497.45 |
| | 08/29/2014 | Expenses | Matthew Torres | new laptop for OA Matt Torress | | 293.27 | 1,790.72 |
| | 08/31/2014 | 1626 | Michael Gustin | Computers & phones | | 2,994.84 | 4,785.56 |
| | 09/30/2014 | 1635 | Michael Gustin | Computer equip PS | | 183.60 | 4,969.16 |
| | 10/31/2014 | 1645 | Michael Gustin | New router for PS office | | 189.00 | 5,158.16 |
| | 02/04/2016 | 02-5395-IN | PTG Communications | down payment | El Paseo | 1,375.00 | 6,533.16 |
| | 03/15/2016 | 02-5395-IN | PTG Communications | balance due | El Paseo | 1,500.00 | 8,033.16 |
| | 05/06/2016 | 02-5461-IN | PTG Communications | rewiring for computers/alarms | El Paseo | 270.00 | 8,303.16 |
| | 09/22/2016 | 02-5677-IN | PTG Communications | phone system down payment for El Paseo | El Paseo | 2,200.00 | 10,503.16 |
| | 10/10/2016 | | PTG Communications | balance due for El phone equipment | El Paseo | 2,194.39 | 12,697.55 |
| | 12/31/2016 | 79 | | Move 9/1 phone system payment to correct G/L acc | El Paseo | 6,591.59 | 19,289.14 |
| Total 13010PS · Computer/Phone/Electronic PS | | | | | | 19,289.14 | 19,289.14 |
| 13020PS · Furniture/Furnishings PS Office | | | | | | | 0.00 |
| | 04/16/2014 | Furniture | Joseph O. DiPuzo Investments | purchase of office furniture from PS temp office owner | | 500.00 | 500.00 |
| | 05/27/2014 | 102845-IN | GM Business Interiors | down payment on furniture | | 25,000.00 | 25,500.00 |
| | 08/14/2014 | 0205087-IN | GM Business Interiors | final installment on furniture | | 24,743.58 | 50,243.58 |
| | 08/31/2014 | 8031039456 | Staples Advantage | new file cabinet | | 580.00 | 50,823.58 |
| | 09/15/2014 | 100372 | GM Business Interiors | final installment on furniture | | 4,047.37 | 54,870.95 |
| | 11/05/2014 | 100372 | GM Business Interiors | final installment on furniture | | 4,047.36 | 58,918.31 |
| | 11/13/2014 | PS Office art | Chris Menrad - Agent | Artwork for PS office | | 3,739.71 | 62,658.02 |
| | 12/02/2014 | Bathhrom cabinet | Matthew Torres | cabinet for restroom | | 235.42 | 62,893.44 |
| | 12/31/2015 | 67 | | reimbuse landlord for signage | El Paseo | 2,850.00 | 65,743.44 |
| | 07/22/2021 | | GM Business Interiors | new furtniure for office move from 1104 to 101A | Palm Desert | 244.00 | 65,987.44 |
| | 07/23/2021 | | GM Business Interiors | New furniture for HK and ZRg office | Palm Desert | 1,136.73 | 67,124.17 |
| | 08/12/2021 | | GM Business Interiors | new furtniure for office move from 1104 to 101A | Palm Desert | -244.00 | 66,880.17 |
| | 09/02/2021 | | GM Business Interiors | new furniture | Palm Desert | 1,167.99 | 68,048.16 |
| | 09/03/2021 | | GM Business Interiors | furinture | Palm Desert | -31.26 | 68,016.90 |
| Total 13020PS · Furniture/Furnishings PS Office | | | | | | 68,016.90 | 68,016.90 |



WRE_0000041

1 DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3
05/09/23
Accrual Basis

# HK LANE REAL ESTATE
## Balance Sheet Detail
### As of May 9, 2023

| | Date | Num | Name | Memo | Class | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 13010 · Computer Equipment | | | | | | | 0.00 |
| | 03/30/2009 | 102 | Debbie Toohey & Associates | Office furniture & machines | | 7,000.00 | 7,000.00 |
| | 05/12/2009 | 1120 | Valley Office Equipment | Installment #1 of 3 | | 5,288.88 | 12,288.88 |
| | 05/26/2009 | | Dell Computers | computers purchases | | 15,862.37 | 28,151.25 |
| | 06/08/2009 | 020297 | Interconnect Networks, Inc. | server | | 2,895.00 | 31,046.25 |
| | 06/08/2009 | | Valley Office Equipment | fax tray for Shrp minolta east | | 171.83 | 31,218.08 |
| | 06/08/2009 | | Valley Office Equipment | 2 sharp copiers balance due | | 10,577.65 | 41,795.73 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | Cisco Aimet | | 891.80 | 42,687.53 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | Cyberpower | | 959.26 | 43,646.79 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | patch cables | | 147.00 | 43,793.79 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | patch cables | | 123.00 | 43,916.79 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | wireless headset | | 275.00 | 44,191.79 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | conference room phone | | 521.00 | 44,712.79 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | LC screen | | 182.50 | 44,895.29 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | 50 LD screen | | 1,719.00 | 46,614.29 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | wall brackets | | 119.00 | 46,733.29 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | wall brackets | | 139.00 | 46,872.29 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | wall mount adaptor | | 448.00 | 47,320.29 |
| | 07/15/2009 | 7444 | Interconnect Networks, Inc. | wireless mouse | | 447.00 | 47,767.29 |
| | 08/31/2009 | | BestBuy.com | external CD burner | | 105.85 | 47,873.14 |
| | 09/15/2009 | 145324 | Valley Office Equipment | Sharp upstaies copier | | 1,234.31 | 49,107.45 |
| | 11/25/2009 | | Interconnect Networks, Inc. | stary up equipment for LQ office | | 6,970.81 | 56,078.26 |
| | 11/25/2009 | 103 | HK Lane La Quinta | Computer equipment purchased - not leased | | -6,970.81 | 49,107.45 |
| | 08/03/2010 | 1218 | Janis B Charnay | phones fpr Palm Desert | | 553.00 | 49,660.45 |
| | 08/11/2010 | 1253 | Janis Charnay | 4 additional phones for Palm Desert - reimbursement | | 316.00 | 49,976.45 |
| | 11/02/2010 | 509 | Interconnect Networks, Inc. | proceeds on servers Frank sold | | -1,300.00 | 48,676.45 |
| | 04/13/2011 | 2281 | Janis Charnay | 3 MLS computers | | 1,249.40 | 49,925.85 |
| | 06/09/2011 | 1534 | CV Computer Service | new PC for Justine - acct assistant | | 774.81 | 50,700.66 |
| | 06/15/2011 | 1535 | CV Computer Service | monitor & 5 port gig switch | | 282.73 | 50,983.39 |
| | 02/01/2012 | | Dell Computers | new server software | | 621.46 | 51,604.85 |
| | 02/28/2012 | 609 | Scott Below | new server | | 400.00 | 52,004.85 |
| | 11/09/2012 | HK Computer | CV Computer Service | new HKL desktop | | 765.16 | 52,770.01 |
| | 11/26/2012 | HK Computer | CV Computer Service | new Rachel desktop | | 765.16 | 53,535.17 |
| | 02/01/2013 | Dells (2) | CV Computer Service | 2 dells - PD reception and PS office MLS | | 1,203.16 | 54,738.33 |
| | 03/31/2013 | 2 New Dells | CV Computer Service | 2 new desktops - eden & Janis | | 1,325.97 | 56,064.30 |
| | 04/15/2013 | 13 | CV Computer Service | new router for PS offie | | 181.22 | 56,245.52 |
| | 07/26/2013 | 1525 | Michael Gustin | new comp for TBeck | | 739.80 | 56,985.32 |
| | 10/01/2013 | 1541a | Michael Gustin | new wireles adaptor for conference room | | 60.00 | 57,045.32 |

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3
05/09/23
Accrual Basis

# HK LANE REAL ESTATE
## Balance Sheet Detail
### As of May 9, 2023

| Date | Num | Name | Memo | Class | Amount | Balance |
|---|---|---|---|---|---|---|
| 12/11/2013 | 1562 | Michael Gustin | new router, swutches & wireless access points | | 1,053.00 | 58,098.32 |
| 01/31/2014 | 1571 | Michael Gustin | 2 external hard drives for the services (bak up) | | 180.00 | 58,278.32 |
| 02/07/2014 | | Dell Computers | new Laptio for office meetins - virtual caravan | | 741.02 | 59,019.34 |
| 03/01/2014 | HK expense | Harvey Katofsky - Vendor | HK home compauter - Dell | | 714.60 | 59,733.94 |
| 03/17/2014 | 1584 | Michael Gustin | HK printer & speakers | | 676.08 | 60,410.02 |
| 09/29/2014 | Copier reimbusement | Bridget Kraychir - Vendor | copier/scanner for Bk's new office (off-site) | | 500.00 | 60,910.02 |
| 12/31/2014 | 61 | | 2014 JE's per DSuss/Liberty Urban | | -1,700.85 | 59,209.17 |
| 05/05/2015 | | Dell Computers | 2 new CPU toers for MLS desks | | 1,181.20 | 60,390.37 |
| 07/28/2015 | | Dell Computers | new server for conference room | | 542.45 | 60,932.82 |
| 08/31/2015 | 1707 | Michael Gustin | New router for PD office | | 351.00 | 61,283.82 |
| 11/30/2015 | 1737 | Michael Gustin | new hard drive for MLs Desk | | 75.00 | 61,358.82 |
| 12/12/2015 | 8037206380 | Staples Advantage | new printer - Enaigle | | 769.79 | 62,128.61 |
| 12/31/2015 | 1742 | Michael Gustin | New switch & cables - PD office | | 109.00 | 62,237.61 |
| 12/31/2015 | 69 | | Expense de minimis equipment purchases | | -535.00 | 61,702.61 |
| 03/03/2016 | 165 | Michael Gustin | 4Dell worlstations | El Paseo | 2,092.16 | 63,794.77 |
| 03/03/2016 | 165 | Michael Gustin | Micros Bueiness class comp | El Paseo | 562.24 | 64,357.01 |
| 03/03/2016 | 165 | Michael Gustin | Netgear gigbait phone switch | El Paseo | 895.20 | 65,252.21 |
| 03/03/2016 | 165 | Michael Gustin | wire access point | El Paseo | 179.00 | 65,431.21 |
| 03/03/2016 | 165 | Michael Gustin | Router / firewall | El Paseo | 658.90 | 66,090.11 |
| 03/31/2016 | 1757 | Michael Gustin | new cable router | El Paseo | 276.00 | 66,366.11 |
| 03/31/2016 | 1757 | Michael Gustin | monitor | El Paseo | 189.00 | 66,555.11 |
| 07/27/2016 | July Expenses | Todd Banks | Todd's new laptop | El Paseo | 970.57 | 67,525.68 |
| 07/27/2016 | July Expenses | Todd Banks | Laptop carrying case | El Paseo | 53.98 | 67,579.66 |
| 07/27/2016 | July Expenses | Todd Banks | Ctredit back on computer | El Paseo | -226.80 | 67,352.86 |
| 09/01/2016 | 237994 | Desert Alarm, Inc. | New Security panel | El Paseo | 1,283.04 | 68,635.90 |
| 09/02/2016 | | PTG Communications | new phone system | El Paseo | 6,591.59 | 75,227.49 |
| 12/31/2016 | 79 | | Move 9/1 phone system payment to correct G/L acc | El Paseo | -6,591.59 | 68,635.90 |
| 02/28/2017 | Feb 2017 Expenses | Todd Banks | Printer for Tcs | Palm Desert | 160.05 | 68,795.95 |
| 04/01/2017 | | BestBuy.com | new lap top for Ken giella TC | Palm Desert | 1,137.36 | 69,933.31 |
| 07/31/2017 | 1840 | Michael Gustin | 2 new battery back ups for server | Palm Desert | 463.33 | 70,396.64 |
| 01/31/2018 | 1874 | Michael Gustin | Netgear POE switch for EP | El Paseo | 765.03 | 71,161.67 |
| 02/01/2018 | 026125IN | PTG Communications | 16 new phones for Ep Office | Palm Desert | 2,900.00 | 74,061.67 |
| 02/01/2018 | 026125IN | PTG Communications | 20 Channel activation key | Palm Desert | 766.84 | 74,828.51 |
| 02/05/2018 | 026125IN | PTG Communications | 16 new phones for Ep Office | Palm Desert | 63.16 | 74,891.67 |
| 02/05/2018 | 026125IN | PTG Communications | expansion capacity | Palm Desert | 420.00 | 75,311.67 |
| 04/16/2018 | 026210IN | PTG Communications | New Phone for front desk | Palm Desert | 670.53 | 75,982.20 |
| 07/31/2018 | 1915 | Michael Gustin | New router | Palm Springs | 575.00 | 76,557.20 |
| 07/31/2018 | 1915 | Michael Gustin | misc router parts | Palm Springs | 455.00 | 77,012.20 |

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3
05/09/23
Accrual Basis

# HK LANE REAL ESTATE
## Balance Sheet Detail
### As of May 9, 2023

| | Date | Num | Name | Memo | Class | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | 07/31/2018 | 1915 | Michael Gustin | tax | Palm Springs | 79.83 | 77,092.03 |
| | 07/31/2018 | July 2018 | Todd Banks | Wireless Enhancer for PS office | Palm Springs | 86.99 | 77,179.02 |
| | 08/29/2018 | 026341IN | PTG Communications | license for new Auto Attendant | Palm Desert | 877.16 | 78,056.18 |
| | 12/18/2018 | | BestBuy.com | new PC for Ken Gitella / TC asst | Palm Desert | 619.16 | 78,675.34 |
| | 04/09/2019 | | Dell Computers | new desktop for LQ conference room | Palm Springs | 483.70 | 79,159.04 |
| | 08/05/2019 | 20000 | Michael Gustin | Eden - new comp & monitor | Palm Desert | 870.00 | 80,029.04 |
| | 08/05/2019 | 20000 | Michael Gustin | Terri - new comp only | Palm Desert | 699.00 | 80,728.04 |
| | 08/05/2019 | 20000 | Michael Gustin | sales tax | Palm Desert | 121.60 | 80,849.64 |
| | 08/30/2019 | 7151 | Eden Naigle | new laptop for HK - | Palm Desert | 754.77 | 81,604.41 |
| | 11/05/2020 | | Costco Membership | new monitor for Matt Torres | Palm Desert | 172.39 | 81,776.80 |
| | 12/14/2020 | | Costco Membership | HK new computer | Palm Desert | 759.23 | 82,536.03 |
| | 02/04/2021 | | Costco Membership | new PC for Ron gerlich | Palm Desert | 716.13 | 83,252.16 |
| | 05/26/2021 | MTorres Computer | Eve Katofsky | New PC for Matt Torres | Palm Desert | 1,244.12 | 84,496.28 |
| | 09/15/2021 | ELN computer | Matthew Torres | new CPS for accounting | Palm Desert | 629.66 | 85,125.94 |
| | 11/30/2021 | Lisa - Expenses | Lisa Ayres | Computer for office - delivered to Lisa's house | Palm Desert | 640.91 | 85,766.85 |
| Total 13010 · Computer Equipment | | | | | | 85,766.85 | 85,766.85 |
| 13020 · Furniture & Furnishings | | | | | | | 0.00 |
| | 03/30/2009 | 102 | Debbie Toohey & Associates | Office furniture & machines | | 18,000.00 | 18,000.00 |
| | 05/24/2009 | | Office Furniture Place | Harvey office furniture | | 1,277.27 | 19,277.27 |
| | 06/02/2009 | | Office Furniture Place | Balance due - harvey furniture | | 1,277.27 | 20,554.54 |
| | 08/12/2009 | payment on account | Canavan Group | new HK lane sign | | 4,989.07 | 25,543.61 |
| | 08/31/2009 | balance due | Canavan Group | install HK Lane monument sign | | 4,422.00 | 29,965.61 |
| | 10/05/2009 | | Office Furniture Place | partial payment for LQ furniture | | 14,769.20 | 44,734.81 |
| | 10/05/2009 | 0019 | Office Furniture Place | furniture for LQ - rebill | | 18,000.00 | 62,734.81 |
| | 10/31/2009 | 92 | HK Lane La Quinta | Furniture purchased for LQ | | -32,769.20 | 29,965.61 |
| | 11/27/2009 | 24399009 | BestBuy.com | fridge for La Quinta | | 873.86 | 30,839.47 |
| | 11/30/2009 | 149 | HK Lane La Quinta | Furniture purchased for LQ | | -873.86 | 29,965.61 |
| | 01/31/2010 | 11233 | David Husband | blinds for lobby windows | | 956.00 | 30,921.61 |
| | 04/04/2011 | 0001429635 | NEC Financial | lease buy out | | 1.00 | 30,922.61 |
| | 12/08/2011 | 1181 | Escrow Company | 15 office chairs | | -2,700.00 | 28,222.61 |
| | 12/20/2011 | 38 | | PD purchase of furniture from PS - decreasing debt | | 7,678.28 | 35,900.89 |
| | 07/24/2013 | Furniture | Office Furniture Direct | new desk & chairs for ELN | | 1,161.92 | 37,062.81 |
| | 08/02/2013 | | Amazon | 2 chairs for RA desk | | 220.26 | 37,283.07 |
| | 08/13/2013 | 8/8/13 | SunEaz Window Tinting | tinting for office | | 950.00 | 38,233.07 |
| | 01/12/2016 | Down payment | Beau Bureaux Interiors, Inc. | Down payment on office furniture | El Paseo | 25,000.00 | 63,233.07 |
| | 03/09/2016 | 20-1002 | Beau Bureaux Interiors, Inc. | furniture - balance due | El Paseo | 23,881.20 | 87,114.27 |
| | 03/24/2016 | 4349 | The Construction Zone | fridge for office | El Paseo | 1,032.13 | 88,146.40 |
| | 04/11/2016 | 19759 | Beau Bureaux Interiors, Inc. | furniture | El Paseo | 4,112.51 | 92,258.91 |

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3
05/09/23
Accrual Basis

# HK LANE REAL ESTATE
## Balance Sheet Detail
### As of May 9, 2023

| | Date | Num | Name | Memo | Class | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | 04/11/2016 | 19738 | Beau Bureaux Interiors, Inc. | furinture | El Paseo | 7,384.04 | 99,642.95 |
| | 05/28/2016 | 19957 | Beau Bureaux Interiors, Inc. | chair for receptionist | El Paseo | 322.60 | 99,965.55 |
| | 05/31/2016 | 51116 | Corporate Art Gallery | Artwork - posters for wall | El Paseo | 4,452.60 | 104,418.15 |
| | 08/02/2017 | New chair | Terri Beck - Agent | new chair | Palm Desert | 337.26 | 104,755.41 |
| | 01/31/2018 | | Desert Business Interiors | New furniture for new corp office | Palm Desert | 3,400.00 | 108,155.41 |
| | 02/16/2018 | | Desert Business Interiors | New furniture for new corp office | Palm Desert | 1,588.23 | 109,743.64 |
| | 02/22/2018 | | Desert Business Interiors | New furniture for new corp office | Palm Desert | 3,399.01 | 113,142.65 |
| | 03/08/2018 | | Desert Business Interiors | New furniture for new corp office | Palm Desert | 1,588.24 | 114,730.89 |
| | 05/16/2018 | 11462 | One El Paseo North, LLC | Pd letover furniture purchased by Sam/Ocean Prop pak | | -2,800.00 | 111,930.89 |
| | 06/18/2018 | | Palms to Pines Mirror & Glass | bar glass for HK office | Palm Desert | 194.00 | 112,124.89 |
| | 06/28/2018 | | Palms to Pines Mirror & Glass | bar glass for HK office | Palm Desert | 194.00 | 112,318.89 |
| | 06/29/2018 | | Desert Business Interiors | new console for ENaigle office | Palm Desert | 587.24 | 112,906.13 |
| | 03/23/2023 | 7746 | Ryan Cummings / John Moore | Six black retro chairs $100 each | Palm Springs | -600.00 | 112,306.13 |
| | 03/23/2023 | 7746 | Ryan Cummings / John Moore | Two Padded gray Eames Chairs | Palm Springs | -200.00 | 112,106.13 |
| Total 13020 · Furniture & Furnishings | | | | | | 112,106.13 | 112,106.13 |
| 13210 · HVAC | | | | | | | 0.00 |
| | 02/22/2016 | 4333 | The Construction Zone | electrical work | El Paseo | 3,588.75 | 3,588.75 |
| | 02/22/2016 | 4333 | The Construction Zone | credit electrical | El Paseo | -1,850.00 | 1,738.75 |
| | 03/11/2016 | 4337 | The Construction Zone | plumbing | El Paseo | 1,291.95 | 3,030.70 |
| | 03/11/2016 | 4337 | The Construction Zone | HVAC | El Paseo | 1,395.00 | 4,425.70 |
| | 03/11/2016 | 4337 | The Construction Zone | Fire sprinklers | El Paseo | 1,620.00 | 6,045.70 |
| | 03/24/2016 | 4326 | The Construction Zone | plumbing | El Paseo | 787.75 | 6,833.45 |
| | 03/24/2016 | 4347 | The Construction Zone | electrical | El Paseo | 717.75 | 7,551.20 |
| | 03/24/2016 | 4347 | The Construction Zone | electrical | El Paseo | 63.48 | 7,614.68 |
| | 03/25/2016 | 4348 | The Construction Zone | electrical | El Paseo | 478.50 | 8,093.18 |
| | 03/25/2016 | 4348 | The Construction Zone | PLUMBING | El Paseo | 143.55 | 8,236.73 |
| | 03/25/2016 | 4348 | The Construction Zone | hvac | El Paseo | 155.00 | 8,391.73 |
| | 03/25/2016 | 4348 | The Construction Zone | fire spinklers | El Paseo | 180.00 | 8,571.73 |
| | 03/25/2016 | 4348 | The Construction Zone | credit | El Paseo | -759.43 | 7,812.30 |
| | 03/25/2016 | 4348 | The Construction Zone | electrical | El Paseo | 42.32 | 7,854.62 |
| Total 13210 · HVAC | | | | | | 7,854.62 | 7,854.62 |
| 13220 · Flooring | | | | | | | 0.00 |
| | 06/01/2009 | | Canavan Group | carpet | | 7,158.51 | 7,158.51 |
| | 03/11/2016 | 4337 | The Construction Zone | flooring | El Paseo | 21,790.94 | 28,949.45 |
| | 03/11/2016 | 4337 | The Construction Zone | construction clean up | El Paseo | 600.00 | 29,549.45 |
| | 03/11/2016 | 4337 | The Construction Zone | creit | El Paseo | -9,103.86 | 20,445.59 |
| | 04/11/2016 | 4938 | One El Paseo North, LLC | Landlord reimbursement | El Paseo | -20,000.00 | 445.59 |
| Total 13220 · Flooring | | | | | | 445.59 | 445.59 |

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

Accrual Basis

# HK LANE REAL ESTATE
## Balance Sheet Detail
### As of May 9, 2023

| | Date | Num | Name | Memo | Class | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 13230 · Walls & Cabinetry | | | | | | | 0.00 |
| | 02/22/2016 | 4333 | The Construction Zone | walls | El Paseo | 2,904.00 | 2,904.00 |
| | 02/22/2016 | 4333 | The Construction Zone | T bar Ceiling | El Paseo | 1,365.00 | 4,269.00 |
| | 02/22/2016 | 4333 | The Construction Zone | pain | El Paseo | 5,786.00 | 10,055.00 |
| | 02/22/2016 | 4333 | The Construction Zone | Fppra, framing, Hardware | El Paseo | 2,587.22 | 12,642.22 |
| | 02/22/2016 | 4333 | The Construction Zone | windows and glass walls | El Paseo | 3,100.00 | 15,742.22 |
| | 02/22/2016 | 4333 | The Construction Zone | granite countertios | El Paseo | 5,310.00 | 21,052.22 |
| | 02/22/2016 | 4333 | The Construction Zone | glass | El Paseo | 317.40 | 21,369.62 |
| | 03/11/2016 | 4337 | The Construction Zone | T Bar Ceiling | El Paseo | 390.00 | 21,759.62 |
| | 03/11/2016 | 4337 | The Construction Zone | Paint | El Paseo | 723.25 | 22,482.87 |
| | 03/24/2016 | 4347 | The Construction Zone | windows and glass walls | El Paseo | 14,832.54 | 37,315.41 |
| | 03/24/2016 | 4347 | The Construction Zone | Cabinetry | El Paseo | 13,842.00 | 51,157.41 |
| | 03/24/2016 | 4347 | The Construction Zone | granite counter tops | El Paseo | 4,248.00 | 55,405.41 |
| | 03/24/2016 | 4347 | The Construction Zone | credit | El Paseo | -4,982.75 | 50,422.66 |
| | 03/24/2016 | 4347 | The Construction Zone | glass | El Paseo | 2,277.00 | 52,699.66 |
| | 03/24/2016 | 4347 | The Construction Zone | laminate panels | El Paseo | 900.00 | 53,599.66 |
| | 03/24/2016 | 4347 | The Construction Zone | column finish | El Paseo | 662.40 | 54,262.06 |
| | 03/25/2016 | 4348 | The Construction Zone | demolition | El Paseo | 399.00 | 54,661.06 |
| | 03/25/2016 | 4348 | The Construction Zone | new walls | El Paseo | 968.00 | 55,629.06 |
| | 03/25/2016 | 4348 | The Construction Zone | T Bar ceiling | El Paseo | 195.00 | 55,824.06 |
| | 03/25/2016 | 4348 | The Construction Zone | paint | El Paseo | 723.25 | 56,547.31 |
| | 03/25/2016 | 4348 | The Construction Zone | doors & frames & hardware | El Paseo | 287.47 | 56,834.78 |
| | 03/25/2016 | 4348 | The Construction Zone | windows and glass walls | El Paseo | 1,992.96 | 58,827.74 |
| | 03/25/2016 | 4348 | The Construction Zone | cabinetry | El Paseo | 1,538.00 | 60,365.74 |
| | 03/25/2016 | 4348 | The Construction Zone | granite counter tops | El Paseo | 1,062.00 | 61,427.74 |
| | 03/25/2016 | 4348 | The Construction Zone | flooring | El Paseo | 2,421.21 | 63,848.95 |
| | 03/25/2016 | 4348 | The Construction Zone | florring | El Paseo | 75.00 | 63,923.95 |
| | 03/25/2016 | 4348 | The Construction Zone | glass | El Paseo | 253.00 | 64,176.95 |
| | 03/25/2016 | 4348 | The Construction Zone | credit | El Paseo | -1,011.54 | 63,165.41 |
| | 03/25/2016 | 4348 | The Construction Zone | laminate panels | El Paseo | 100.00 | 63,265.41 |
| | 03/25/2016 | 4348 | The Construction Zone | column finish | El Paseo | 73.60 | 63,339.01 |
| | 04/11/2016 | 4938 | One El Paseo North, LLC | Landlord reimbursement | El Paseo | -50,000.00 | 13,339.01 |
| | 05/31/2016 | 86048 | Best Signs, Inc. | new vinyl sign | El Paseo | 588.66 | 13,927.67 |
| Total 13230 · Walls & Cabinetry | | | | | | 13,927.67 | 13,927.67 |
| 13299 · L/H Improvements | | | | | | | 0.00 |
| Total 13299 · L/H Improvements | | | | | | | 0.00 |



WRE_0000046

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

---

**EXHIBIT B**
**LIST OF ACTIVE LISTINGS**

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 10:02 AM

flexmls Web

PALM SPRINGS OFFICES (OFFICE 5595)

4 Properties

| | MLS # | Status | Price | Address | City | Listing Agent | Listing Date | Total Bedrooms | Total Baths | Approx SqFt |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 219093525 | Active | $330,000 | 2199 1st Lane | Big Bear City | Billy Meraz 760-333-1884 billy@merazproperties.com http://www.IAMTHEDESERT.COM | 04/12/2023 | 3 | 1 | 896 |
| 2 | 219094316 | Active Under Contract | $379,900 | 66647 El Dorado Place | Desert Hot Springs | Joseph J Babineaux 818-667-5108 joseph@hklane.com | 04/30/2023 | 3 | 3 | 1,687 |
| 3 | 219095236 | Active New Listing | $949,000 | 1442 N Via Miraleste | Palm Springs | Joseph J Babineaux 818-667-5108 joseph@hklane.com | 05/19/2023 | 3 | 2 | 1,816 |
| 4 | 219093224 | Active | $299,900 | 471 S Calle El Segundo C16 | Palm Springs | Chris Burbach 314-650-4248 chris@psburbach.com | 04/06/2023 | 1 | 1 | 568 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 10:02 AM. DRE#: 01235389

RESIDENTIAL

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 10:06 AM flexmls Web

PALM DESERT OFFICE (OFFICE 5596)

1 Property

| | MLS # | Status | Price | Address | City | Listing Agent | Listing Date | Total Bedrooms | Total Baths | Approx SqFt |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 219094112 | Active | $1,499,000 | 5 Furman Court | Rancho Mirage | Gary Pollock 424-316-9078 gpollock@hklane.com | 04/25/2023 | 3 | 3 | 2,890 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 10:06 AM. DRE#: 01235389

RESIDENTIAL

WRE_0000049

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 10:15 AM flexmls Web

LA QUINTA OFFICES (OFFICES 8D 21798) **5 Properties**

| | MLS # | Status | Price | Address | City | Listing Agent | Listing Date | Total Bedrooms | Total Baths | Approx SqFt |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 219094198 | Active | $2,500,000 | 79199 Cetrino | La Quinta | Gail H Gallaudet<br>760-485-0568<br>gail@gallaudet.com<br>http://gallaudet.com | 04/27/2023 | 4 | 5 | 3,771 |
| 2 | 219094152 | Active | $454,000 | 78453 Magenta Drive | La Quinta | Robin Grant<br>760-409-3029<br>rgrant@hklane.com<br>http://www.RobinGrant.com | 04/26/2023 | 2 | 2 | 912 |
| 3 | 219095288 | Active New Listing | $3,500,000 | 50755 Nispero | La Quinta | Gail H Gallaudet<br>760-485-0568<br>gail@gallaudet.com<br>http://gallaudet.com | 05/21/2023 | 5 | 6 | 5,488 |
| 4 | 219089048 | Active | $2,395,000 | 80609 Via Savona | La Quinta | Jennie Robinson<br>760-413-5209<br>swingadeal4you@aol.com<br>http://www.JennieRobinson.com | 01/05/2023 | 4 | 4 | 3,247 |
| 5 | 219092683 | Active | $485,000 | 81225 Victoria Lane | La Quinta | Maureen Ann Byrne<br>760-567-5097<br>maureen@maureenbyrne.com<br>http://maureenbyrne.com | 03/21/2023 | 3 | 3 | 1,641 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 10:15 AM. DRE#: 01235389

RESIDENTIAL

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 10:18 AM flexmls Web

PALM DESERT OFFICES (OFFICE OD8884)

11 Properties

| | MLS # | Status | Price | Address | City | Listing Agent | Listing Date | Total Bedrooms | Total Baths | Approx SqFt |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 219095353 | Active New Listing | $867,000 | 79235 Bermuda Dunes Drive | Bermuda Dunes | Diane Flaherty 760-774-3836 dianeflaherty@outlook.com http://www.TheGolfersAgent.com | 05/23/2023 | 3 | 4 | 2,650 |
| 2 | 219094426 | Active | $1,228,000 | 43761 Chapelton Drive | Bermuda Dunes | Diane Flaherty 760-774-3836 dianeflaherty@outlook.com http://www.TheGolfersAgent.com | 05/02/2023 | 3 | 3 | 3,454 |
| 3 | 219088693 | Active | $428,000 | 79435 Montego Bay Drive | Bermuda Dunes | Diane Flaherty 760-774-3836 dianeflaherty@outlook.com http://www.TheGolfersAgent.com | 12/29/2022 | 2 | 2 | 1,908 |
| 4 | 219091914 | Active | $769,000 | 78740 Runaway Bay Drive | Bermuda Dunes | Diane Flaherty 760-774-3836 dianeflaherty@outlook.com http://www.TheGolfersAgent.com | 03/09/2023 | 4 | 4 | 2,818 |
| 5 | 219089887 | Active | $429,000 | 81116 Avenida Vidrio | Indio | Cristie H Bateman 928-681-7043 cbateman@hklane.com | 01/25/2023 | 2 | 2 | 1,295 |
| 6 | 219094170 | Active | $445,000 | 77552 Calle Las Brisas N | Palm Desert | P.R. Roll 760-668-3500 realtorprroll@aol.com http://www.prroll.com | 04/26/2023 | 3 | 2 | 1,536 |
| 7 | 219093230 | Active | $875,000 | 47171 El Agadir | Palm Desert | Chuck Bennett 760-202-4062 chuckabennett@gmail.com | 04/06/2023 | 3 | 3 | 2,293 |
| 8 | 219088902 | Active | $799,000 | 1401 Retreat Circle | Palm Desert | Scott J Butzbach 562-858-0669 scottb4re@yahoo.com | 12/22/2022 | 2 | 3 | 2,034 |
| 9 | 219089880 | Active | $405,000 | 39889 Burton Way | Rancho Mirage | Elena Barmet 760-485-6421 elenabarmet@yahoo.com http://H.K.Lane/ChristiesInternational | 01/25/2023 | 2 | 2 | 1,670 |
| 10 | 219092635 | Active | $3,495,000 | 6 Rocky Lane | Rancho Mirage | Ted J Stein 760-834-7500 tstein@dc.rr.com | 03/22/2023 | 5 | 7 | 6,000 |
| 11 | 219095134 | Active | $970,000 | 83 Via Las Flores | Rancho Mirage | Kenneth Townsend 760-422-4770 ktownsend@hklane.com http://www.HKLane.comorwww.KenTownsend.com | 05/17/2023 | 2 | 2 | 2,331 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 10:18 AM. DRE#: 01235389

RESIDENTIAL

WRE_0000051

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 10:23 AM flexmls Web

LAKE ARROWHEAD OFFICE (OFFICE EV-2613) 5 Properties

| | MLS # | Status | Price | Address | City | Listing Agent | Listing Date | Total Bedrooms | Total Baths | Approx SqFt |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | EV-22259498 | Active | $1,650,000 | 475 Bay View Drive | Lake Arrowhead | CINDY STAHL 909-744-2151 CLAKEARROWHEAD@AOL.COM | 12/26/2022 | 4 | 3 | 3,515 |
| 2 | EV-22218514 | Active | $674,995 | 225 Corona Circle | Lake Arrowhead | CINDY STAHL 909-744-2151 CLAKEARROWHEAD@AOL.COM | 10/12/2022 | 3 | 4 | 1,754 |
| 3 | EV-23028286 | Active | $2,995,000 | 303 Lake Knoll Drive | Lake Arrowhead | CINDY STAHL 909-744-2151 CLAKEARROWHEAD@AOL.COM | 02/17/2023 | 3 | 4 | 3,906 |
| 4 | EV-23020789 | Active | $3,995,000 | 28041 Lakes Edge Road | Lake Arrowhead | CINDY STAHL 909-744-2151 CLAKEARROWHEAD@AOL.COM | 02/08/2023 | 8 | 9 | 6,548 |
| 5 | EV-23025990 | Active | $6,838,000 | 27913 S Peninsula Drive | Lake Arrowhead | DAVID VAIL 909-800-4343 david@davidvail.com http://www.LakeArrowheadToday.com | 02/13/2023 | 5 | 6 | 4,192 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 10:23 AM. DRE#: 01235369

RESIDENTIAL

WRE_0000052

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 10:25 AM flexmls Web

LAKE ARROWHEAD OFFICES (OFFICE RW-50164) 13 Properties

| | MLS # | Status | Price | Address | City | Listing Agent | Listing Date | Total Bedrooms | Total Baths | Approx SqFt |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | RW-23083565 | Active | $675,000 | 475 Blue Jay Canyon Road | Blue Jay | CHRISSY HAMMER 909-744-2149 chrissyhammer35@gmail.com | 05/16/2023 | 2 | 3 | 1,900 |
| 2 | RW-22126239 | Active | $1,450,000 | 194 Ascension (aka Cedar Lake) Drive | Cedarpines Park | JAMES NEWCOMB 909-754-6157 jimlnewcomb@aol.com http://www.LakeArrowheadAgents.com | 06/11/2022 | 7 | 4 | 4,722 |
| 3 | RW-23078951 | Active | $779,000 | 112 Fairway Drive | Lake Arrowhead | CHRISSY HAMMER 909-744-2149 chrissyhammer35@gmail.com | 05/08/2023 | 3 | 2 | 2,388 |
| 4 | RW-22155000 | Active Price Reduced | $799,000 | 425 Golf Course Way | Lake Arrowhead | CHRISSY HAMMER 909-744-2149 chrissyhammer35@gmail.com | 07/14/2022 | 3 | 2 | 2,258 |
| 5 | RW-23066162 | Active Price Reduced | $699,000 | 319 Grass Valley Road | Lake Arrowhead | CHRISSY HAMMER 909-744-2149 chrissyhammer35@gmail.com | 04/19/2023 | 3 | 3 | 2,046 |
| 6 | RW-23066897 | Active | $199,000 | 0 Hwy. 173 | Lake Arrowhead | CHRISSY HAMMER 909-744-2149 chrissyhammer35@gmail.com | 04/20/2023 | 0 | 0 | 100 |
| 7 | RW-22147381 | Active | $1,825,000 | 1570 Lupin Road | Lake Arrowhead | STEVE CERECEDES 909-228-1015 steve@arrowheadpropertysales.com | 07/08/2022 | 4 | 4 | 3,052 |
| 8 | RW-23080702 | Active | $2,100,000 | 28988 Quail Run Drive | Lake Arrowhead | STEVE CERECEDES 909-228-1015 steve@arrowheadpropertysales.com | 05/09/2023 | 4 | 4 | 4,984 |
| 9 | RW-23090193 | Active Status Change | $675,000 | 938 Sandalwood Drive | Lake Arrowhead | JAMES NEWCOMB 909-754-6157 jimlnewcomb@aol.com http://www.LakeArrowheadAgents.com | 05/23/2023 | 3 | 3 | 1,598 |
| 10 | RW-23066139 | Active | $275,000 | 0 Shelter Cove | Lake Arrowhead | CHRISSY HAMMER 909-744-2149 chrissyhammer35@gmail.com | 04/19/2023 | 0 | 0 | 100 |
| 11 | RW-22079147 | Active | $3,498,500 | 27861 N Shore Road | Lake Arrowhead | STEVE CERECEDES 909-228-1015 steve@arrowheadpropertysales.com | 04/19/2022 | 4 | 5 | 4,447 |
| 12 | RW-23089469 | Active New Listing | $449,000 | 31392 Onacrest Drive | Running Springs | CHRISSY HAMMER 909-744-2149 chrissyhammer35@gmail.com | 05/22/2023 | 3 | 2 | 1,234 |
| 13 | RW-23058634 | Active | $650,000 | 26442 Lake Forest Drive | Twin Peaks | SARAH POLLEY 909-567-5993 sarah.polley.realtor@gmail.com | 04/09/2023 | 4 | 3 | 2,276 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 10:25 AM. DRE#: 01238359

RESIDENTIAL

WRE_0000053

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 12:53 PM

flexmls Web

PALM SPRINGS OFFICE (OFFICE 5595)

1 Property

| | MLS # | Status | Price | Address | Listing Date | Listing Agent | Lot Size |
|---|---|---|---|---|---|---|---|
| 1 | 00-22171773 | Active | $199,000 | 0 Bisnaga | 08/03/2022 | Ty Nasief<br>310-497-6417<br>tnasief@hklane.com | 49,223 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 12:53 PM. DRE#: 01236389

LAND

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 12:58 PM flexmls Web

LA QUINTA OFFICES (OFFICE OD21798) 1 Property

| | MLS # | Status | Price | Address | Listing Agent | Listing Date | Lot Size |
|---|---|---|---|---|---|---|---|
| 1 | 219079784 | Active | $595,000 | 57645 S Valley Lane | C. Roxanne Russell<br>760-409-1371<br>roxanne.russell.realtor@gmail.com<br>http://RoxanneRussellRealtor.com | 06/01/2022 | 53,143 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 12:58 PM. DRE#: 01235389

LAND

WRE_0000055

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 1:02 PM flexmls Web

PALM DESERT OFFICE (OFFICE OD8888) 4 Properties

| | MLS # | Status | Price | Address | Listing Agent | Listing Date | Lot Size |
|---|---|---|---|---|---|---|---|
| 1 | 219090814 | Active | $240,000 | 037 Baracoa Drive | Diane Flaherty<br>760-774-3836<br>dianeflaherty@outlook.com<br>http://www.TheGolfersAgent.com | 02/12/2023 | 11,326 |
| 2 | 219090825 | Active | $215,000 | 79030 Bermuda Dunes Drive Drive | Diane Flaherty<br>760-774-3836<br>dianeflaherty@outlook.com<br>http://www.TheGolfersAgent.com | 02/13/2023 | 15,682 |
| 3 | 219094243 | Active | $150,000 | Lot 48 Camelback | Diane Flaherty<br>760-774-3836<br>dianeflaherty@outlook.com<br>http://www.TheGolfersAgent.com | 04/28/2023 | 12,197 |
| 4 | 219094013 | Active | $1,995,000 | Lot 6 Thunderbird Mesa | Chuck Bennett<br>760-202-4062<br>chuckabennett@gmail.com | 04/23/2023 | 45,302 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 1:02 PM. DRE#: 01235389

LAND

WRE_0000056

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 1:07 PM flexmls Web (OFFICE RW-50164)

LAKE ARROWHEAD OFFICE

12 Properties

| | MLS # | Status | Price | Address | Listing Agent | Listing Date | Lot Size |
|---|---|---|---|---|---|---|---|
| 1 | RW-22174410 | Active | $7,500 | 0 Red Rose (aka Pine) Drive | JAMES NEWCOMB<br>909-754-6157<br>jimlnewcomb@aol.com<br>http://www.LakeArrowheadAgents.com | 08/08/2022 | 4,475 |
| 2 | RW-22222342 | Active | $18,000 | 0 Chillon Drive | JAMES NEWCOMB<br>909-754-6157<br>jimlnewcomb@aol.com<br>http://www.LakeArrowheadAgents.com | 10/14/2022 | 5,256 |
| 3 | RW-23025327 | Active | $44,990 | 0 Brentwood Drive | JILL DAYAN<br>909-730-9075<br>jilldayan@gmail.com | 02/11/2023 | 11,250 |
| 4 | RW-22116982 | Active | $325,000 | 0 Emerald Drive | JAMES NEWCOMB<br>909-754-6157<br>jimlnewcomb@aol.com<br>http://www.LakeArrowheadAgents.com | 06/01/2022 | 28,400 |
| 5 | RW-22117296 | Active | $170,000 | 0 Hwy 173 | JAMES NEWCOMB<br>909-754-6157<br>jimlnewcomb@aol.com<br>http://www.LakeArrowheadAgents.com | 06/01/2022 | 82,328 |
| 6 | RW-22117357 | Active | $235,000 | 0 Hwy 173 | JAMES NEWCOMB<br>909-754-6157<br>jimlnewcomb@aol.com<br>http://www.LakeArrowheadAgents.com | 06/01/2022 | 111,078 |
| 7 | RW-22117326 | Active | $235,000 | 0 Hwy 173 | JAMES NEWCOMB<br>909-754-6157<br>jimlnewcomb@aol.com<br>http://www.LakeArrowheadAgents.com | 06/01/2022 | 114,127 |
| 8 | RW-22117393 | Active | $365,000 | 0 Hwy 173 | JAMES NEWCOMB<br>909-754-6157<br>jimlnewcomb@aol.com<br>http://www.LakeArrowheadAgents.com | 06/01/2022 | 181,645 |
| 9 | RW-23001694 | Active | $74,000 | 26825 Inyo Court | JAMES NEWCOMB<br>909-754-6157<br>jimlnewcomb@aol.com<br>http://www.LakeArrowheadAgents.com | 01/04/2023 | 7,860 |
| 10 | RW-23001966 | Active | $79,000 | 0 Sandalwood Drive | SARAH POLLEY<br>909-567-5993<br>sarah.polley.realtor@gmail.com | 01/04/2023 | 13,500 |
| 11 | RW-22193873 | Active | $45,000 | 0 Spyglass Drive | CHRISSY HAMMER<br>909-744-2149<br>chrissyhammer35@gmail.com | 09/02/2022 | 10,304 |
| 12 | RW-23056588 | Active | $140,000 | 26603 Windward Road | SARAH POLLEY<br>909-567-5993<br>sarah.polley.realtor@gmail.com | 04/05/2023 | 12,700 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 1:07 PM. DRE#: 01235389

LAND

WRE_0000057

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/26/23, 10:40 AM flexmls Web

PALM DESERT OFFICE (OFFICE 5596)

4 Properties

| | MLS # | Status | Price | Address | Listing Agent | Listing Date | Beds | Ttl Baths | SqFt |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 219092443 | Active Price Reduced | $6,000 | 1233 East Via Escuela | Bib Scott<br>310-968-0468<br>bib.scott@gmail.com<br>http://www.hklane.com | 03/20/2023 | 3 | 2 | 2,050 |
| 2 | 219056303 | Active | $10,500 | 30 Columbia Drive | Gary Pollock<br>424-316-9078<br>gpollock@hklane.com | 11/09/2020 | 3 | 3 | 2,517 |
| 3 | 219030708 | Active | $10,500 | 9 Mcgill Drive | Gary Pollock<br>424-316-9078<br>gpollock@hklane.com | 09/26/2019 | 3 | 3 | 3,136 |
| 4 | 219095190 | Active | $3,700 | 40162 Via Del Oro | Bib Scott<br>310-968-0468<br>bib.scott@gmail.com<br>http://www.hklane.com | 05/16/2023 | 3 | 3 | 1,874 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 10:40 AM. DRE#: 01235389

LEASES

WRE_0000058

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

flexmls Web

LA QUINTA OFFICE (OFFICE OD2778)

**7 Properties**

| | MLS # | Status | Price | Address | Listing Agent | Listing Date | Beds | Ttl Baths | SqFt |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 219087441 | Active | **$7,000** | 46320 Dove Road | Jan Pitman<br>760-399-2734<br>pitmangolf@aol.com<br>http://www.pitmangolf.com | 11/18/2022 | 3 | 3 | 2,288 |
| 2 | 219064347 | Active | **$8,500** | 46015 Manitou Drive | Sybill Allen<br>760-668-7468<br>sybill.allen48@gmail.com | 07/01/2021 | 3 | 3 | 2,986 |
| 3 | 219094853 | Active | **$6,500** | 49720 Lincoln Drive | Robin Grant<br>760-409-3029<br>rgrant@hklane.com<br>http://www.RobinGrant.com | 05/11/2023 | 3 | 2 | 1,816 |
| 4 | 219092233 | Active | **$4,200** | 51485 Calle Hueneme | Debra Lynn Sanders-Bowlby<br>602-772-7227<br>joindebrasanders@gmail.com<br>http://www.LuxuryRealEstateToday.com | 03/13/2023 | 2 | 2 | 1,408 |
| 5 | 219095290 | Active New Listing | **$15,000** | 50755 Nispero | Gail H Gallaudet<br>760-485-0568<br>gail@gallaudet.com<br>http://gallaudet.com | 05/21/2023 | 5 | 6 | 5,488 |
| 6 | 219094831 | Active | **$3,500** | 55389 Riviera | Jennifer Bryan<br>760-541-1984<br>jenny.bryan161@gmail.com | 05/10/2023 | 3 | 4 | 2,353 |
| 7 | 219082738 | Active | **$7,500** | 51649 Via Crespi | C. Roxanne Russell<br>760-409-1371<br>roxanne.russell.realtor@gmail.com<br>http://RoxanneRussellRealtor.com | 08/02/2022 | 4 | 5 | 2,497 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 10:42 AM. DRE#: 01235389

LEASES

WRE_0000059

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5/28/23, 10:43 AM

flexmls Web

PALM DESERT OFFICE (OFFICE OD8888)

11 Properties

| | MLS # | Status | Price | Address | Listing Agent | Listing Date | Beds | Ttl Baths | SqFt |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 219091699 | Active | $8,000 | 79575 Camelback Drive | Diane Flaherty 760-774-3836 dianeflaherty@outlook.com http://www.TheGolfersAgent.com | 03/05/2023 | 4 | 2 | 2,159 |
| 2 | 219091698 | Active | $7,000 | 42655 Delhi Place | Diane Flaherty 760-774-3836 dianeflaherty@outlook.com http://www.TheGolfersAgent.com | 03/05/2023 | 3 | 3 | 1,988 |
| 3 | 219091697 | Active | $7,000 | 78690 Starlight Lane | Diane Flaherty 760-774-3836 dianeflaherty@outlook.com http://www.TheGolfersAgent.com | 03/05/2023 | 3 | 4 | 3,220 |
| 4 | 219085196 | Active | $8,000 | 74939 Via Lago | Elena Barmet 760-485-6421 elenabarmet@yahoo.com http://H.K.Lane/ChristiesInternational | 09/30/2022 | 2 | 3 | 1,947 |
| 5 | 219066876 | Active | $3,150 | 47670 Desert Sage Court | Cristie H Bateman 928-681-7043 cbateman@hklane.com | 08/30/2021 | 2 | 2 | 1,009 |
| 6 | 215017658 | Active | $3,200 | 78415 Silver Sage Drive | Kathi G Lewis 760-989-2618 kathig@bdlteam.com http://www.billydlewis.com | 06/08/2015 | 2 | 2 | 1,527 |
| 7 | 219095398 | Active New Listing | $1,900 | 72657 Thrush Road 3 | Cristie H Bateman 928-681-7043 cbateman@hklane.com | 05/21/2023 | 2 | 1 | 840 |
| 8 | 219080588 | Active Price Change | $5,400 | 78300 Willowrich Drive | Kathi G Lewis 760-989-2618 kathig@bdlteam.com http://www.billydlewis.com | 06/17/2022 | 2 | 2 | 1,527 |
| 9 | 219093235 | Active | $9,500 | 34 Columbia Drive | Cristie H Bateman 928-681-7043 cbateman@hklane.com | 04/06/2023 | 3 | 3 | 2,561 |
| 10 | 219077687 | Active | $6,500 | 910 Desert Island 113 | Elena Barmet 760-485-6421 elenabarmet@yahoo.com http://H.K.Lane/ChristiesInternational | 04/24/2022 | 3 | 3 | 2,078 |
| 11 | 219044135 | Active | $8,000 | 15 VIA Verde | Elena Barmet 760-485-6421 elenabarmet@yahoo.com http://H.K.Lane/ChristiesInternational | 10/30/2019 | 4 | 4 | 3,763 |

Information is deemed to be reliable, but is not guaranteed. © 2023 MLS and FBS. Prepared by Todd Banks on Friday, May 26, 2023 10:43 AM. DRE#: 01235389

LEASES

WRE_0000060

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

## EXHIBIT B 1

### LIST OF PENDING SALES

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

# HK Lane, Inc.

[2.P.2]

**Pending Transaction Report (Firm and Conditional) As Of May 26, 2024**
**All Offices - Report Type (Detail - Admin)**

| Trans. # | Address | | MLS # | Type /Cls. | Closing | A/R | Trust Dep. | Commission | Exp. Fees | O/Brokers | Pay Agents | Agent Liab. | Net |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Palm Desert** | | | | | | | | | | | | | |
| 017064 | 26450 Augusta Dr. | | RW23031002 | RS/C | 05/25/2023* | 15,750.00 | 0.00 | 15,750.00 | 0.00 | 0.00 | 13,387.50 | 0.00 | 2,362.50 |
| 017083 | Dock S 601 B | | | RS/B | 05/26/2023* | 7,050.00 | 0.00 | 7,050.00 | 0.00 | 0.00 | 5,992.50 | 0.00 | 1,057.50 |
| 017062 | 481 Village Square W. | | 219094088 | RS/B | 05/31/2023* | 12,375.00 | 0.00 | 12,375.00 | 0.00 | 0.00 | 8,662.50 | 0.00 | 3,712.50 |
| 017094 | 73451 Willow | | | RS/C | 05/31/2023* | 38,500.00 | 0.00 | 38,500.00 | 0.00 | 0.00 | 34,650.00 | 0.00 | 3,850.00 |
| | Total # of Transactions For May, 2023: | 4 | | | | 73,675.00 | 0.00 | 73,675.00 | 0.00 | 0.00 | 62,692.50 | 0.00 | 10,982.50 |
| 017087 | Dock MBM Slip 10 | | RW22191941 | RS/A | 06/02/2023* | 13,500.00 | 0.00 | 13,500.00 | 0.00 | 0.00 | 11,643.75 | 0.00 | 1,856.25 |
| 017068 | 65118 Cliff Cir. | | 219093227 | RS/B | 06/05/2023* | 6,212.50 | 0.00 | 8,675.00 | 0.00 | 2,662.50 | 5,280.62 | 0.00 | 931.88 |
| 017078 | 66647 El Dorado Pl. | | 219094318 | RS/C | 06/05/2023* | 9,725.00 | 0.00 | 9,725.00 | 0.00 | 2,917.50 | 5,786.37 | 0.00 | 1,021.13 |
| 017074 | 43500 Via Magellan | | 219084080 | RS/B | 06/05/2023* | 10,225.00 | 0.00 | 10,225.00 | 0.00 | 0.00 | 7,780.00 | 0.00 | 2,445.00 |
| 017097 | 225 Corona Cir. | | V22218514 | RS/C | 06/06/2023* | 15,750.00 | 0.00 | 15,750.00 | 0.00 | 0.00 | 14,332.50 | 0.00 | 1,417.50 |
| 017072 | 41386 Harvey Mudd - NEW CON | | | RS/B | 06/06/2023* | 12,630.24 | 0.00 | 12,630.24 | 0.00 | 0.00 | 10,735.71 | 0.00 | 1,894.53 |
| 017084 | 27528 Ashwood Ln. | | RW23080823 | RS/B | 06/09/2023* | 12,500.00 | 0.00 | 12,500.00 | 0.00 | 0.00 | 10,625.00 | 0.00 | 1,875.00 |
| 017059 | 71443 Country Club | | 23261321 | RS/B | 06/12/2023* | 29,375.00 | 0.00 | 29,375.00 | 0.00 | 0.00 | 25,987.50 | 0.00 | 3,387.50 |
| 017086 | 48820 Shady View Dr. | | 219091748 | RS/C | 06/12/2023* | 33,000.00 | 0.00 | 33,000.00 | 0.00 | 0.00 | 24,750.00 | 0.00 | 8,250.00 |
| 017082 | 186 Via Escuela,#E | | 219094550 | RS/C | 06/12/2023* | 6,780.00 | 0.00 | 6,780.00 | 0.00 | 0.00 | 5,652.00 | 0.00 | 1,128.00 |
| 017067 | 76366 Princeton Way - NEW CON | | | RS/B | 06/15/2023* | 12,330.30 | 0.00 | 12,330.30 | 0.00 | 0.00 | 9,864.23 | 0.00 | 2,466.07 |
| 017096 | 26733 Modoc Ln. | | | RS/C | 06/16/2023* | 23,775.00 | 0.00 | 23,775.00 | 0.00 | 0.00 | 20,803.12 | 0.00 | 2,971.88 |
| 017099 | 28571 Manitoba | | | RS/C | 06/21/2023* | 33,975.00 | 0.00 | 33,975.00 | 0.00 | 0.00 | 29,728.12 | 0.00 | 4,246.88 |
| 017090 | 234 Calle La Soledad | | 219092853 | RS/C | 06/27/2023* | 31,562.50 | 0.00 | 31,562.50 | 0.00 | 0.00 | 26,039.06 | 0.00 | 5,523.44 |
| 017098 | 43381 Chapelton | | 219086385 | RS/C | 06/27/2023* | 22,500.00 | 0.00 | 22,500.00 | 0.00 | 0.00 | 19,687.50 | 0.00 | 2,812.50 |
| 017065 | 38161 Tandika | | | RS/C | 06/30/2023* | 42,500.00 | 0.00 | 42,500.00 | 0.00 | 0.00 | 35,675.00 | 0.00 | 6,825.00 |
| | Total # of Transactions For June, 2023: | 16 | | | | 316,340.54 | 0.00 | 319,003.04 | 0.00 | 5,580.00 | 264,370.48 | 0.00 | 49,052.56 |
| 017081 | 368 Red River Rd. | | 219093880 | RS/B | 07/14/2023* | 22,500.00 | 0.00 | 22,500.00 | 0.00 | 0.00 | 19,800.00 | 0.00 | 2,700.00 |
| 017101 | 27816 Hamiltair Dr. | | EV23054184 | RS/D | 07/31/2023* | 110,833.66 | 0.00 | 144,166.66 | 0.00 | 33,333.00 | 100,858.63 | 0.00 | 9,975.03 |
| | Total # of Transactions For July, 2023: | 2 | | | | 133,333.66 | 0.00 | 166,666.66 | 0.00 | 33,333.00 | 120,658.63 | 0.00 | 12,675.03 |
| 017100 | NEW CON The Province - ADDRESS TBD | | | RS/B | 11/15/2023* | 12,000.00 | 0.00 | 24,000.00 | 0.00 | 12,000.00 | 10,800.00 | 0.00 | 1,200.00 |
| | Total # of Transactions For November, 2023: | 1 | | | | 12,000.00 | 0.00 | 24,000.00 | 0.00 | 12,000.00 | 10,800.00 | 0.00 | 1,200.00 |
| | Total # of Transactions for Palm Desert: | 23 | | | | 535,349.20 | 0.00 | 583,344.70 | 0.00 | 50,913.00 | 458,521.61 | 0.00 | 73,910.09 |

* - Firm Transactions

Total Firm Transactions for Palm Desert: 73,910.09

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

# HK Lane, Inc.

[2.P.2]

**Pending Transaction Report (Firm and Conditional) As Of May 26, 2024**
**All Offices - Report Type (Detail - Admin)**

| Trans. # | Address | MLS # | Type /Cls. | Closing | A/R | Trust Dep. | Commission | Exp. Fees | O/Brokers | Pay Agents | Agent Liab. | Net |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **La Quinta** | | | | | | | | | | | | |
| 017044 | 54750 Avenida Rubio LOT | | RS/C | 05/14/2023* | 3,375.00 | 0.00 | 4,500.00 | 0.00 | 1,125.00 | 2,953.12 | 0.00 | 421.88 |
| 017053 | 79105 Mandarina | 219093382 | RS/C | 05/28/2023* | 37,500.00 | 0.00 | 37,500.00 | 0.00 | 0.00 | 33,750.00 | 0.00 | 3,750.00 |
| 017060 | 61655 Toro Canyon Way | 21992141 | RS/C | 05/29/2023* | 13,500.00 | 0.00 | 13,500.00 | 0.00 | 0.00 | 11,025.00 | 0.00 | 2,475.00 |
| | Total # of Transactions For May, 2023: 3 | | | | 54,375.00 | 0.00 | 55,500.00 | 0.00 | 1,125.00 | 47,728.12 | 0.00 | 6,646.88 |
| 016994 | 79930 Cedar Crest | | RS/B | 06/02/2023* | 20,375.00 | 0.00 | 20,375.00 | 0.00 | 0.00 | 18,295.00 | 0.00 | 2,080.00 |
| 017024 | 53347 Via Mallorca | 219092735 | RS/B | 06/02/2023* | 125,880.00 | 0.00 | 251,760.00 | 0.00 | 125,880.00 | 115,359.60 | 0.00 | 10,520.40 |
| 017071 | 45385 Club Dr. | | RS/C | 06/05/2023* | 28,750.00 | 0.00 | 28,750.00 | 0.00 | 0.00 | 24,706.24 | 0.00 | 4,043.76 |
| 017093 | 54905 Avenida Diaz | 219089543 | RS/C | 06/07/2023* | 16,975.00 | 0.00 | 16,975.00 | 0.00 | 0.00 | 16,126.25 | 0.00 | 848.75 |
| 017076 | 78240 Quail Run | 2190094297 | RS/B | 06/07/2023* | 18,125.00 | 0.00 | 18,125.00 | 0.00 | 0.00 | 13,593.75 | 0.00 | 4,531.25 |
| 017047 | 51505 Whiptail - NEW CON | | RS/B | 06/08/2023* | 10,017.00 | 0.00 | 14,310.00 | 0.00 | 4,293.00 | 8,514.45 | 0.00 | 1,502.55 |
| 017052 | 82650 Walker Canyon Dr. | 2128092253 | RS/B | 06/23/2023* | 21,075.00 | 0.00 | 21,075.00 | 0.00 | 0.00 | 17,463.75 | 0.00 | 3,611.25 |
| | Total # of Transactions For June, 2023: 7 | | | | 241,197.00 | 0.00 | 371,370.00 | 0.00 | 130,173.00 | 214,059.04 | 0.00 | 27,137.96 |
| 017095 | 54724 Southern Hills | 219095098 | RS/B | 07/20/2023* | 29,875.00 | 0.00 | 29,875.00 | 0.00 | 0.00 | 27,485.00 | 0.00 | 2,390.00 |
| | Total # of Transactions For July, 2023: 1 | | | | 29,875.00 | 0.00 | 29,875.00 | 0.00 | 0.00 | 27,485.00 | 0.00 | 2,390.00 |
| 016662 | 5 Via L'Antico - NEW CON | 219079480 | RS/B | 08/01/2023* | 82,500.00 | 0.00 | 82,500.00 | 0.00 | 0.00 | 70,125.00 | 0.00 | 12,375.00 |
| 017069 | 85501 61st Avenue | | RS/D | 08/03/2023* | 77,500.00 | 0.00 | 77,500.00 | 0.00 | 0.00 | 65,275.00 | 0.00 | 12,225.00 |
| | Total # of Transactions For August, 2023: 2 | | | | 160,000.00 | 0.00 | 160,000.00 | 0.00 | 0.00 | 135,400.00 | 0.00 | 24,600.00 |
| 017102 | 51475 Pinnacle Vista Dr. - NEW CON | | RS/B | 09/30/2023* | 10,120.00 | 0.00 | 10,120.00 | 0.00 | 0.00 | 7,590.00 | 0.00 | 2,530.00 |
| | Total # of Transactions For September, 2023: 1 | | | | 10,120.00 | 0.00 | 10,120.00 | 0.00 | 0.00 | 7,590.00 | 0.00 | 2,530.00 |
| | Total # of Transactions for La Quinta: 14 | | | | 495,567.00 | 0.00 | 626,865.00 | 0.00 | 131,298.00 | 432,262.16 | 0.00 | 63,304.84 |
| | * - Firm Transactions | | | | | | | | | | Total Firm Transactions for La Quinta: | 63,304.84 |
| | Total # of Transactions: 37 | | | | 1,030,916.20 | 0.00 | 1,210,209.70 | 0.00 | 182,211.00 | 890,783.77 | 0.00 | 137,214.93 |
| | * - Firm Transactions | | | | | | | | | | Total Firm Transactions: | 137,214.93 |

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

# HK Lane, Inc.

[2.P.2]

**Pending Transaction Report (Firm and Conditional) As Of May 26, 2024**
**All Offices - Report Type (Detail - Admin)**

| Aging By Weeks | | Aging By Months | |
|---|---|---|---|
| Overdue | $7,591.88 | Overdue | $7,591.88 |
| 1 Week | $24,494.15 | 1 Month | $71,067.08 |
| 2 Weeks | $20,511.35 | 2 Months | $20,250.94 |
| 3 Weeks | $18,203.45 | 3 Months | $34,575.03 |
| 4 Weeks | $7,858.13 | 4 Months | $0.00 |
| Beyond | $58,555.97 | Beyond | $3,730.00 |
| | $137,214.93 | | $137,214.93 |

**Classifications:**

A OFFICE DOUBLE ENDER B SELLING SIDE C LISTING SIDE D AGENT DOUBLE ENDER

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

---

## EXHIBIT C
## EXCLUDED ASSETS

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

**Excluded Items**

| Item | Location |
|---|---|
| Personal Artwork of Harvey Katofsky | Palm Desert - Office of Harvey Katofsky |
| Personal desktop belongings | Palm Desert - Office of Harvey Katofsky |
| Paper Shredder | Palm Desert - Office of Harvey Katofsky |
| Personal Computer and Monitor | Palm Desert - Office of Harvey Katofsky |
| Gray metal file cabinets (2) | Palm Desert - Office of Harvey Katofsky |
| Personal Artwork of Ron Gerlich | Palm Desert - Office of Ron Gerlich |
| Vase and flowers | Palm Desert - Entry |
| Long / Thin Sofa Table | Palm Desert - Entry |
| Artwork | Palm Desert - Office of Judith Hamilton |
| Accounting Computer/Monitor/Printer | La Quinta - Office of Eden Naigle |
| File Cabinets (2) - housing accounting records | La Quinta - Office of Eden Naigle |

---

**EXHIBIT D**
**PROMISSORY NOTE**

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

# PROMISSORY NOTE

Dated to be effective as of June 9 2023

$1,425,000

## I. COVENANT TO PAY.

1.1 Promise to Pay. FOR VALUE RECEIVED, WRE SoCal, Inc., d/b/a Windermere Desert Properties, a California corporation (herein called "Maker", whether one or more), promises to pay to the order of HK Lane La Quinta, Inc., a California Corporation [herein, together with all subsequent holders of this Promissory Note ("Note"), called "Payee"], on or before the 31st day of May, 2028 (the "Maturity Date"), as hereinafter provided, the principal sum of One Million Four Hundred Twenty Five Thousand Dollars ($1,425,000), or so much thereof as may actually be outstanding hereunder, together with interest on the unpaid principal balance from time to time outstanding at the rate herein specified and otherwise in strict accordance with the terms and provisions hereof.

## II. INTEREST RATE COMPUTATION.

2.1 Interest Rate. Except as otherwise provided herein, interest on the principal balance of this Note outstanding from time to time shall accrue at the lesser of (a) the Applicable Rate (as defined herein) or (b) the Maximum Lawful Rate (as defined herein).

2.2 Default Rate. Upon the occurrence of a default hereunder, at the option of the Payee, the principal balance of this Note then outstanding shall bear interest for the period beginning with the date of occurrence of such default at the Default Rate (as defined herein).

2.3 Definitions. As used in this Note, the following terms shall have the respective meanings indicated below:

"Applicable Rate" shall mean, at any time, a fixed rate of interest of zero percent (0%) per annum.

"Charges" shall mean all fees and charges, if any, contracted for, charged, received, taken or reserved by Payee in connection with the transactions relating to this Note and the indebtedness evidenced hereby which are treated as interest under applicable law.

"Default Rate" shall mean the Maximum Lawful Rate or, if no Maximum Lawful Rate exists, ten percent (10%) per annum.

"Maximum Lawful Rate" shall mean the maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Payee in accordance with the applicable laws of the State of California (or applicable United States federal law to the extent that it permits Payee to contract for, charge, take, receive or reserve a greater amount of interest than under California law), taking into account all Charges made in connection with the loan evidenced by this Note and the Loan Documents.

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

2.4 Interest Limitation Recoupment. Notwithstanding anything in this Note to the contrary, if at any time (i) interest at the Applicable Rate, (ii) interest at the Default Rate, if applicable, and (iii) the Charges computed over the full term of this Note, exceed the Maximum Lawful Rate, then the rate of interest payable hereunder, together with all Charges, shall be limited to the Maximum Lawful Rate.

2.5 Computation Period. Except for the computation of the Maximum Lawful Rate which shall be undertaken on the basis of a 365-day year, as the case may be, interest on the indebtedness evidenced by this Note shall be computed on the basis of a 360-day year or on such basis as is provided to Payee of the funds borrowed from Bank One and shall accrue on the actual number of days any principal balance hereof is outstanding.

III. PAYMENTS.

3.1 Payment Schedule.

(a) Payment Dates. The principal amount of the Loan shall be payable in consecutive quarterly installments equal to thirteen percent (13%) of Company Dollars (as that term is defined in the Asset Purchase Agreement between Borrower and Noteholder of even date) for the quarter immediately preceding the payment (each payment is an "Installment Payment"). Installment Payments will be paid on the January 31, April 30, July 31, and October 31 of each year. The first Installment Payment made under this Note will be made on October 31, 2023. The final Installment Payment will be made on May 31, 2028. On May 31, 2028, all amounts then outstanding under this Note, including principal, accrued and unpaid interest, and any unpaid fees, shall be due and payable.

(b) Notwithstanding the foregoing, in the event that the dollar volume of closed sales attributable to the individual licensees who transferred from Seller to Purchaser at Closing is less than $50,000,000 in any quarter, then the Installment Payment for that quarter shall be eight percent (8%) of Company Dollars instead of 13%.

3.2 Application. Subject to the terms of Section 3.6, all payments on this Note shall, at the sole option of Payee, be applied at any time and from time to time and in any order, to the following: (i) the payment of accrued but unpaid interest hereon, (ii) the payment or reimbursement of any expenses, costs or obligations (other than the principal hereof and interest hereon) for which Maker shall be obligated or Payee entitled pursuant to the provisions hereof, and (iii) the payment of all or any portion of the principal balance then outstanding hereunder.

3.3 Place. All payments hereunder shall be wired or electronically transferred as Payee may designate to Maker.

3.4 Business Days. If any payment of principal or interest on this Note shall become due and payable on a Saturday, Sunday or any other day on which all Federal Banks are not open for normal business, such payment shall be made on the next succeeding business day. Any such extension of time for payment shall be included in computing interest which has accrued and shall be payable in connection with such payment.

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

3.5 Legal Tender. All amounts payable hereunder are payable in lawful money or legal tender of the United States of America.

3.6 Prepayment. Maker shall have the right to prepay, at any time and from time to time without premium or penalty, the entire unpaid principal balance of this Note or any portion thereof. Any such partial prepayments shall be applied to the outstanding principal balance of the Loan.

IV. DEFAULT AND REMEDIES.

4.1 Default. Maker shall be in default hereunder if any default be made in the payment, in whole or in part, of any sum provided for herein when due and such default shall continue for a period of five (5) Business Days, after the due date hereof..

4.2 Remedies. If a default shall occur pursuant to Section 4.1 above, then Payee may, at its option, without notice or demand, declare the unpaid principal balance of, and the accrued but unpaid interest on, this Note immediately due and payable, foreclose all liens and security interests securing payment hereof, pursue any and all other rights, remedies and recourses available to Payee or pursue any combination of the foregoing. All remedies hereunder and at law or in equity shall be cumulative.

4.3 Waiver. Maker and any endorsers hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, protest and notice of protest and non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and collateral securing payment hereof. Maker and any endorsers hereof agree (i) that the time for any payments hereunder may be extended from time to time without notice and consent, (ii) to the acceptance of further collateral, and/or (iii) the release of any existing collateral for the payment of this Note, all without in any manner affecting their liability under or with respect to this Note. No extension of time for the payment of this Note or any installment hereof shall affect the liability of Maker under this Note or any endorser hereof even though the Maker or such endorser is not a party to such agreement.

4.4 No Waiver. Failure of Payee to exercise any of the options granted herein to Payee upon the happening of one or more of the events giving rise to such options shall not constitute a waiver of the right to exercise the same or any other option at any subsequent time in respect to the same or any other event. The acceptance by Payee of any payment hereunder that is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the options granted herein to Payee at that time or at any subsequent time or nullify any prior exercise of any such option without the express written acknowledgment of the Payee.

4.5 Collection Costs. Maker agrees to pay all costs of collection hereof when incurred, including attorneys' fees, whether or not any legal action shall be instituted to enforce this Note.

V. MISCELLANEOUS.

5.1 Notices. All notices or other communications required or permitted to be given pursuant hereto shall be in writing and shall be deemed properly given if (i) mailed by first class United

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

States mail, postage prepaid, registered or certified with return receipt requested, (ii) by delivering same in person to the intended addressee, or (iii) by delivery to an independent third party commercial delivery service for same day or next day delivery and providing for evidence of receipt at the office of the intended addressee. Notice so mailed shall be effective three (3) days after its deposit with the United States Postal Service or any successor thereto; notice sent by such a commercial delivery service shall be effective upon delivery to the addressee; notice given by personal delivery shall be effective only if and when received by the addressee; and notice given by other means shall be effective only if and when received at the designated address of the intended addressee. Either party shall have the right to change its address for notice hereunder to any other location within the continental United States by the giving of thirty (30) days' notice to the other party in the manner set forth herein. For purposes of such notices, the addresses of the parties shall be as follows:

Payee:

HK Lane La Quinta, Inc
c/o Jeff Katofsky, Esq.
4558 Sherman Oaks Ave.
Sherman Oaks CA 91403
Email: Jeff@katofskylaw.com

Maker:

WRE Socal, Inc d/b/a Windermere Desert Properties
73-725 El Paseo
Palm Desert, CA 92260
Email: lacey.williams@windermere.com

5.2 Governing Law. THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. THIS NOTE IS PERFORMABLE IN LOS ANGELES COUNTY, CALIFORNIA. Any action or proceeding under or in connection with this Note against Maker or any other party ever liable for payment of any sums of money payable on this Note may be brought in any state or federal court in Indio County, California. Maker and each such other party hereby irrevocably (i) submits to the nonexclusive jurisdiction of such courts, and (ii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum.

5.3 Interest Limitation. It is expressly stipulated and agreed to be the intent of Maker and Payee at all times to comply with the applicable California law governing the maximum rate or amount of interest payable on this Note or the indebtedness evidenced hereby (or applicable United States federal law to the extent that it permits Payee to contract for, charge, take, reserve or receive a greater amount of interest than under California law). If (i) the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Note, or contracted

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

for, charged, taken, reserved or received with respect to the indebtedness evidenced by this Note, or (ii) Payee's exercise of the option herein contained to accelerate the maturity of this Note or any prepayment by Maker results in Maker having paid any interest in excess of that permitted by applicable law, then it is Maker's and Payee's express intent that (a) all excess amounts theretofore collected by Payee be credited on the principal balance of this Note (or, if this Note has been or would thereby be paid in full, refunded to Maker), and (b) the provisions of this Note immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. All sums paid or agreed to be paid to Payee for the use, forbearance and detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the usury ceiling from time to time in effect and applicable to such indebtedness for so long as debt is outstanding. Notwithstanding anything to the contrary contained herein, it is not the intention of Payee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

5.4 Captions. The article and section headings used in this Note are for convenience of reference only and shall not affect, alter or define the meaning or interpretation of the text of any article or section contained in this Note.

5.5 Joint and Several Liability. If this Note is executed by more than one party, each such party shall be jointly and severally liable for the obligations of Maker under this Note.

5.6 NO ORAL AGREEMENTS. THIS NOTE EMBODIES THE FINAL, ENTIRE AGREEMENT OF MAKER AND PAYEE AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF MAKER AND PAYEE. THERE ARE NO ORAL AGREEMENTS BETWEEN MAKER AND PAYEE. The provisions of this Note may be amended or revised only by an instrument in writing signed by the respective parties to such document.

5.7. Severability. If any term or provision of this Note is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or render such term or provision invalid or unenforceable in any other jurisdiction.

INTENTIONALLY LEFT BLANK

DocuSign Envelope ID: 30E5D076-8EDD-41E4-919C-61702DD5A3A3

5.8 Counterparts. This Note and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic ("pdf" or "tif") form shall be deemed at shall be as effective as delivery of a manually executed counterpart of this Note.

EXECUTED as of the date and year first above written.

DATE: 6/8/2023

MAKER:

WRE SoCal, Inc., d/b/a Windermere Desert Properties

DocuSigned by:

By Geoffrey P. Wood

E9DEB28D3934401...

Name: Geoff Wood

Title: Chief Executive Officer

# Exhibit 3

Thomas H. Casey – Bar No. 138264
Michael D. Good – Bar No. 176033
LAW OFFICE OF THOMAS H. CASEY, INC.
26400 La Alameda, Suite 210
Mission Viejo, CA 92691
Telephone: (949) 766-8787
Facsimile: (949) 766-9896
TomCasey@tomcaseylaw.com

Attorneys for Arturo Cisneros,
Chapter 7 Bankruptcy Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA / RIVERSIDE DIVISION**

In re

HK Lane Palm Desert, Inc.,

Debtor.

WRE SOCAL, INC., D/B/A WINDERMERE DESERT PROPERTIES,

Plaintiff-In-Interpleader,

v.

HK LANE LA QUINTA, INC. and ARTURO CISNEROS, CHAPTER 7 TRUSTEE,

Defendants-In-Interpleader.

ARTURO CISNEROS, CHAPTER 7 TRUSTEE,

Counter-Claimant,

v.

WRE SOCAL, INC., D/B/A WINDERMERE DESERT PROPERTIES,

Counterclaim-Defendant.

ARTURO CISNEROS, CHAPTER 7 TRUSTEE,

Cross-Claimant,

Case No. 6:24-bk-13474-SY

Chapter 7

Adv. No. 6:25-ap-01133-SY

**CHAPTER 7 TRUSTEE'S COUNTER-CLAIM AGAINST WRE SOCAL, INC., D/B/A WINDERMERE DESERT PROPERTIES FOR:**

1. **AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFER [11 U.S.C. § 548 (a)(1)(B);**
2. **AVOIDANCE OF INTENTIONAL FRAUDULENT TRANSFER [11 U.S.C. § 548 (a)(1)(A);**
3. **MONETARY JUDGMENT FOR VALUE OF AVOIDED TRANSFER [11 U.S.C. § 550];**
4. **JUDGMENT THE ASSET PURCHASE AGREEMENT IS VOID**

**CHAPTER 7 TRUSTEE'S CROSS-CLAIM AGAINST HK LANE LA QUINTA, INC. FOR JUDGMENT THE ASSET PURCHASE AGREEMENT IS VOID**

| | |
|---|---|
| v.<br>HK LANE LA QUINTA, INC.,<br>Cross-Defendant. | Status Conference<br>Date: August 13, 2026<br>Time: 10:00 a.m.<br>Location: 3420 Twelfth Street<br>Courtroom 302<br>Riverside, CA 92501 |

A. Cisneros ("Trustee" or "Counter-Claimant"), the duly-appointed and acting Chapter 7 trustee in the above-captioned bankruptcy case of *In re HK Lane Palm Desert, Inc.* (the "Debtor"), respectfully alleges as follows:

**STATEMENT OF JURISDICTION AND VENUE**

1. This adversary proceeding is brought pursuant to Rules 7001(1) and 7003 of the Federal Rules of Bankruptcy Procedure.

2. The United States Bankruptcy Court for the Central District of California, Riverside Division (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Sections 151, 157, and 1334, 11 U.S.C. §§ 502, 548, and 550, and General Order No. 13-05 of the United States District Court for the Central District of California. Declaratory relief is authorized by 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, made applicable by Federal Rule of Bankruptcy Procedure 7001(9).

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (H), and (O). To the extent that any claim for relief in this Counter-Claim is determined to be non-core, Counter-Claimant consents to entry of final judgment and orders of the Bankruptcy Court.

**PARTIES TO THE ACTION**

4. Counter-Claimant is the duly-appointed and acting Chapter 7 trustee of the Debtor's estate.

5. Counter-Claimant is informed and believes, and thereon alleges, that Counter-Defendant WRE SoCal, Inc., d/b/a Windermere Desert Properties at all times alleged herein is a corporation incorporated in California and doing business in California.

## STATEMENT OF STANDING

6. Counter-Claimant, as the Chapter 7 trustee in the Bankruptcy Case, has standing to bring this action pursuant to 11 U.S.C. §§ 548 and 550.

## GENERAL ALLEGATIONS

7. The Bankruptcy Case was filed under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on June 20, 2024 (the "Petition Date").

8. On June 8, 2023, WRE entered into an Asset Purchase Agreement (the "APA").

9. The APA defines the Seller as HK Lane Palm Desert, Inc. (the Debtor) and HK Lane La Quinta, Inc. and defines the buyer as WRE SoCal, Inc., d/b/a Windermere Desert Properties ("WRE").

10. Harvey Katofsky executed the APA as President of the Debtor Seller HK Lane Palm Desert, Inc.

11. Harvey Katofsky executed the APA as President of Seller HK Lane La Quinta, Inc.

12. Per the APA WRE agreed to a total purchase price of $1.65 million "Purchase Price") for substantially all assets of the Seller.

13. Per the APA substantially all assets of the Debtor were transferred to WRE ("Transfer").

14. Per the APA the Purchase Price of $1.65 Million is to be paid as follows: a down payment of $225,000 at closing and a $1,425,000 promissory note for the balance of the Purchase Price ("Promissory Note").

15. The APA states the Promissory Note is an exhibit to the APA.

16. The Debtor did not produce the Promissory Note to the Trustee.

17. The Trustee obtained a copy of the signed Promissory Note from WRE.

18. The $1,425,000 Promissory Note is dated June 8, 2023, the same date as the APA.

19. The $1,425,000 Promissory Note identifies only one payee, HK Lane La Quinta, Inc.

20. The $1,425,000 Promissory Note does not include the Debtor as a payee.

21. The $1,425,000 Promissory Note states the same payment schedule as stated in the

APA.

22. The $1,425,000 Promissory Note states the address of the payee is:

Hk Lane La Quinta, Inc.
c/o Jeff Katofsky, Esq.
4558 Sherman Oaks Ave
Sherman Oaks, CA 91403
Jeff@Katofskylaw.com

23. Jeff Katofsky is the son of Harvey Katofsky, the signer of the APA on behalf of the Seller, comprised of the Debtor and HK Lane La Quinta, Inc.

24. The Promissory Note has a term of five years with quarterly payments due each calendar year in an amount equal to thirteen percent (13%) of Purchaser's Company's Dollars for the preceding quarter. Company Dollars is a defined term in the APA.

25. The APA provides "The full remaining balance of the (Promissory) Note, if any (equal to the original principal minus all payments quarterly payments made) shall be due in full no later than May 31, 2028."

26. Except for the down payment of $225,000 and the first quarterly payment made by WRE in the amount of $38,399.00, all other quarterly payments made by Seller per the Promissory Note were paid to non-debtor HK Lane La Quinta, Inc.

27. By Order entered August 12, 2025, the Bankruptcy Court granted the Trustee's motion for a 2004 examination of the person most knowledgeable at WRE ("WRE 2004 Examination Order"). Trustee counsel conducted the 2004 examination on December 1, 2025.

28. Mark Oster on behalf of WRE testified at the WRE 2004 examination that WRE treated the two sellers as a "single entity" during the transaction.

29. At its 2004 examination WRE testified the EBITDA calculation was used by WRE to determine the $1.65 Million purchase price stated in the PSA.

30. At the 2004 examination Mark Oster, WRE's designated "person most knowledgeable" for WRE's 2004 examination testified "I was involved in putting some numbers

together in that EBITDA calculation."

31. Valuing an ongoing business using a multiple of EBITDA is an acceptable method to value the Seller as the Seller is defined in the APA.

32. Valuing an ongoing business using a multiple of EBITDA is an acceptable method to value a business like the Debtor's business and HK Lane La Quinta, Inc.'s business.

33. Per documents produced by WRE per the WRE 2004 Exam Order, WRE applied a 2.4 multiple of EBITDA for the Seller identified in the APA for Seller's years 2021 and 2022 and calculated the $1.65 Million purchase price stated in the APA.

34. Prior to executing the APA WRE calculated the value of the Seller utilizing the Seller's EBITDA.

35. To determine the value of the Seller defined in the APA WRE obtained certain Seller financial documents from the Seller including but not limited to tax returns for years 2019, 2020 and 2021 plus Profit and Loss Statements and Balance Sheets.

36. At the 2004 examination WRE testified the gross revenue and commissions of the Seller defined in the PSA would have been considered in WRE's EBITDA calculations.

37. At the 2004 examination WRE testified the net income of the Seller would have been considered in the EBITDA calculations.

38. At WRE's 2004 examination WRE compared the Debtor's financial information with HK Lane La Quinta, Inc.'s financial information for years 2019, 2020, 2021 and 2022.

39. At WRE's 2004 exam WRE testified the Debtor's gross income, net income, and sales volume were "exponentially higher" than those of HK Lane La Quinta, Inc.

40. A 2022 memorandum prepared by David Gorsuch, the WRE consultant who negotiated the APA, showed the Debtor (HK Lane Palm Desert, Inc.) with a 2022 net revenue of $1,081,233, while HK Lane La Quinta, Inc. had a net revenue of only $438,529 — less than half that of the Debtor.

41. Despite the *Debtor* HK Lane Palm Desert, Inc. having all of the value for the $1.65 Million purchase price stated in the APA, the APA and the Promissory Note were structured to divert

the vast majority of the purchase proceeds to the *non-debtor* entity HK Lane La Quinta, Inc.

42. The $1,650,000 purchase price was allocated such that HK Lane La Quinta, Inc. care of Jeff Katofsky receives approximately 86% of the sale proceeds, while the Debtor receives only 14%. Specifically, the Promissory Note in the amount of $1.425 million was made payable not to the Debtor, but solely to HK Lane La Quinta, Inc.

43. Mr. Oster of WRE confirmed this allocation in his 2004 exam testimony, acknowledging that of the $1.65 million purchase price, $1.25 million was to be paid to non-debtor HK Lane La Quinta, Inc. When asked why WRE SoCal agreed to pay the majority of the purchase price to only one co-seller, Mr. Oster testified: “I don’t know that we necessarily cared about that. We cared about the totality of the agreement combined.”

44. At the time of the Transfer, applying the multiple of adjusted EBITDA the value of substantially all assets of the Debtor HK Lane Palm Desert, Inc were at least $1.65 Million, the purchase price stated in the APA, while substantially all assets of HK Lane La Quinta, Inc. had minimal to no value.

45. Applying the multiple of adjusted EBITDA the financial documents of the Debtor and HK Lane La Quinta, Inc. for years 2019 to 2022 including but not limited to tax returns, profit and loss statements and balance sheets demonstrate the value of substantially all assets of Debtor HK Lane Palm Desert, Inc were at least $1.65 Million, the purchase price stated in the APA, while the value of substantially all assets of HK Lane La Quinta, Inc. had minimal to no value as follows:

///

///

///

| | DEBTOR | | | | | |
|---|---|---|---|---|---|---|
| | 2019 | 2020 | 2021 | 2022 | 24 Month Average | 48 Month Average |
| Gross Income | 9,519,334 | 8,363,735 | 9,743,860 | 8,015,601 | 8,879,731 | 8,910,633 |
| Gross Profit | 1,362,743 | 1,205,434 | 1,470,150 | 1,081,233 | 1,275,692 | 1,279,890 |
| Net Income | (35,130) | (5,768) | 429,140 | (53,749) | 187,696 | 83,623 |
| Adjustments: | | | | | | |
| Rents | 258,423 | 188,401 | 223,766 | 232,593 | | |
| Harvey & Ron Compensation | 450,000 | 450,000 | 450,000 | 350,000 | | |
| PPP Forgiveness | | | (151,800) | | | |
| Total Adjustments | 708,423 | 638,401 | 521,966 | 582,593 | | |
| **Adjusted EBITDA Value** | **673,293** | **632,633** | **951,106** | **528,844** | **739,975** | **696,469** |

| | HK Lane La Quinta, Inc. | | | | | |
|---|---|---|---|---|---|---|
| | 2019 | 2020 | 2021 | 2022 | 24 Month Average | 48 Month Average |
| Gross Income | 4,011,187 | 3,403,639 | 5,394,306 | 3,224,649 | 4,309,478 | 4,008,445 |
| Gross Profit | 471,987 | 499,313 | 733,511 | 438,229 | 585,870 | 535,760 |
| Net Income | (199,557) | (103,183) | 157,875 | (130,380) | 13,748 | (68,811) |
| Adjustments: | | | | | | |
| PPP Forgiveness | 0 | 0 | (37,800) | 0 | | |
| Total Adjustments | 0 | 0 | (37,800) | 0 | | |
| **Adjusted EBITDA Value** | **(199,557)** | **(103,183)** | **120,075** | **(130,380)** | **(5,153)** | **(78,261)** |

46. Debtor HK Lane La Quinta, Inc. has received from WRE the down payment of $225,000 and only one payment on the Promissory Note in the amount of $38,399.00 for a total of $263,339. The Trustee also released WRE of liability to the estate for the quarterly January 2026 payment made by WRE to HK Lane La Quinta, Inc. in the amount of $23,290.

47. The Debtor received less than reasonably equivalent value in exchange for the transfer of substantially all of its assets to WRE.

48. At the time of the Transfer Debtor HK Lane was insolvent or was rendered insolvent.

49. The Transfer caused substantially all assets of the Debtor to be transferred to WRE.

50. The APA states in pertinent part "Seller desires to sell to Purchaser and Purchaser desires to purchase from Seller substantially all assets belonging to Seller used in connection with the Business."

51. Prior to the Transfer and on March 23, 2023, the Debtor filed a Superior Court complaint against its landlord El Paseo Holdings, LLC. Prior to the Transfer and on April 25, 2023, the Debtor's landlord El Paseo Holdings LLC filed a cross-complaint against the Debtor ("Superior Court Litigation").

52. WRE executed the APA with full knowledge of the pending Superior Court Litigation and that the Debtor faced potential liability from the Superior Court Litigation. Paragraph 7.3 of the APA signed by WRE specifically discloses that the Debtor was involved in litigation with its landlord, El Paseo Holdings LLC.

53. The Debtor's landlord El Paseo Holdings LLC filed in this main bankruptcy case its Proof of Claim asserting a general, unsecured proof of claim in the amount of $554,750.32.

54. The U.S. Small Business administration filed a general unsecured Proof of Claim in the amount of $162,574.22 based on a Note dated prior to the date of the APA.

55. General, unsecured Proofs of Claim filed against the Debtor total $757,561.61.

**<u>FIRST CLAIM FOR RELIEF</u>**

**(Against WRE for Avoidance of Constructive Fraudulent Transfer – 11 U.S.C. § 548(a)(1)(B))**

56. Counter-Claimant Trustee hereby incorporates each and every allegation contained in paragraphs 1 through 55, inclusive, as though fully set forth herein.

57. The Debtor received less than reasonably equivalent value in exchange for the Transfer.

58. At the time that the Transfer was made, the Debtor (i) was insolvent; (ii) became insolvent as a result of the Transfer; (iii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; (iii) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

59. Counter-Claimant Trustee may avoid and recover the Transfer made within two years of the Petition Date as a constructive fraudulent transfer pursuant to 11 U.S.C. § 548.

60. Counter-Claimant Trustee may avoid and recover the value of the Transfer to WRE as the initial transferee of the Transfer.

**SECOND CLAIM FOR RELIEF**

**(Against WRE for Avoidance of Intentional Fraudulent Transfer – 11 U.S.C. § 548(a)(1)(A))**

61. Counter-Claimant Trustee hereby incorporates each and every allegation contained in paragraphs 1 through 60, inclusive, as though fully set forth herein.

62. The Transfer was a transfer of an interest of the Debtor in property to WRE within two years of the Petition Date.

63. The Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud persons or entities to which the Debtor was or might become indebted, on or after the date the Transfer were made.

64. Counter-Claimant Trustee may avoid and recover the Transfer made within two years of the Petition Date as an actual intent fraudulent transfer pursuant to 11 U.S.C. § 548.

65. Counter-Claimant Trustee may avoid and recover the value of the Transfer to WRE as the initial transferee of the Transfer.

**THIRD CLAIM FOR RELIEF**

**(For a Monetary Judgment Against WRE for the Benefit of the Estate Pursuant to 11 U.S.C. § 550)**

66. Counter-Claimant Trustee hereby incorporates each and every allegation contained in paragraphs 1 through 65, inclusive, as though fully set forth herein.

67. WRE is (a) the initial transferee of the Transfer, or (b) the entity for whose benefit the Transfer was made.

68. To the extent the Transfer is avoided under 11 U.S.C. § 548 the Counter-Claimant Trustee may recover for the benefit of the estate a monetary judgment against WRE for the value of the Debtor's assets transferred to WRE per 11 U.S.C. § 550.

69. As alleged above, the value of assets of Debtor HK Lane Palm Desert, Inc were at least $1.65 Million, Debtor HK Lane La Quinta, Inc. has received from WRE the down payment of $225,000 and one payment on the Promissory Note in the amount of $38,399.00 for a total of $263,339. The Trustee also released WRE of liability to the estate for the quarterly January 2026 payment made by WRE to HK Lane La Quinta, Inc. in the amount of $23,290.00. Accordingly, the Counter-Claimant Trustee requests a monetary judgment against WRE in the amount of $1,363,311.

**<u>FOURTH CLAIM FOR RELIEF</u>**

**(For Declaratory Judgment Against WRE and HK Lane La Quinta, Inc. that the Asset Purchase Agreement is Void)**

70. Counter-Claimant and Cross-Claimant Trustee hereby incorporates each and every allegation contained in paragraphs 1 through 69, inclusive, as though fully set forth herein.

71. An actual, present, and justiciable controversy exists between the Trustee, Counter-Defendant WRE, and Cross-Defendant HK Lane La Quinta, Inc. regarding the validity and enforceability of the APA. The dispute concerns whether the APA is void and unenforceable as a matter of law and public policy because its central purpose and effect was to effectuate a fraudulent transfer.

72. The APA provided for the sale of "substantially all assets belonging to Seller used in connection with the Business" for a total price of $1,650,000 (APA Recital B; §§ 1.1, 2). However, the APA and the associated Promissory Note (APA Exhibit "D") were structured to pay the $1,425,000 balance of the purchase price solely to non-debtor HK Lane La Quinta, Inc. (APA § 2.2; Promissory Note § 1.1).

73. As alleged in Paragraphs 11 through 60, the APA was executed between entities controlled by the same principal, Harvey Katofsky, and occurred while the Debtor faced significant potential liability from the El Paseo Holdings LLC Superior Court Litigation. Despite the Debtor contributing the vast majority of the business value – with net revenues "exponentially higher" than those of HK Lane La Quinta, Inc. – the APA diverted approximately 86% of the sale proceeds away from the Debtor's estate.

74. The APA's purpose and effect, as evidenced by its terms and the circumstances alleged herein, was to consummate a transfer that is avoidable as actually and/or constructively fraudulent under 11 U.S.C. § 548.

75. Under California law, a contract must have a lawful object, and agreements designed to further fraudulent transfers are void as contrary to law and public policy (Cal. Civ. Code §§ 1598, 1667, 1668). Because the central purpose of the APA was to hinder, delay, or defraud creditors by stripping the Debtor of its assets for less than reasonably equivalent value, the APA is void in its entirety.

76. In the alternative, to the extent any portion of the APA is deemed severable, the purchase and sale provisions – including the transfer of assets under Section 1.1 and the payment terms under Section 2 – are void and unenforceable because they constitute the mechanism of the fraudulent transfer.

77. A present and immediate declaration is necessary to resolve uncertainty concerning the estate's interest in the assets purportedly conveyed and to assist in the orderly administration of the bankruptcy estate.

78. The Trustee lacks an adequate remedy at law because, absent a declaration that the APA is void, the estate may remain subject to the terms of a tainted agreement that impairs the Trustee's ability to recover the full value of the transferred assets for the benefit of creditors.

79. By reason of the foregoing, the Counter-Claimant and Cross-Claimant is entitled to a declaration that the APA is void.

**PRAYER FOR RELIEF**

WHEREFORE, Counter-Claimant Trustee prays for a judgment as follows:

1. Against WRE for avoidance of the Transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

2. Against WRE for avoidance of the Transfer pursuant to 11 U.S.C. § 548(a)(1)(A).

3. Against WRE for entry of a monetary judgment in the amount of $1,363,311 per 11 U.S.C. § 550.

4. Against WRE and HK Lane La Quinta, Inc. a declaration that (i) the APA is void and

unenforceable as a matter of law and public policy because its purpose and effect was to effectuate a fraudulent transfer; or, in the alternative (ii) the APA's purchase and sale provisions, including but not limited to Sections 1.1 and 2 thereof, are void and unenforceable.

5. Against WRE and HK Lane La Quinta, Inc. for recovery of interest, costs, and attorneys' fees and expenses, to the extent recoverable under applicable law and the evidence submitted to the Bankruptcy Court.

6. Against WRE and HK Lane La Quinta, Inc. for such other and further relief as the Court deems just and proper.

DATED: April 20, 2026

Respectfully submitted,

LAW OFFICE OF THOMAS H. CASEY, INC.
A PROFESSIONAL CORPORATION

By: [signature]
Thomas H. Casey, Attorney for Arturo Cisneros in his capacity as the Chapter 7 Trustee for the Bankruptcy Estate of HK Lane Palm Desert, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**26400 La Alameda, Suite 210, Mission Viejo, CA 92691**

A true and correct copy of the foregoing document entitled (*specify*): **Chapter 7 Trustee's Counter-Claim Against WRE Socal, Inc., d/b/a Windermere Desert Properties for: (1) Avoidance of Constructive Fraudulent Transfer (11 U.S.C. Section 548(a)(1)(B); (2) Avoidance of Intentional Fraudulent Transfer (11 U.S.C. Section 548(a)(1)(A); (3) Monetary Judgment for Value of Avoided Transfer (11 U.S.C. Section 550); (4) Judgment the Asset Purchase Agreement is Void; Chapter 7 Trustee's Cross-Claim Against HK Lane La Quinta, Inc. for Judgment the Asset Purchase Agreement is Void** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 20, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Thomas H Casey kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com**
- **Arturo Cisneros (TR) amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com**
- **Jeff Katofsky jeff@katofskylaw.com, jgroves@propertymanagers.biz**
- **Bernard J Kornberg bernie.kornberg@millernash.com, edgar.rosales@millernash.com**
- **United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) **April 20, 2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 20, 2026 | Kathy Driggers | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVED BY US MAIL:**

**Interested Party**
United States Bankruptcy Court
Attn: Hon. Scott H. Yun
3420 Twelfth Street, Suite 345
Riverside, CA 92501-3819

**Debtor**
HK Lane Palm Desert, Inc.
Attn: Jeff Katofsky
4558 Sherman Oaks Avenue
Sherman Oaks, CA 91403-3060

**Request for Special Notice**
Matthew G. Bouslog, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
2010 Main Street, 8th Floor
Irvine, CA 92614-7214

**Attorneys for Defendant in Interpleader HK Lane La Quinta, Inc.**
Jeff Katofsky, Esq.
Katofsky Law
4558 Sherman Oaks Avenue
Sherman Oaks, CA 91403

**Attorneys for Plaintiff WRE SoCal, Inc., d/b/a Windermere Desert Properties**
Bernard J. Kornberg, Esq.
Miller Nash LLP
340 Golden Shore, Suite 450
Long Beach, CA 90802

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**26400 La Alameda, Suite 210, Mission Viejo, CA 92691**

A true and correct copy of the foregoing document entitled (*specify*): **Chapter 7 Trustee's Motion for Order Approving Settlement Agreement Between the Chapter 7 Trustee, WRE SoCal, Inc., d/b/a Windermere Desert Properties and HK Lane La Quinta, Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019; Memorandum of Points and Authorities; Declaration of Trustee A. Cisneros in Support Thereof** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 16, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Matthew Bouslog mbouslog@allenmatkins.com, ncampos@allenmatkins.com**
- **Thomas H Casey kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com**
- **Arturo Cisneros (TR) amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com**
- **David B Golubchik dbg@lnbyg.com, dbg@lnbyg.com**
- **Leonard L Gumport lgumport@gumportlaw.net**
- **Jeff Katofsky jeff@katofskylaw.com, jgroves@propertymanagers.biz**
- **Bernard J Kornberg bernie.kornberg@millernash.com, edgar.rosales@millernash.com**
- **Jeffrey S Shinbrot jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com**
- **United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) **October 16, 2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 16, 2026 | Kathy Driggers | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVED BY US MAIL:**

**Interested Party**
United States Bankruptcy Court
Attn: Hon. Scott H. Yun
3420 Twelfth Street, Suite 345
Riverside, CA 92501-3819

**Debtor**
HK Lane Palm Desert, Inc.
Attn: Jeff Katofsky
4558 Sherman Oaks Avenue
Sherman Oaks, CA 91403-3060

**Request for Special Notice**
Matthew G. Bouslog, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
2010 Main Street, 8th Floor
Irvine, CA 92614-7214

**Attorneys for Defendant and Cross-Defendant HK Lane La Quinta, Inc.**
Jeff Katofsky, Esq.
Katofsky Law
4558 Sherman Oaks Avenue
Sherman Oaks, CA 91403

**Attorneys for Plaintiff and Counter-Defendant WRE SoCal, Inc., d/b/a Windermere Desert Properties**
Bernard J. Kornberg, Esq.
Miller Nash LLP
340 Golden Shore, Suite 450
Long Beach, CA 90802

# Exhibit 2

Thomas H. Casey – Bar No. 138264
LAW OFFICE OF THOMAS H. CASEY, INC.
A PROFESSIONAL CORPORATION
26400 La Alameda, Suite 210
Mission Viejo, CA 92691
Telephone: (949) 766-8787
Facsimile: (949) 766-9896
Email: TomCasey@tomcaseylaw.com

Attorneys for A. Cisneros
Chapter 7 Bankruptcy Trustee

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

| | |
|---|---|
| In re<br><br>HK LANE PALM DESERT, INC.,<br><br>Debtor. | Case No. 6:24-bk-13474-SY<br><br>Chapter 7<br><br>**NOTICE OF CHAPTER 7 TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE CHAPTER 7 TRUSTEE, WRE SOCAL, INC., D/B/A WINDERMERE DESERT PROPERTIES AND HK LANE LA QUINTA, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**<br><br>[No Hearing Required Pursuant to Local Bankruptcy Rule 9013-1(o)] |

**PLEASE TAKE NOTICE** that A. Cisneros, Chapter 7 Trustee ("Trustee" or "Applicant") for the bankruptcy estate of HK Lane Palm Desert, Inc. ("Debtor"), will file a Motion for an Order Approving Settlement Agreement Between the Trustee, WRE SoCal, Inc., dba Windermere Desert Properties ("WRE"), and HK Lane La Quinta, Inc. ("HKLLQ") Pursuant to Federal Rule of Bankruptcy Procedure 9019 (collectively, "Parties") ("Motion"). In support thereof, Trustee respectfully represents:

**SUMMARY**

Granting this Motion and approving the proposed Settlement Agreement is in the best interest of the estate. Per the proposed Settlement Agreement Counter-Claimant Defendant WRE will resume its quarterly payments per the underlying Promissory Note and the Trustee and HKLLQ will evenly split the quarterly payments. Per the proposed Settlement Agreement, the Trustee will receive the total amount of $540,000. In the event WRE defaults, the proposed Settlement Agreement provides for a procedure for the Trustee to quickly and cost effectively obtain a judgment for the unpaid amount. High Trustee legal fees will be avoided and the risk of WRE becoming insolvent will be reduced. As discussed below, the proposed, Settlement Agreement, attached to the Motion as **Exhibit "1"** is in the best interests of creditors of the estate and should be approved.

## BACKGROUND INFORMATION

On or about June 2023, the Debtor and HKLLQ, as sellers, entered into an Asset Purchase Agreement ("APA"), with WRE SoCal as buyer. The APA provided for the sale of substantially all assets belonging to and used in the Debtor's and HKLLQ's real estate brokerage business in four (4) offices located in Southern California ("Brokerage Assets"). The APA is attached to the Motion as **Exhibit "2"** and is incorporated herein by this reference.

Per the APA, the purchase price for the Brokerage Assets was $1,650,000 ("Purchase Price") with a down payment due of $225,000 ("Down Payment").

The APA refers to a promissory note ("Note") and states that "The Note shall be in the form attached as Exhibit D."

WRE SoCal timely made the $225,000 Down Payment and the first quarterly payment in the amount of $38,339 to the Debtor.

The Note is attached to the APA as Exhibit "D" and is executed by WRE SoCal. Under the Note, WRE SoCal promises to pay HKLLQ the sum of $1,425,000, with quarterly payments to be made on January 31, April 30, July 31, and October 31 of each year, with a maturity date of May 31, 2028 (the "Maturity Date"). The amount of each quarterly payment is defined by a formula as set forth in the Note. Upon the Maturity Date, a balloon payment of the remaining balance is due (the "Balloon Payment").

On or about June 20, 2024 ("Petition Date"), the Debtor filed its Chapter 7 petition with the Bankruptcy Court. Arturo M. Cisneros was appointed as Chapter 7 Trustee.

On September 12, 2024, the Trustee filed a Notification of Asset Case (Doc 14). The Bankruptcy Court set the claims bar date for December 16, 2024, and for governmental agencies, December 17, 2024 (Doc 14-1).

WRE SoCal timely made all payments on the Note until the April 30, 2026 payment. At that time, it ceased making monetary payments due to its assertion that it could offset its indemnity rights under the APA and the Note. Pursuant to the formula under the Note, the amount due for the April 30, 2026 payment is $28,513.22 and the amount due for the July 31, 2026 payment is $27,102.57 (collectively, the "Unpaid Installment Payments").

As of the time of the execution of this Agreement, the amount due from WRE SoCal, pursuant to the APA and Note, is $1,107,083.98.

Interpleader Complaint – Adv. Case No. 6:25-ap-01133-SY

On December 21, 2025, WRE SoCal filed a Complaint in Interpleader ("Interpleader") against the Trustee and HKLLQ (Adv 1 Doc 1).

On February 23, 2026, HKLLQ filed a Motion to Dismiss WRE SoCal's First Amended Complaint ("FAC") (Adv 1 Doc 24) ("Motion To Dismiss Interpleader FAC").

On April 20, 2026, the Trustee filed his Answer to the Interpleader FAC (Adv 1 Doc 34).

Also on April 20, 2026, the Trustee filed a Counter-Claim against WRE SoCal requesting a monetary judgment in the amount of $1,363,311 and a Cross-Claim against HKLLQ for a judgment the APA is void (Adv 1 Doc 35) ("Cross Claim"). A copy of the Trustee's Counterclaim against WRE and Crossclaim against HKLLQ is attached to the Motion as **Exhibit "3"** and is incorporated herein by this reference.

WRE SoCal filed an Answer to the Trustee's Counter-Cross Claim (Adv 1 Doc 59) ("WRE SoCal Answer").

Pursuant to Order entered August 26, 2026, the Bankruptcy Court granted HKLLQ's Motion To Dismiss WRE's Interpleader FAC (Adv 1 Doc 68) ("Dismissal Order"). The

Dismissal Order does not affect the Trustee's pending Counterclaim against WRE or his Crossclaim against HKLLQ.

Notice Of Removal – Adv. Case No. 6:26-ap-01078-SY

On May 6, 2026, in the Superior Court of California, County of Riverside, HKLLQ commenced an action against WRE SoCal, captioned HK Lane La Quinta Inc. v. WRE SoCal, Inc. dba Windermere Desert Properties, Case No. CVPS2603973 (the "State Court Action").

After being served with the summons in the State Court Action, WRE SoCal filed, in the Bankruptcy Court, a Notice of Removal of Civil Action to the United States Bankruptcy Court captioned HK Lane La Quinta, Inc. v. WRE SoCal, Inc. dba Windermere Desert Properties, Adversary Case No. 6:26-ap-01078-SY (Adv 2 Doc 1) ("Notice Of Removal").

On July 24, 2026, WRE SoCal filed an Answer as well as a Cross-Complaint against HKLLQ (Adv 2 Doc 6) ("Cross-Complaint").

HKLLQ subsequently filed a Motion to Dismiss WRE SoCal's Cross-Complaint (Adv 2 Doc 10).

The Trustee, WRE, and HKLLQ attended mediation and thereafter continued their settlement discussions. The Parties have reached a global settlement agreement and each party desires to resolve all issues among them.

**<u>THE SUMMARY OF TERMS OF THE SETTLEMENT AGREEMENT</u>**

Subject to Court approval, and as discussed in more detail in the Memorandum of Points and Authorities attached to the Motion, the Settlement Agreement is in the best interests of the Estate. The Settlement Agreement provides, *inter alia*, as follows:

i. This Agreement is subject to approval by the Bankruptcy Court. The Trustee shall file a motion seeking United States Bankruptcy Court approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion"). No term or condition of this Agreement shall be binding on any party until such time as the Agreement is approved. The Parties shall make good faith efforts pending review of the Agreement by the Bankruptcy Court to maintain the status quo.

ii. Within 7 days of the Effective Date (as defined below), WRE SoCal shall pay the Unpaid Installment Payments of $55,615.79. In the event the Effective Date occurs after any installment payments on the Note not yet owed (the "Future Installment Payments") come due, the Future Installment Payments which have come due shall be treated as Unpaid Installment Payments and be paid at the same time as the April and July 2026 installment payments. Upon tender of this payment, the Note will be deemed current as of the Effective Date and all claims for defaulted interest released pursuant to Paragraphs 10 and 11 of this Agreement.

iii. Upon the Effective Date, WRE SoCal shall receive a credit on the Note of $20,000, reflecting a partial reimbursement of its indemnity rights, to be applied to the principal balance of the Note.

iv. Upon the Effective Date, HKLLQ irrevocably assigns to the Bankruptcy Estate proceeds of the Note in the amount of $540,000 (the "Note Assigned Sum"). The Trustee accepts this assignment and WRE SoCal consents to the assignment.

v. The Note Assign Sum shall be paid from the proceeds of the Note as follows: 50% of the Unpaid Installment Payments and 50% of the Future Installment Payments shall be paid to the Bankruptcy Estate, with the remaining 50% of the Unpaid Installment Payments and the Future Installment Payments paid to

HKLLQ, with payments made pursuant to the schedule set forth in Paragraph 2 for Unpaid Installment Payments and under the Note for Future Installment Payments. Upon the Maturity Date, the Bankruptcy Estate shall receive the balance of the Note Assigned Sum not yet paid, with the remainder of the Balloon Payment under the Note to be paid to HKLLQ.

vi. All payments made by WRE SoCal to the Trustee shall be by check made payable to "Chapter 7 Trustee A. Cisneros" and forwarded to Chapter 7 Trustee A. Cisneros, Malcolm Cisneros, 3403 Tenth Street, Suite 714, Riverside, CA 92501.

vii. All payments made by WRE SoCal to HKLLQ shall be by wire to the account of "Katofsky Law, A Professional Corporation, Client Trust Account", Attn: Jeff Katofsky, 4558 Sherman Oaks Ave., Sherman Oaks, CA 91403 pursuant to instructions provided by Jeff Katofsky.

viii. The Trustee's Counter-Claim and Cross-Claim in adversary proceeding 6:25-ap-01133-SY and HKLLQ's Complaint in adversary proceeding 6:26-ap-01078-SY, along with the related counter-claims, shall be dismissed with prejudice as to WRE and with prejudice as to HKLLQ no later than seven (7) days after the Effective Date. No party shall take any act to substantially prosecute these matters while waiting for Court approval of this Agreement.

ix. In the event WRE SoCal defaults on the Note, the Trustee or HKLLQ may, after providing five business days' written notice via email or U.S. Mail to WRE SoCal of the Default file a motion with the Bankruptcy Court for entry of a judgment on the Balance of the Note, plus attorney fees per the Note, which shall be granted if the Court determines that WRE SoCal is in default. Notice of Default by WRE shall be forwarded to Bernie Kornberg, Miller & Nash, 340 Golden Shore, Suite 450 Long Beach, California 90802, bernie.kornberg@millernash.com In the event the Trustee and HKLLQ obtain a judgment against WRE SoCal, the amount of the judgment shall be allocated as follows:

a. Forty percent (40%) to the Trustee.
b. Sixty percent (60%) to HKLLQ.

x. Except for the obligations, rights, and duties expressly created above by this Agreement, by execution of this Agreement, the Trustee, HKLLQ, and WRE SoCal hereby fully and irrevocably release, discharge and acquit each other, and their respective officers, directors, partners, members, parents, subsidiaries, affiliated companies, employees, agents, servants, heirs, administrators, personal representatives, insurers, attorneys, representatives, successors and assigns (collectively, "Representatives") of and from and against any and all rights, claims, debts, demands, acts, suits, including, but not limited to, Adversary Case Nos. 6:25-ap-01133-SY and 6:26-ap-01078-SY, proceedings, agreements, liabilities, obligations, actions and/or causes of action of every nature, character, type and description, which the Parties hereto, or any of them, now own or hold against each other.

xi. Waiver of California Civil Code § 1542. The Parties expressly waive the provisions of California Civil Code § 1542, which provides:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release

and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

xii. The release in Paragraphs 10 and 11 of this Agreement shall not extinguish the Note or APA, but shall release any claims which arose under the Note or APA prior to the Effective Date. The terms of the Note and the APA, except as specifically modified in Paragraphs 2 through 9 of this Agreement, shall control in the event of any dispute between the Parties regarding the post-Effective Date obligations of the Parties on the APA and the Note.

As discussed in detail in the Memorandum of Points and Authorities attached to the Motion, the Settlement Agreement meets all the legal standards per Rule 9019 and Court approval of the Settlement Agreement is warranted.

**WHEREFORE,** based on the reasons set forth above, the Memorandum of Points and Authorities and supporting evidence, the Trustee requests the Court issue an order:

1. Granting the Motion;
2. Approving the terms of the Settlement Agreement, a copy of which is attached as **Exhibit "1"** to the Motion;
3. That the Trustee is authorized to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement; and,
4. For any and all other relief the Court deems just and proper.

Requests for a copy of the Motion should be in writing and directed to Thomas H. Casey of the Law Office of Thomas H. Casey, Inc. at the address on the following page.

///
///
///

**PLEASE TAKE FURTHER NOTICE** any response and request for hearing as to the Trustee's Motion must be in the form as required by Local Bankruptcy Rule 9013-1(o) and filed with the Clerk of the above-entitled Court no later than fourteen days (14) from the date of service of this Notice, plus three (3) additional days if you were served by mail or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F), and served on Thomas H. Casey of the Law Office of Thomas H. Casey, Inc. at the address indicated below and the Office of the United States Trustee, 3801 University Avenue, Suite 720, Riverside, California, 92501. Any responses not timely filed and served shall be deemed waived. **SEE LOCAL BANKRUPTCY RULE 9013-1(o).**

Respectfully submitted,

Thomas H. Casey, SBN 138264
The Law Office of Thomas H. Casey, Inc.
26400 La Alameda, Suite 210
Mission Viejo, CA 92691
Tel: 949/766-8787
Fax: 949/766-9896
TomCasey@tomcaseylaw.com

Dated: October 14, 2026

By: ____________________
Thomas H. Casey, Attorneys for A. Cisneros, Chapter 7 Trustee for the Bankruptcy Estate of HK Lane Palm Desert, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**26400 La Alameda, Suite 210, Mission Viejo, CA 92691**

A true and correct copy of the foregoing document entitled (*specify*): **Notice of Chapter 7 Trustee's Motion for Order Approving Settlement Agreement Between the Chapter 7 Trustee, WRE SoCal, Inc., d/b/a Windermere Desert Properties and HK Lane La Quinta, Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 16, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Matthew Bouslog mbouslog@allenmatkins.com, ncampos@allenmatkins.com**
- **Thomas H Casey kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com**
- **Arturo Cisneros (TR) amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com**
- **David B Golubchik dbg@lnbyg.com, dbg@lnbyg.com**
- **Leonard L Gumport lgumport@gumportlaw.net**
- **Jeff Katofsky jeff@katofskylaw.com, jgroves@propertymanagers.biz**
- **Bernard J Kornberg bernie.kornberg@millernash.com, edgar.rosales@millernash.com**
- **Jeffrey S Shinbrot jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com**
- **United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) **October 16, 2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 16, 2026 | Kathy Driggers | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**SERVED BY US MAIL:**

**Interested Party**
United States Bankruptcy Court
Attn: Hon. Scott H. Yun
3420 Twelfth Street, Suite 345
Riverside, CA 92501-3819

**Debtor**
HK Lane Palm Desert, Inc.
Attn: Jeff Katofsky
4558 Sherman Oaks Avenue
Sherman Oaks, CA 91403-3060

**Request for Special Notice**
Matthew G. Bouslog, Esq.
Allen Matkins Leck Gamble
Mallory & Natsis LLP
2010 Main Street, 8th Floor
Irvine, CA 92614-7214

**Attorneys for Defendant and Cross-Defendant HK Lane La Quinta, Inc.**
Jeff Katofsky, Esq.
Katofsky Law
4558 Sherman Oaks Avenue
Sherman Oaks, CA 91403

**Attorneys for Plaintiff and Counter-Defendant WRE SoCal, Inc., d/b/a Windermere Desert Properties**
Bernard J. Kornberg, Esq.
Miller Nash LLP
340 Golden Shore, Suite 450
Long Beach, CA 90802

**Creditors**
~~American Express~~
~~P.O. Box 0001~~
~~Los Angeles, CA 90078-0001~~
No Such Number
Unable to Forward
Return to Sender

American Express
200 Vesey Street
Lower Manhattan
New York, NY 10285

Aussie Dog
Attn: John Marconi
1551 North Tustin, #300
Santa Ana, CA 92705-8638

Blank & Rome
2029 Century Park East, 6th Floor
Los Angeles, CA 90067-2907

Bruce F. Stuart, Trustee
c/o Alan Hearty – Allen Matkins
1901 Ave of the Stars, #1800
Los Angeles, CA 90067-6019

Bruce F. Stuart, Trustee of the
Bruce F. Stuart Trust Dated May 21, 1996
c/o Allen Matkins Leck Gamble
Mallory & Natsis LLP
Attn: Matthew Bouslog, Esq.
2010 Main Street, 8th Floor
Irvine, CA 92614-7214

Bruce F. Stuart
Trustee of the Bruce F. Stuart
Trust Dated May 21, 1996
9595 Wilshire Blvd., Suite 402
Beverly Hills, CA 90212

Christie's
c/o Branden Lopez
806 N. Peoria Street
Chicago, IL 60642-5438

El Paseo Holdings, LLC
c/o Russell Wolpert – Ellis George
2121 Ave of the Stars, 30th Floor
Los Angeles, CA 90067-5010

El Paseo Holdings, LLC
c/o Jeffrey S. Shinbrot, APLC
15260 Ventura Blvd., Suite 1200
Sherman Oaks, CA 91403

El Paseo Holdings, LLC
c/o Peter Mahler, Managing Member
250 E. Wisconsin Avenue, Suite 1610
Milwaukee, WI 53202

Franchise Tax Board
Special Procedures – Insolvency
P.O. Box 2952
Sacramento, CA 95812-2952

Franchise Tax Board
Bankruptcy Section MS A340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Insolvency I Stop 5022
300 N. Los Angeles Street, #4062
Los Angeles, CA 90012-9903

~~John Mansour~~
~~8280 Utica Avenue, #150~~
~~Rancho Cucamonga, CA 91730-3851~~
Not Deliverable as Addressed
Unable to Forward
Return to Sender

John Mansour
8241 White Oak Avenue
Rancho Cucamonga, CA 91730-7671

Leaf Capital Funding, LLC
2005 Market Street, 14th Floor
Philadelphia, PA 19103-7009

Leaf Capital Funding, LLC
Attn: Sheneka A. Barnett
2005 Market Street, 14th Floor
Philadelphia, PA 19123

Leaf Capital Funding, LLC
c/o Brian Fleischer, Esq.
4 Greentree Ctr., 601 Route 73 North
Marlton, NJ 08053

Mark Carlson, Esq.
Carlson Law Group
6300 Canoga Avenue, #1300
Woodland Hills, CA 91367-6019

~~Moxi Works~~
~~1000 Second Avenue, Suite 1300~~
~~Seattle, WA 98104-1082~~
Not Deliverable as Addressed
Unable to Forward
Return to Sender

~~Moxi Works~~
~~1000 2nd Avenue, Suite 1300~~
~~Seattle, WA 98104~~
Attempted – Not Known
Unable to Forward
Return to Sender

Moxi Works
10655 NE 4th Street, Suite 801
Bellevue, Washington 98004

Ocean Properties Dev't Corp.
1919 Grand Avenue, Suite 2A
San Diego, CA 92109-4587

One El Paseo North, LLC
1919 Grand Avenue, Suite 2A
San Diego, CA 92109-4579

One El Paseo North, LLC
c/o Douglas A. Plazak, Esq.
Reid & Hellyer, APC
P.O. Box 1300
Riverside, CA 92502

~~Paul Bojic~~
~~45110 Club Drive, Suite E~~
~~Indian Wells, CA 92210-8873~~
Forwarding Time Expired
Return to Sender

Paul D. Bojic, Esq.
Law Offices of Paul D. Bojic
73255 El Paseo, Suite 19
Palm Desert, CA 92260-4249

~~Small Business Administration~~
~~Attn: So Cal Legal Unit~~
~~330 N. Brand Blvd., Suite 1200~~
~~Glendale, CA 91203-2320~~
Not Deliverable as Addressed
Unable to Forward
Return to Sender

~~Small Business Administration~~
~~330 N. Brand Blvd., Suite 1200~~
~~Glendale, CA 91203~~
Not Deliverable as Addressed
Unable to Forward
Return to Sender

Small Business Administration
312 N. Spring Street
Los Angeles, CA 90012

Small Business Administration
P.O. Box 3918
Portland, OR 97208-3918

U.S. Small Business
Administration
14925 Kingsport Road
Ft. Worth, TX 76155-2243

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**26400 La Alameda, Suite 210, Mission Viejo, CA 92691**

A true and correct copy of the foregoing document entitled (*specify*): **Declaration That No Party Requested a Hearing on Motion (LBR 9013-1(o)(3))** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 3, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Matthew Bouslog mbouslog@allenmatkins.com, ncampos@allenmatkins.com**
- **Thomas H Casey kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com**
- **Arturo Cisneros (TR) amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com**
- **David B Golubchik dbg@lnbyg.com, dbg@lnbyg.com**
- **Leonard L Gumport lgumport@gumportlaw.net**
- **Jeff Katofsky jeff@katofskylaw.com, jgroves@propertymanagers.biz**
- **Bernard J Kornberg bernie.kornberg@millernash.com, edgar.rosales@millernash.com**
- **Jeffrey S Shinbrot jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com**
- **United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) **November 3, 2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 3, 2026 | Kathy Driggers | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**SERVED BY US MAIL:**

**Interested Party**
United States Bankruptcy Court
Attn: Hon. Scott H. Yun
3420 Twelfth Street, Suite 345
Riverside, CA 92501-3819

**Debtor**
HK Lane Palm Desert, Inc.
Attn: Jeff Katofsky
4558 Sherman Oaks Avenue
Sherman Oaks, CA 91403-3060

**Request for Special Notice**
Matthew G. Bouslog, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
2010 Main Street, 8th Floor
Irvine, CA 92614-7214

**Attorneys for Defendant and Cross-Defendant HK Lane La Quinta, Inc.**
Jeff Katofsky, Esq.
Katofsky Law
4558 Sherman Oaks Avenue
Sherman Oaks, CA 91403

**Attorneys for Plaintiff and Counter-Defendant WRE SoCal, Inc., d/b/a Windermere Desert Properties**
Bernard J. Kornberg, Esq.
Miller Nash LLP
340 Golden Shore, Suite 450
Long Beach, CA 90802